**Attachment # 45**

## PROJECTED OPERATING STATEMENT          LUCIANO GENERAL

| NET SALES | 2001 | 2002 |
|---|---|---|
| 8(a) | 1,000,000 | 2,500,000 |
| non 8(a) | 600,000 | 500,000 |
| **TOTAL SALES** | **1,600,000** | **2,500,000** |
| | | |
| **Cost of Goods Sold** | | |
| Material Purchases | 80,000 | 125,000 |
| Direct Labor | -0- | -0- |
| Subcontractors | -0- | -0- |
| Other Direct Costs | -0- | -0- |
| **GROSS PROFIT** | **1,520,000** | **2,375,000** |
| | | |
| **Variable Expenses** | | |
| Salaries-Officers | 275,000 | 275,000 |
| Gross Wages | 640,000 | 1,000,000 |
| Welfare & Pension | -0- | -0- |
| Repairs & Maintenance | 1,000 | 1,000 |
| Auto & Truck | 1,200 | 1,200 |
| Bad Debts | -0- | -0- |
| Administrative | 3,000 | 10,000 |
| Advertising | -0- | -0- |
| Operating Supplies & Other | 2,500 | 10,000 |
| Interest | 50,000 | 100,000 |
| **TOTAL VARIABLE EXPENSES** | **970,200** | **1,397,200** |
| | | |
| **Fixed Expenses** | | |
| Rent | 8,400 | 8,400 |
| Utilities | 1,200 | 1,200 |

**LUM - 610**

Exhibit 8
Page 38 of 65
Case No. 3:03-cv-00262-JWS

| | | |
|---|---|---|
| Insurance | 13,000 | 13,000 |
| Taxes & Licenses | 200 | 200 |
| Depreciation | 500 | 2,500 |
| Total Fixed Expenses | 23,300 | 29,700 |
| **NET PROFIT** | **526,500** | **948,100** |

**8(a) firm sole proprietor signature**


Signature _[signature]_                                    Date 8/2/01

**LUM - 611**

Exhibit 8
Page 39 of 65
Case No. 3:03-cv-00262-JWS

# FIRST UNION Securities

## Advantage Account
### for MAFFEI INC APC
ATTN ALBERT MAFFEI

May 1 – May 31, 2001
Current Investment Objective: Growth + Aggressive

Your Financial Advisor:
DANIEL D'CORRELL/LAURA BRUCE
FIRST UNION SECURITIES, INC
530 WEST 7TH AVENUE
SUITE 1860
ANCHORAGE, AK 99501
907-264-6561 / 800-478-7660

Account Statement for MAFFEI INC APC
ATTN ALBERT MAFFEI
Account No. 001 7768 5948-4944

May 2001

## Portfolio Summary

|  | Value on Apr 30 | Value as May 31 |
|---|---|---|
| Total portfolio value | $107,616.33 | $109,112.31 |

| Change in value | This period |
|---|---|
|  | $1,495.98 |

### Portfolio assets

|  | Value on Apr 30 | Value as May 31 | Percent of total assets |
|---|---|---|---|
| Cash and money market funds | $517.64 | $519.41 | 0.48 |
| Stocks and options | $63,159.99 | $63,719.51 | 58.40 |
| Preferred stocks | $38,395.00 | $39,200.50 | 35.93 |
| Mutual funds | $5,543.70 | $5,672.89 | 5.20 |
| Total assets | $107,616.33 | $109,112.31 | 100% |
| Total portfolio value | $107,616.33 | $109,112.31 |  |

### Assets allocation (portfolio assets)



- Stocks and options
- Preferred stocks
- Mutual funds
- Other

LUM - 612

Exhibit 8
Page 40 of 65
Case No. 3:03-cv-00262-JWS

FIRST UNION
Securities

040584 02 AADC 261 TO**ALL FOR AADC 995
ALBERT MAFFEI
729 N STREET
ANCHORAGE AK 99501-3226

**Account Summary for**
June 1, 2001 - June 30, 2001

Your Financial Advisor:
DANIEL O'CONNELL/LAURA BRUCE
FIRST UNION SECURITIES, INC
550 WEST 7TH AVENUE
SUITE 1980
ANCHORAGE, AK 99501
907-258-6565 / 800-478-7869

**At a Glance**
If you have more than one account with us, why not get them linked? Your summary below will list them all.
Contact Your Financial Advisor today.

| Accounts | Account Number | Previous portfolio value | Current portfolio value |
|---|---|---|---|
| Investment Account | 0017763 5944-4550 | $34,513.32 | $49,325.98 |
| Total | | $34,513.32 | $49,325.98 |

LUM - 613

First Union Securities, Inc. Member NYSE/SIPC. Brokerage accounts are carried by First Clearing Corporation
SIPC), Member NYSE/SIPC.

RECEIVED
JUN 1 6 2001
MAFFEI, INC.

Exhibit 8 -
Page 41 of 65
Case No. 3:03-cv-00262-JWS

FROM VINS AND BONDS, INC.   TO   973 402 0770   2001,08-08   09:45   #236 P.04/08



# FIRST UNION SECURITIES

## Advantage Account
### for ALBERT MAFFEI & BONITA MAFFEI JTWROS
June 1 - June 30, 2001
Current Investment Objective: Growth + Aggressive

Your Financial Advisor:
DAVID D'CONNELL/LAURA BRUCE
FIRST UNION SECURITIES, INC
550 WEST 7TH AVENUE
SUITE 1900
ANCHORAGE AK 99501
907-238-6365 / 800-478-7669

Exhibit 8
Page 42 of 65
Case No. 3:03-cv-00262-JWS

Account Statement for: ALBERT MAFFEI &
BONITA MAFFEI JTWROS
Account No. 0017168 5948-4945

June 2001

Page 1 of 8

## Portfolio Summary

| | Value on May 31 | Value on June 30 |
|---|---|---|
| Total portfolio value | $146,215.24 | $141,733.47 |

| | This period |
|---|---|
| Change in value | - $4,481.57 |

### Portfolio assets

| | Value on May 31 | Value on June 30 | Percent of total assets |
|---|---|---|---|
| Cash and money market funds | $4,355.11 | $0.00 | |
| Stocks and options | $37,078.20 | $38,853.60 | 27.24 |
| Preferred stocks | $99,264.50 | $99,052.55 | 68.95 |
| Mutual funds | -$5,517.43 | $5,427.41 | 3.81 |
| Total assets | $146,215.24 | $142,533.76 | 100% |
| Outstanding margin balance | $0.00 | -$900.29 | |
| Total portfolio value | $146,215.24 | $141,733.47 | |

Your portfolio includes unpriced securities returned in the Portfolio Value.

### Assets allocation (portfolio assets)



Stocks and options
Preferred stocks
Mutual funds

LUM - 614



**MAPCO. INC.**

427 W. Cevallos • San Antonio, Texas 78204
Telephone (210) 444-9711 • Fax (210) 444-9712 • Toll Free 1 (888) MAPCO-80
E-Mail: mail@mapcoinc.net

August 10, 2001

Mr. Patrick J. Lynch
Lumbermens Mutual Casualty Company
119 Littleton Road
Parsippany, NJ 07054

Dear Mr. Lynch,

Please be advised that I will pay up to a $250,000.00 Irrevocable Letter of Credit from
my bank to Lumbermens Mutual Casualty Company in support of the performance and
payment bonds for Luciano General on the Cold Bay project no. F41624-01-C-8066.

Sincerely,

Michael Angelo Padron

Exhibit 8
Page 43 of 65
Case No. 3:03-cv-00262-JWS

-1-

COPYRIGHT 2001 DUN & BRADSTREET INC. - PROVIDED UNDER CONTRACT
FOR THE EXCLUSIVE USE OF SUBSCRIBER 037-050047L.

ATTN: BRENDAN GETHINS

***REVIEW IN PROCESS.  UPDATED REPORT WILL BE FORWARDED***

THE FOLLOWING INFORMATION IS BEING PROVIDED TO YOU IMMEDIATELY IN THE INTEREST
OF SPEED.  DUN & BRADSTREET HAS NOT FULLY REVISED THIS REPORT SINCE 02/11/00.
THEREFORE, THIS REPORT SHOULD NOT BE CONSIDERED A STATEMENT OF EXISTING FACTS.
WE ARE CURRENTLY UPDATING THIS INFORMATION, AND A REVISED REPORT WILL BE SENT
TO YOU SHORTLY.

| | | |
|---|---|---|
| DUNS: 03-143-1625 | DATE PRINTED | SUMMARY |
| LUCIANO NEGRON EDWIN | AUG 08 2001 | RATING    -- |
| +LUCIANO ENTERPRISES | | |
| | ASBESTOS REMOVAL | |
| 3331 WEST 31ST AVE | SIC NO. | STARTED    1995 |
| ANCHORAGE AK  99517 | 17 99 | EMPLOYS    4 |
| TEL: 907 243-3321 | | HISTORY    CLEAR |

EDWIN NEGRON LUCIANO, OWNER

=====================================================================
=====================================================================
* * *   CUSTOMER SERVICE   * * *
=====================================================================
If you have questions about this report, please call our Customer Service
Center at 1-800-234-3867 from anywhere within the U.S. If you are outside the
U.S. contact your local D&B office.

*** Additional Decision Support Available ***

Additional D&B products, credit recommendations and specialized investigations
are available to help you evaluate this company or its industry. Call Dun &
Bradstreet's Solution Center at 1-800-362-3425 from anywhere within the U.S.

=====================================================================
=====================================================================
* * *   SUMMARY ANALYSIS   * * *
=====================================================================
The Summary Analysis section reflects information in D&B's file as of
August 6, 2001.

RATING SUMMARY . . . .

The absence of a Rating (--) indicates that the information available to
D&B does not permit us to assign a Rating to this business.  In this
case, no Rating was assigned because of D&B's overall assessment of the
company's financial, payment, and its historical information.

Below is an overview of the company's D&B Rating(s) since 01/26/99:

| RATING | DATE APPLIED |
|---|---|
| ------ | ------------ |
| -- | 01/26/99 |

=====================================================================
=====================================================================
* * *   PAYMENT SUMMARY   * * *
=====================================================================
The Payment Summary section reflects payment information in D&B's file as of
the date of this report.

The PAYDEX for this company is 80.

This PAYDEX score indicates that payments to suppliers are generally within
terms, weighted by dollar amounts.  When dollar amounts are not considered,
approximately 100% of the company's payments are within terms.

Below is an overview of the company's dollar-weighted payments, segmented by
its suppliers' primary industries:

| TOTAL | LARGEST | % | DAYS SLOW |
|---|---|---|---|

-2-

| | TOTAL RCV'D | DOLLAR AMOUNTS | HIGH CREDIT | W/IN TERMS | <31 | 31-60 | 61-90 | 91+ |
|---|---|---|---|---|---|---|---|---|
| | # | $ | $ | % | % | % | % | % |
| Total in D&B's file | 5 | 2,550 | 1,000 | | | | | |

Payment By Industry:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 Short-trm busn credit | 2 | 300 | 250 | 100 | - | - | - | - |
| 2 Radiotelephone commun | 1 | 750 | 750 | 100 | - | - | - | - |
| 3 Oil/gas production | 1 | 500 | 500 | 100 | - | - | - | - |

Other Payment Categories:

| | | | |
|---|---|---|---|
| Cash experiences | 1 | 1,000 | 1,000 |
| Payment record unknown | 0 | 0 | 0 |
| Unfavorable comments | 0 | 0 | 0 |
| Placed for collection | | | |
| with D&B | 0 | 0 | |
| other | 0 | N/A | |

The highest "Now Owes" on file is $750
The highest "Past Due" on file is $ 0

D&B receives over 315 million payment experiences each year.  We enter these new and updated experiences into D&B Reports as this information is received.

=================================================================

PAYMENTS  (Amounts may be rounded to nearest figure in prescribed ranges)

Antic - Anticipated (Payments received prior to date of invoice)
Disc  - Discounted (Payments received within trade discount period)
Ppt   - Prompt (Payments received within terms granted)

| REPORTED | PAYING RECORD | HIGH CREDIT | NOW OWES | PAST DUE | SELLING TERMS | LAST SALE WITHIN |
|---|---|---|---|---|---|---|
| 07/01 | Ppt | 750 | 750 | -0- | N30 | 1 Mo |
| 06/01 | Ppt | 500 | 500 | -0- | N30 | 1 Mo |
| | Ppt | 250 | 250 | -0- | | 1 Mo |
| 04/01 | (005) | 50 | 50 | -0- | | 6-12 Mos |
| | | 1000 | | | Sales COD | |

        * Each experience shown represents a separate account reported by a supplier.  Updated trade experiences replace those previously reported.

=================================================================

FINANCE
02/11/00    On Feb 11, 2000, attempts to contact the management of this business have been unsuccessful. Outside sources confirmed operation and location.

=================================================================

PUBLIC FILINGS

    The following data is for information purposes only and is not the official record.  Certified copies can only be obtained from the official source.

------------------------------------------------------------------
                    * * * UCC FILING(S) * * *
------------------------------------------------------------------

COLLATERAL: All Inventory including proceeds and products - All Account(s) including proceeds and products - All General intangibles(s) including proceeds and products - All Equipment including proceeds and products - All Chattel paper including proceeds and products

FILING NO:  456753                    DATE FILED:            12/14/1998
TYPE:       Original                  LATEST INFO RECEIVED:  12/28/1998
SEC. PARTY: FIRST NATIONAL BANK OF ANCHORAGE   FILED WITH: SECRETARY OF
            ANCHORAGE, AK                                   STATE/UCC DIVISION,
DEBTOR:     EDWIN NEGRON-LUCIANO                            AK

**LUM - 617**

Exhibit 8
Page 45 of 65
Case No. 3:03-cv-00262-JWS

and OTHERS
-3-

The public record items contained in this report may have been paid, terminated, vacated or released prior to the date this report was printed.

HISTORY
02/11/00

EDWIN NEGRON LUCIANO, OWNER

Ownership information provided verbally by outside source on FEB 11 2000.
Business started 1995.
EDWIN NEGRON LUCIANO.  Antecedents not available.

OPERATION
02/11/00

Interior demolition including asbestos removal.
EMPLOYEES:  4 which includes owner.
FACILITIES:  Operates from residence of Edwin Luciano.

THE INFORMATION IN THE "PAYMENTS", "PUBLIC FILINGS" AND OTHER SECTIONS, WHEN PRESENT, MAY NOT RELATE TO THIS BUSINESS DUE TO POSSIBLE CHANGES IN OWNERSHIP, CONTROL, OR LEGAL STATUS SINCE THE DATA WAS COLLECTED.

08-08(8BG  /341)        99999              050112112

FULL DISPLAY COMPLETE

LUM - 618

Exhibit 8
Page 46 of 65
Case No. 3:03-cv-00262-JWS





# Cold Bay Alaska

55° 12' N   162° 42' W 99571

**Cold Bay on the Web**

- Anchorage Cool Related Station
- View Directory for this region
- Add Link for this region
- View Classifieds for this region
- Submit Classified for this region

- View Cold Bay Classifieds

Cold Bay Weather



Update Information for Cold Bay

Senate District T — House District 40
Represented in the Legislature by

Representative Carl Moses
Election Results

A wide range of data for Cold Bay
is available through the Alaska Department of
Community and Regional Affairs
Online Community Database
For multiple selections, press Ctrl and then click the left mouse button.

| Population and Housing Characteristics
| Economy, Income, Poverty and Employment
| Facilities, Utilities and Services
| Schools
| Municipal Officials/Employees Directory

Get Data — Use your BACK button to return here.

Visit DCRA Online Community Database

## Location
Cold Bay is located in the Izembek National Wildlife Refuge, on the western end of the Alaska Peninsula. It lies 634 miles southwest of Anchorage, and 180 miles northeast of Unalaska.   View Cold Bay Map

Maps by

www.expediamaps.com

## History
Archaeological sites dating to the last ice age indicate the area around Cold Bay was once inhabited by a large Native population, and was used by European hunters and trappers throughout the 19th

LUM - 619

Exhibit 8
Page 47 of 65
Case No. 3:03-cv-00262-JWS

century. During World War II, Cold Bay was the site of the strategic air base Fort Randall. At that time, the airport was the largest in the state, with a 10,000' runway.

## Culture
Cold Bay is primarily a non-native city that services the fishing industry. Subsistence and recreational fishing and hunting are a part of the local culture.

## Economy
Because of its central location and modern airport, Cold Bay serves as the regional center for air transportation on the Alaska Peninsula, and as an international hub for private aircraft. The state and federal government and airline transportation services provide the majority of local employment. It has a promising future as a service and fueling center for the bottomfish industry. One resident holds a commercial fishing permit.

## Transportation
A State-owned 10,415' paved and lighted runway, FAA Flight Service Station, and a seaplane base are available. Cold Bay is a regional transportation center, and provides scheduled flights to surrounding communities. The community has a dock, but wants to develop a breakwater, boat harbor and boat launch. Marine cargo services are available monthly from Seattle, but not from Anchorage. The State Ferry operates bi-monthly from Kodiak between May and October. The City has requested funds to construct a 22-mile road to King Cove.

## Climate
The city has a maritime climate, with temperatures ranging from 25 to 60. The average rainfall is 36 inches and annual snowfall is 61 inches. Wind speeds of 30 MPH are common for Cold Bay.

## Facilities
Currently, water is supplied by two wells and stored in two 10,000-gallon tanks. Many residents are connected to the piped water and sewer system; others use individual wells and septic systems. The sewage treatment plant can treat up to 32,000 gallons a day. Funds have been provided to replace the existing system. A new well, water treatment plant, water storage tank and transmission lines, sewer lines, lagoon and outfall improvements are under construction. Residents transport their own garbage to the landfill, located 1.5 miles north of the community.

---

### Sign the Cold Bay Guestbook

Name:

Comments:

Your Web Page Address:

http://

E-mail Address:

Submit

View Cold Bay Guestbook

[Home] [101 Reasons] [Alaska Info] [Classifieds] [Communities] [Directory] [Forums] [Guestbook] [Links] [Info] [Programs]

Your comments and questions are welcome.   E-mail us at info@ilovealaska.com.
©1997-2000 Members of Adventure

Exhibit 8
Page 48 of 65
Case No. 3:03-cv-00262-JWS



Find the Weather for any **City, State** or **ZIP Code**, or **Country**

[ Fast Forecast ]



**Cold Bay, Alaska Forecast**                     55.2° N 162.7° W | MapBlast
Local Time: 09:57 AM AKDT on August 08, 2001 [America/Anchorage]

    **No Active Advisories**  **Western Pacific...** 

**New!**

**New!**

**Features**

- 
- 
- 
- 
- 
- 
- 
- 
- 
- 

## Conditions

| Updated: **08:53 AM ADT on August 08, 2001** | |
|---|---|
| Observed at | Cold Bay, Alaska |
| Temperature | **50° F** |
| Windchill | **28° F** |
| Humidity | **87%** |
| Dewpoint | **46° F** |
| Wind | **SE at 32 mph** |
| Wind Gust | **39 mph** |
| Pressure | **30.14 in** |
| Conditions | **Overcast** |
| Visibility | **10 miles** |
| Clouds | **Scattered Clouds (SCT): 1000 ft**<br>**Overcast (OVC): 3000 ft** |
| Sunrise | **7:10 AM (ADT)** |
| Sunset | **10:42 PM (ADT)** |
| Moon Rise | **12:20 AM (ADT)** |
| Moon Set | **11:59 AM (ADT)** |
| Moon Phase | Today   Aug. 12   Aug. 19   Aug. 25 |

**Forecast as of 5:57 am ADT on August 8, 2001**

**Now**
Wind Advisory west of Sand Point... winds will be south to southeast 25 to 35 mph gusting to 45 mph west of Sand Point this morning...continuing past 10 am. East of Sand Point...southeast winds will increase to 20 mph by late morning. Clouds thickening from west to east with a chance of light rain in the west by noon.

**Forecast as of 5:00 am ADT on August 8, 2001**

**Today**
Sand Point east...morning low clouds and fog...becoming partly cloudy. Highs in the

http://www.wunderground.com/US/AK/Cold_Bay.html

8/8/01

LUM - 621

Exhibit 8
Page 49 of 65
Case No. 3:03-cv-00262-JWS

Exhibit 8
Page 50 of 65
Case No. 3:03-cv-00262-JWS

**REQUEST FOR PAYMENT**

| | | ORIGINAL CONTRACT | $2,527,030.02 |
|---|---|---|---|
| | | CHANGE ORDERS | $ - |
| | | TOTAL CONTRACT VALUE | $2,527,030.02 |
| | | AMOUNT BILLED TO DATE | $ - |
| | | AMOUNT DUE THIS ESTIMATE | $ 100,991.04 |
| | | REMAINING BALANCE | $2,428,038.98 |

**LUM - 622**

TO:
Linda Fellows
311 HSW/PKVBA-AK
PO Box 6270
Anchorage, AK 99506-2200

FROM:
Luciano General
4132 Post Road
Anchorage, AK 99501
907-343-0170
907-272-5197 FAX

CONTRACT #   F41824-01-C-8068
INVOICE #
INVOICE PERIOD
INVOICE DATE

| TASK | DESCRIPTION | PRICE | % COMPLETE | AMOUNT DUE | REMAINING BALANCE |
|---|---|---|---|---|---|
| X 1 | PROJECT MANAGEMENT | $ 206,904.78 | 8% | $ 16,552.38 | $ 190,352.40 |
| TASK 2 | WORK PLANS | $ 22,931.42 | 46% | $ 10,379.43 | $ 12,551.99 |
| TASK 3 | MOBILIZATION | $ 113,310.56 | 3% | $ 3,399.56 | $ 109,919.00 |
| TASK 4 | OT01 White Alice Site | $ 728,560.87 | 9% | $ 70,656.67 | $ 657,909.00 |
| TASK 5 | ST05 Beach Tank Site | $ 1,315,409.82 | | $ - | $ 1,315,409.82 |
| TASK 6 | DEMOBILIZATION | $ 95,204.60 | 0% | $ - | $ 95,204.60 |
| | BOND | $ 44,692.29 | 0% | $ - | $ 44,692.29 |
| | TOTAL CONTRACT VALUE | $ 2,527,030.02 | | | $ 2,428,039.10 |

AMOUNT DUE    $ 100,991.04

I, hereby, certify to the best of my knowledge and belief, that --
(1) The amounts requested are only for performance in accordance with the specifications, terms, and conditions of the contract;
(2) Payments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with subcontract agreements and the requirements of Chapter 39 of Title 31, United Stated Code
(3) this request for progress payments does not include any amounts which the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract.

Eric Olson
Name

President
Title

7-6-01
Date

REQUEST FOR PAYMENT

## FASTPAY

LUM - 623

**TO:** Linda Fellows
311 HSW/PKVBA-AK
PO Box 6270
Anchorage, AK 99506-2200

**FROM:** Luciano General
4132 Post Road
Anchorage, AK 99501
907-343-0170
907-272-5197 FAX

| | | | |
|---|---|---|---|
| CONTRACT # | F4162_-01-C-8066 |
| INVOICE # | 2001.001-2 |
| INVOICE PERIOD | 7/01/7/01/2001 |
| INVOICE DATE | 07/20/2001 |

| | | |
|---|---|---|
| ORIGINAL CONTRACT | $ | 2,527,030.02 |
| CHANGE ORDERS | $ | |
| TOTAL CONTRACT VALUE | $ | 2,527,030.02 |
| AMOUNT BILLED TO DATE | $ | 101,180.06 |
| AMOUNT DUE THIS ESTIMATE | $ | 282,740.36 |
| REMAINING BALANCE | $ | 2,143,129.60 |

| TASK | DESCRIPTION | PRICE | % COMPLETE | AMOUNT DUE | AMOUNT BILLED PREVIOUSLY | REMAINING BALANCE |
|---|---|---|---|---|---|---|
| SK 1 | PROJECT MANAGEMENT | $ 209,904.78 | 15% | $ 14,483.33 | $ 16,552.38 | $ 178,869.06 |
| TASK 2 | WORK PLANS | $ 22,931.42 | 50% | $ 917.26 | $ 10,548.46 | $ 11,465.71 |
| TASK 3 | MOBILIZATION | $ 113,318.56 | 50% | $ 53,259.72 | $ 3,399.56 | $ 56,659.28 |
| TASK 4 | OT01 White Alice Site | $ 728,568.67 | 12% | $ 16,768.57 | $ 70,659.67 | $ 641,140.43 |
| TASK 5 | ST05 Beach Tank Site | $ 1,315,409.82 | 15% | $ 197,311.47 | $ - | $ 1,118,098.34 |
| TASK 6 | DEMOBILIZATION | $ 95,204.60 | 0% | $ - | $ - | $ 95,204.60 |
| | BOND | $ 44,692.29 | 0% | $ - | $ - | $ 44,692.29 |
| | TOTAL CONTRACT VALUE | $ 2,527,030.02 | | $ 101,180.06 | | $ 2,143,129.59 |

AMOUNT DUE $ 282,740.36

I hereby, certify to the best of my knowledge and belief, that --
(1) The amounts requested are only for performance in accordance with the specifications, terms, and conditions of the contract;
(2) Payments to subcontractors and suppliers have been made from previous payments received under the contract,
and timely payments will be made from the proceeds of the payment covered by this certification,
in accordance with subcontract agreements and the requirements of Chapter 39 of Title 31, United States Code
(3) this request for process payments does not include any amounts which the prime contractor intends to withhold
or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract.

_____  07-23-01
Name                          Date

_____
Title

"THE SERVICES THAT ARE BEING CERTIFIED
HAVE BEEN REVIEWED, RECEIVED AND ACCEPTED"

_____
Signature

_____
Name (Print)

_____
Title

_____
Organization

_____
Phone No.                    Date

Exhibit 8 .
Page 51 of 65
Case No. 3:03-cv-00262-JWS

**FIRST UNION**
*Securities*

Account Statement for MAFFEI INC APC
ATTN ALBERT MAFFEI
Account No. 0017769 248-4944

May 2001

Page 1 of 5

LUM - 624

**Advantage Account
for MAFFEI INC APC
ATTN ALBERT MAFFEI
May 1 – May 31, 2001**
Current Investment Objective: Growth + Aggressive

Your Financial Advisor :
DANIEL D'COMPELLA/ANRA BRUCE
FIRST UNION/SOURCES, INC
550 WEST 7TH AVENUE
SUITE 1800
ANCHORAGE, AK 99501
907-258-6565 / 800-478-7689

## Portfolio Summary

| | Value on Apr 30 | Value on May 31 |
|---|---|---|
| Total portfolio value | $107,616.33 | $109,112.31 |

| | This period |
|---|---|
| Change in value | $1,495.98 |

| Portfolio assets | Value on Apr 30 | Value on May 31 | Percent of total assets |
|---|---|---|---|
| Cash and money market funds | $517.64 | $519.41 | 0.48 |
| Stocks and options | $69,159.99 | $63,719.51 | 58.40 |
| Preferred stocks | $38,395.00 | $39,200.50 | 35.93 |
| Mutual funds | $6,543.70 | $5,672.89 | 5.20 |
| **Total assets** | **$107,616.33** | **$109,112.31** | **100%** |
| Total portfolio value | $107,616.33 | $109,112.31 | |

Assets allocation (portfolio assets)



- Stocks and options
- Preferred stocks
- Mutual funds
- Other

Exhibit 8
Page 52 of 65
Case No. 3:03-cv-00262-JWS



FIRST UNION Securities



040584 02 AADC 261 TO**ALL FOR AADC 995
ALBERT MAFFEI
729 N STREET
ANCHORAGE AK 99501-3226

Account Summary for
June 1, 2001 - June 30, 2001

Your Financial Advisor:
DANIEL O'DONNELL/LAURA BRUCE
FIRST UNION SECURITIES, INC.
550 WEST 7TH AVENUE
SUITE 1960
ANCHORAGE, AK 99501
907-258-6565 / 800-478-7889

At a Glance
If you have more than one account with us, why not get them linked? Your summary/statement will list them all.
Contact Your Financial Advisor today.

| Accounts | Account Number | Previous portfolio value | Current portfolio value |
|---|---|---|---|
| Investment Account | 001 7764 5948 4950 | $94,519.32 | $89,335.91 |
| Total | | $94,519.32 | $89,335.91 |

First Union Securities, Inc., Member NYSE/SIPC. Brokerage accounts are carried by First Clearing Corporation (FCC), Member NYSE/SIPC.

RECEIVED
JUN 1 6 2001
MAFFEI, INC.

LUM - 625

Exhibit 8
Page 53 of 65
Case No. 3:03-cv-00262-JWS

 *HOWL ABOUT IT!*

Exhibit 8
Page 54 of 65
Case No. 3:03-cv-00262-JWS



### What's New

Here's the captain's log.
Tune in here to get the current news of our whereabouts, the volcanoes we're seeing, people and places along the way.

# Cold Bay to Sunny Skies..

June 12

There's something about the routines of shipboard life that made it easy to create a habit out of writing and posting a log of our travels. It may be a bit more difficult now that we're on the ground and have much more flexibility to our days.

We started off the day, disembarking the ship in Cold Bay, Alaska. If you've looked at a map, it's on the very end of the Alaska Peninsula. It was a typical summer day in Cold Bay, cold, rainy and with a bit of wind blowing. The lagoon was sparsely inhabited by a few ducks instead of the thousands of birds they see migrating through in the fall. The maps gave us clues to the close by volcanic peaks of Shishaldin and Pavlof, both impressively active volcanoes that were hidden by the cloud cover. Our guide told us of the recent day when the clouds parted and he could see the boulders being spit out of the top of Shishaldin.

I had hoped that our flight might give us another chance to look, but the clouds did not part until we were quite close to Anchorage. In Anchorage the skies are     and the temperature about 70 degrees - tropical as far as we're concerned. We did some shopping, and Bob finally     he's been looking for. I consider it a preventative against further cold weather on our trip -- that he won't find a use for it until winter in Maine.

*"The greater the area of islands, the greater the shoreline of wonder."*

    E-mail

    Home Page
    About Us
    Photo Album
    Our Calendar

**LUM - 627**

Exhibit 8
Page 55 of 65
Case No. 3:03-cv-00262-JWS

8/8/01



Account Statement for ALBERT MAFFEI &
BONITA MAFFEI JTWROS
Account No. 007 7760 5646 4645

June 2001

Assets allocation (portfolio assets)

Page 1 of 6

LUM - 628

Exhibit 8
Page 56 of 65
Case No. 3:03-cv-00262-JWS

SEP. 5.2001  12:09PM  REMTECH, INC                          NO.546   P.

AUG.15.2001  11:43AM  AK_FLDG_BGUMPANY-0-0-00    FAX NO. 907 272 519 NO.232  P.
AUG-15-01 WED 10:14 AM  AK REMTECH, INC

| PAYMENT BOND (See Instructions on Page 2) | DATE BOND EXECUTED (Must be same as date than date of contract) | FORM APPROVED OMB |
|---|---|---|
| Bond No. LF500333 | 10 August 01 | 9000-00 |

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, D.C. Office of Management and Budget. Paperwork Reduction Project (9000-0045), Washington, D.C. 20503.

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" ONE) |
|---|---|
| Luciano General | ☐ INDIVIDUAL  ☐ PARTNERSHIP |
| 3351 W. 31st Avenue | ☐ JOINT VENTURE  ☒ CORPORATION |
| Anchorage, AK 99517 | STATE OF INCORPORATION |
|  | Alaska |

| SURETY(IES) (Name(s) and business(es) address) | PENAL SUM OF BOND |  |  |
|---|---|---|---|
| Lumbermens Mutual Casualty Company | MILLION(S) | THOUSAND(S) | HUNDRED |
| 1 Kemper Drive | 2 | 527 | 030 |
| Long Grove, Illinois 60049 | CONTRACT DATE | CONTRACT NO. |  |
|  | 21 June 01 | F41624-01-C- |  |

OBLIGATION:
We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:
The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal furnishing material or labor in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:
The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

Exhibit 8
Page 57 of 65
Case No. 3:03-cv-00262-JWS

| | PRINCIPAL | Luciano General | | |
|---|---|---|---|---|
| Signature(s) | 1. *Edwin Luciano* (Seal) | 2. (Seal) | 3. (Seal) | |
| Name(s) & Title(s) (Typed) | Edwin N. Luciano  Owner | | | |

| | INDIVIDUAL SURETY(IES) | | LUM - 629 |
|---|---|---|---|
| Signature(s) | 1. | 2. (Seal) | |
| Name(s) (Typed) | 1. | 2. | |

| | CORPORATE SURETY(IES) | STATE OF INC. | LIABILITY LIMIT |
|---|---|---|---|
| S U R E T Y A | Name & Address | Lumbermens Mutual Casualty Company  1 Kemper Drive, Long Grove, Illinois 60049 | IL | $ 100% |
|  | Signature(s) | 1. *Pat J. Moore* | 2. |  |
|  | Name(s) & Title(s) (Typed) | 1. Pat J. Moore  Attorney-in-Fact | 2. |  |

NSN 7540-01-152-4061
PREVIOUS EDITION IS USABLE
S-1117/GESF 7/90

36-005
Page 1 of 2

STANDARD FORM
Presented by GSA
FAR 148 CFR) 53.22

SEP. 5.2001    12:09PM    REMTECH, INC.                    NO.546    P.30

AUG.15.2001  11:13AM  REMTECH, INC.                  NO.232    P.4/5 4
AUG-15-01 WED 10:14 AM  AK FLOG & COMPANY-0-0-00    FAX NO. 907 272 5197        P.4/5 4

| PAYMENT BOND (See Instructions on Page 2) Bond No. LFS09333 | DATE BOND EXECUTED (Must be same of latter than date of contract) 10 August 01 | FORM APPROVED OMB NO. 9000-0045 |

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, D.C. 20405, and to the Office of Management and Budget, Paperwork Reduction Project (9000-0045), Washington, D.C. 20503.

PRINCIPAL (Legal name and business address)
Luciano General
3131 W. 31st Avenue
Anchorage, AK 99517

TYPE OF ORGANIZATION ("X" ONE)
☐ INDIVIDUAL      ☐ PARTNERSHIP
☐ JOINT VENTURE   ☒ CORPORATION
STATE OF INCORPORATION
Alaska

SURETY(IES) (Name(s) and business(es) address)
Lumbermens Mutual Casualty Company
1 Kemper Drive
Long Grove, Illinois 60049

| PENAL SUM OF BOND |
| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| 2 | 527 | 030 | 00 |

| CONTRACT DATE | CONTRACT NO. |
| 21 June 01 | F41624-01-C-5066 |

OBLIGATION:
We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:
The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of these modifications to the Surety(ies) are waived.

WITNESS:
The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

Exhibit 8
Page 58 of 65
Case No. 3:03-cv-00262-JWS

PRINCIPAL          Luciano General

| Signature(s) | 1. Edwin Luciano (Seal) | 2. (Seal) | 3. (Seal) | CORPORATE SEAL |
| Name(s) & Title(s) (Typed) | Edwin N. Luciano Owner |

INDIVIDUAL SURETY(IES)

| Signature(s) | 1. (Seal) | 2. (Seal) | LUM - 630 (Seal) |
| Name(s) (Typed) | 1. | 2. |

CORPORATE SURETY(IES)

| SURETY | Name & Address | Lumbermens Mutual Casualty Company 1 Kemper Drive, Long Grove, Illinois 60049 | STATE OF INC. IL | LIABILITY LIMIT $ 100% | CORPORATE SEAL |
| A | Signature(s) | 1. Pat J. Moore | 2. |
| | Name(s) & Title(s) (Typed) | 1. Pat J. Moore Attorney-in-Fact | 2. |

NSN 7540-01-152-4061
PREVIOUS EDITION IS USABLE
S-181XQEEP 7/89

25-205
Page 1 of 2

STANDARD FORM 25-A (REV.10-98)
Prescribed by GSA
FAR (48 CFR) 53.228(c)

SEP. 5.2001 12:10PM REMTECH, INC.                    NO.546   P.31

AUG-15-01 WED 10:15 AM AK REMTECH COMPANY-0-0-00   FAX NO. 907 2  513 NO.232   P.5 5

## CORPORATE SURETY(IES) (Continued)

| | | | STATE OF INC. | LIABILITY LIMIT | |
|---|---|---|---|---|---|
| **S U R E T Y B** | Name & Address | | | $ | CORPORATE SEAL |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Title(s) (Typed) | 1. | 2. | | |
| **S U R E T Y C** | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | CORPORATE SEAL |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Title(s) (Typed) | 1. | 2. | | |
| **S U R E T Y D** | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | CORPORATE SEAL |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Title(s) (Typed) | 1. | 2. | | |
| **S U R E T Y E** | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | CORPORATE SEAL |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Title(s) (Typed) | 1. | 2. | | |
| **S U R E T Y F** | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | CORPORATE SEAL |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Title(s) (Typed) | 1. | 2. | | |
| **S U R E T Y G** | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | CORPORATE SEAL |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Title(s) (Typed) | 1. | 2. | | |

LUM - 631

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representation is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed CORPORATE SURETY(IES). In the space designated

"SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal," and shall affix an adhesive seal if executing in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

Exhibit 8'
Page 59 of 65
Case No. 3:03-cv-00262-JWS

**Lumbermens Mutual
Casualty Company**

Administrative Office:
518 Stuyvesant Avenue
P.O. Box 615
Lyndhurst, NJ 07071-0615
Tel: (201) 438-7223
Fax: (201) 531-0201

October 23, 2001

**VIA FEDERAL EXPRESS**

Mr. Albert Maffei
729 N. Street
Anchorage, Alaska 99501

|  | | |
|---|---|---|
| Re: | Principal: | Luciano Enterprises d/b/a/ L.G. General Contractors |
|  | Obligee: | United States Government Air Force Material Command |
|  | Project: | White Alice Radar Restoration Project, |
|  |  | U.S. Air Force Contract No. F41624-01-C-8066 |
|  | Bond No.: | L–500333 |

Dear Mr. Maffei:

In connection with the above matter, as requested enclosed please find copies of the above payment bond, the indemnity agreement you had executed and other miscellaneous financial documentation concerning Luciano General and the other personal indemnitors.

Please contact us if you have any questions.

Very truly yours,


Darren W. Thomas, Esq.


cc:   Mr. Paul Alongi, Sr. (Via Fax 973-331-9341)

Exhibit 8
Page 60 of 65
Case No. 3:03-cv-00262-JWS


LUM - 632

**Lumbermens Mutual
Casualty Company**

**Administrative Office:**
518 Stuyvesant Avenue
P.O. Box 615
Lyndhurst, NJ 07071-0615
Tel:  (201) 438-7223
Fax:  (201) 531-0201

**VIA FASCIMILE AND REGULAR MAIL**

*Facsimile:* (907) 272-5197
Luciano Enterprises, LLC
2132 Post Road
Anchorage, Alaska 99501

**REC'D OCT 2 3 2001**

**VIA CERTIFIED MAIL RRR**

Mr. Edwin N. Luciano
Ms. Gina B. Luciano
3331 W. 31st Avenue
Anchorage, Alaska 99517

Mr. Albert Maffei
729 N. Street
Anchorage, Alaska 99501

| Re: | Principal: | Luciano Enterprises d/b/a/ L.G. General Contractors |
|---|---|---|
| | Obligee: | United States Government Air Force Material Command |
| | Project: | White Alice Radar Restoration Project, |
| | | U.S. Air Force Contract No. F41624-01-C-8066 |
| | Bond No.: | L-500333 |

Gentlemen and Ms. Luciano

In connection with the above matter, this letter is sent as a follow up to our letter of 9/17/01. With regard to payment of contract monies on this project, our preliminary investigation has revealed that Luciano General may have utilized prior payments from the obligee, in the approximate amount of $200,000.00, to repay certain loans that were made to Luciano by Mr. Albert Maffei. This constitutes a diversion of trust monies contrary to the dictates of federal law and the applicable general indemnity agreement executed by all indemnitors. If this is the case, we hereby demand of Luciano General and Mr. Maffei the immediate return of the contact balances that were used to repay Mr. Maffei's loan.

In addition, we reiterate our demand for an immediate accounting of the disbursements from the first two requisitions paid by the Government.

The Surety continues to reserve all of its rights, interests and defenses and we remind you that in the event the Surety incurs any losses, costs or expenses, the same will be the responsibility of Luciano Enterprises and of each of the Surety's indemnitors.

**LUM - 633**

Exhibit 8
Page 61 of 65
Case No. 3:03-cv-00262-JWS

Very truly yours,

Darren W. Thomas, Esq.


cc:    Mr. Michael Pedron, Mapco (Via Fax (210) 444-9712)
       Mr. Paul Alongi, Sr. (Via Fax 973-331-9341)
       Walter Williams, Esq. (Via Fax 202-857-7912)
       Edgar Garcia, Esq. (Via Fax 210-735-6889)

Exhibit 8
Page 62 of 65
Case No. 3:03-cv-00262-JWS

LUM - 634

opportunity to review the same with any person of their choice including an attorney. By executing this document, each acknowledges such review or an intentional waiver thereof.

LUM - 635

# FIRST INDEMNITY OF AMERICA
# INSURANCE COMPANY
# OR ANY QUOTA SHARE PARTNER

*PJL*
*8-22-01*

### AGREEMENT OF INDEMNITY

THIS AGREEMENT of Indemnity, made and entered into this _____10th_____ _____ day of

_____August_____ , 20 _01_ , by Luciano Enterprises, dba

Luciano General, L.L.C. 2132 Post Road, Anchorage, Alaska 99501 (hereinafter called the Contractor) and

Albert Maffei 729 N. Street, Anchorage, Alaska 99501
<sub>(insert full names and addresses of Indemnitors, if any)</sub>

Edwin N. Luciano and wife Gina B.
3331 W. 31st Ave., Anchorage, Alaska  99517 _____ (hereinafter called the Indemnitors, if any) and

FIRST INDEMNITY OF AMERICA INSURANCE COMPANY Parsippany, New Jersey (hereinafter called Surety or Company). The Contractor and Indemnitors are sometimes referred to hereafter correctively as the "Undersigned."

### WITNESSETH:

WHEREAS, the Contractor, in the performance of contracts and the fulfillment of obligations generally, whether in its own name solely or as co-venturer with others, may desire, or be required to give or procure certain surety bonds, undertakings or instruments of guarantee, and to renew, or continue or substitute the same from time to time; or new bonds, undertakings or instruments of guarantee with the same or different penalties, and/or conditions, may be desired or required, in renewal, continuation, extension or substitution thereof; any one or more of which are hereinafter called Bonds; or the Contractor and Indemnitors may request the Surety to refrain from cancelling said Bonds; and

WHEREAS, at the request of the Contractor and the Indemnitors and upon the express understanding that this Agreement of Indemnity should be given, the Surety has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, said Bonds on behalf of the Contractor; and

WHEREAS, the Indemnitors have substantial, material and beneficial interest in the obtaining of the Bonds or in the Surety's refraining from cancelling said Bonds. NOW, THEREFORE, in consideration of the premises the Contractor and Indemnitors for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree with the Surety, its successors and assigns, as follows:

### PREMIUMS

FIRST: The Contractor and Indemnitors will pay to the Surety in such manner as may be agreed upon all premiums and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rates, or as otherwise agreed upon, until the Contractor or Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

### INDEMNITY

SECOND: The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment shall be equal to the amount of the reserve set by the Surety, unless otherwise agreed. In the event of any payment by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and the Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

### ASSIGNMENT

THIRD: The Contractor, the Indemnitors hereby consenting, will assign, transfer and set over, and does hereby assign, transfer and set over to Surety , as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Contractor to the Surety, whether heretofore or hereafter incurred, the assignment in the case of each contract to become effective as of the bond covering such contract, but only in the event of (1) any abandonment, forfeiture or breach of any contracts referred to in the Bonds or of any breach of any said Bonds; or (2) of any breach of the provisions of any of the paragraphs of this Agreement; or (3) of a default in discharging such other indebtedness or liabilities when due or (4) of any assignment by the Contractor for the benefit of creditors, or of the appointment, or of any application for the appointment, of a receiver or trustee for the Contractor whether insolvent or not; (5) of any proceeding which deprives the Contractor of the use of any of the machinery, equipment, plant, tools or material referred to in section (b) of this paragraph; or (6) of the Contractor's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisoned if the Contractor be an individual; (a) All the rights of the Contractor in, and growing in any manner out of all contracts referred to in the Bonds, or in or growing in any manner out of the Bonds; (b) All the rights, title and interest of the Contractor in and to all machinery, equipment, plant, tools and materials which are now, or may hereafter be about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all said sites; (c) All the rights, title and interest of the Contractor in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts; (d) All actions, causes of actions, claims and demands whatsoever which the Contractor may have or acquire against any subcontractor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts and against any surety or sureties of any subcontractor, laborer, or materialman; (e) Any and all percentages retained and any and all sums that may be due or hereafter become due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Contractor has an interest.

### TRUST FUND

FOURTH: If any of the Bonds are executed in connection with a contract which by its terms or by law prohibits the assignment of the contract price, or any part thereof, the Contractor and Indemnitors covenant and agree that all payments received for or on account of said contract shall be held as a trust fund in which the Surety has an interest, for payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension or modification thereof; and, further, it is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Contractor and Indemnitors of otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any said Bonds, and this Agreement and declaration shall also constitute notice of such trust. The contractor further agrees that contract proceeds from any bonded contract shall be maintained and segregated in a separate account apart from the general funds of the contractor. The surety shall have the right at any time to examine and review such accounts in accordance with the purposes and intent of this agreement.

### DECLINE EXECUTION

FIFTH: Unless otherwise specifically agreed in writing, the Surety may decline to execute any Bond and the Contractor and Indemnitors agree to make no claim to the contrary in consideration of the Surety's receiving this Agreement; and if the Surety shall execute a Bid or Proposal Bond, it shall have the right to decline to execute any and all of the bonds that may be required in connection with any award that may be made upon the proposal for which the Bid or Proposal Bond is given, and such declination shall not diminish or alter the liability that may arise by reason of having executed the Bid or Proposal Bond.

### TAKEOVER

SIXTH: In the event of any breach, delay or default asserted by the obligee in any said Bonds, or the Contractor has suspended or ceased work on any contract or contracts covered by any said Bonds, or failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Contractor's conviction for a felony, imprisonment, incompetency, insolvency, or bankruptcy of the Contractor, or the appointment of a receiver or trustee for the Contractor, or the property of the Contractor or in the event of an assignment for the benefit of creditors of the Contractor, or if any action is taken by or against the Contractor under any state, or if any action is taken by or against the Contractor under the insolvency laws of any state, possession, or territory of the United States the Surety shall have the right, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the same, and the Contractor and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

Exhibit 8
Page 63 of 65
Case No. 3:03-cv-00262-JWS

RESERVE-DEPOSIT

TWENTY-FIRST: If for any reason the Su.... 'deem it necessary to set up or to increase a res.......over any possible liability or loss for which the Undersigned will be obligated to indemnify the S.....ty under the terms of this Agreement, the Unders.gn....will deposit with the Surety, immediately upon demand, a sum of money equal to such reserve and any increase thereof as collateral security to the Surety for such liability or loss. The Surety shall have the right to use the deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which the Undersigned would be obligated to indemnify the Surety under the terms of this Agreement. Surety shall have no obligation to invest, or to provide a return on, the deposit. The undersigned shall be entitled to the return of any unused portion of the deposit upon termination of the liability of the Surety on the Bonds and the performance by the Undersigned of all obligations to the Surety under the terms of this Agreement. The Surety's demand shall be sufficient if sent by Registered or Certified Mail to the Undersigned at the addresses stated herein, or at the addresses of the Undersigned last known to the Surety, whether or not actually received.

SUBORDINATION OF INDEMNITORS

TWENTY-SECOND: The Indemnitors shall have no rights of indemnity against the Contractor or his property until the Contractor's obligations to the Surety under this Agreement have been satisfied in full.

NOTICE OF CLAIMS

TWENTY-THIRD: The Undersigned shall immediately notify Surety in writing upon becoming aware of any demand, notice or proceeding which may result in liability to Surety under any Bond.

DISCHARGE FROM SURETYSHIP

TWENTY-FOURTH: The Undersigned will, at any time upon the request of the Surety, procure the discharge of Surety from any Bond and from all liability by reason thereof. Surety may, at any time, take such action as it deems necessary or proper to obtain its release from any and all liability under any Bond.

DEFINITIONS

TWENTY-FIFTH: As used in this Agreement, words in the singular include the plural and words in the plural include the singular. The masculine pronoun shall be read as feminine or neuter as circumstances require. The word "person" shall mean and include individuals, partnerships, corporations and associations.
The terms "contract" shall include all documents comprising the contract documents including general and special conditions, specifications and drawings.
The word "Bond" shall mean a contract of suretyship, guaranty of indemnity, an agreement or consent to provide such a contract and the continuation, extension, alteration, renewal or substitution of such a contract, agreement or consent.

REPRESENTATIONS

TWENTY-SIXTH: The undersigned represent to the Surety that they have carefully read the entire agreement and that there are no other agreements or understandings which in any way lessen or modify the obligations set forth herein.

TWENTY-SEVENTH: The undersigned agree that this agreement shall be governed by the laws of the State of New Jersey.

FINANCIAL INFORMATION

TWENTY-EIGHTH: The undersigned hereby covenant and agree that the Surety will be given immediate notice of the transfer of hypothecation of any principal asset of the undersigned. The undersigned further shall provide annual financial statements of each at least annually, in form acceptable to the Surety, which statement shall be certified as accurate and truthful.

NOTICE OF ASSIGNMENT OR HYPOTHECATION

TWENTY-NINTH: The undersigned each agree that the surety will be given immediate notice in writing of the assignment or hypothecation of contract funds relating to or arising out of any bonded contract.

IN WITNESS WHEREOF, we have hereunto set our hands and seals the day and year first above written.

ATTEST OR WITNESS:

| | |
|---|---|
| _[signature]_ Corporate Secretary ATTEST | Luciano Enterprises dba Luciano General, L.L.C. (Full Name of Contractor) (MEMBER) |
| _[signature]_ WITNESS | By _[signature]_ OWNER (Corporate Officer) Edwin N. Luciano 038886 Title (SEAL) |
| _[signature]_ WITNESS | _[signature]_ 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 (Signature Corporate Officer Individually) Edwin N. Luciano |
| _[signature]_ WITNESS | Gina B. Luciano (Type or Print Additional Indemnitor Name) AOL 5619300 |
| | Sign _[signature]_ 574349473 Drivers Lic. # 8012719 ADL SS# |
| | Albert Maffei 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 (Type or Print Additional Indemnitor Name) |
| _[signature]_ WITNESS | Sign _[signature]_ Drivers Lic. # SS# |
| _[signature]_ WITNESS | (Type or Print Additional Indemnitor Name) Sign Drivers Lic. # SS# |
| LUM - 636 | (Type or Print Additional Indemnitor Name) Sign Drivers Lic. # SS# |
| _[signature]_ WITNESS | (Type or Print Additional Indemnitor Name) Sign Drivers Lic. # SS# |

Exhibit 8
Page 64 of 65
Case No. 3:03-cv-00262-JWS

## For Acknowledgment of Contractor's Signature
### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____
On this _____ day of _____, in the year 20 _____ before me personally come(s)
_____
to me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument and acknowledge(s) to me
that _____ he _____ executed the same.
Signed and sworn before me this _____ day
of _____, 20 _____.

_____ (Seal)
(Notary Public)
My commission expires: _____

### CORPORATE ACKNOWLEDGMENT

STATE OF _Alaska_
COUNTY OF _Anchorage_
On this _13th_ day of _August_, in the year 20 _01_, before me personally comes
_Edwin N. Luciano_
to me known, who, being by me duly sworn, deposes and says that he resides in the City of _Anchorage, Alaska_
that he is the ~~President~~ _MEMBER_ of the _Luciano Enterprises dba Luciano General, LLC_
the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation, that the seal affixed to the said
instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by
like order.
Signed and sworn before me this _13th_ day
of _Aug._, 20 _01_.

_Edith A. Douglas_
(Notary Public)
My commission expires: _3/24/2002_

## For Acknowledgment of Indemnitor's Signature's
### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Alaska_
COUNTY OF _Anchorage_
On this _13th_ day of _August_, in the year 20 _01_, before me personally come(s)
_Edwin N. and Gina B. Luciano_
to me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument and acknowledge(s) to me
that _____ they _____ executed the same.
Signed and sworn before me this _13th_ day
of _aug._, 20 _01_.

_Edith A. Douglas_ (Seal)
(Notary Public)
My commission expires: _3/24/2002_

## For Acknowledgment of Indemnitor's Signature's
### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Alaska_
COUNTY OF _Anchorage_
On this _13th_ day of _August_, in the year 20 _01_, before me personally come(s)
_Albert Maffei_
to me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument and acknowledge(s) to me
that _____ he _____ executed the same.
Signed and sworn before me this _13th_ day
of _August_, 20 _01_.

_Edith A. Douglas_
(Notary Public)
My commission expires: _3/24/2002_

### CORPORATE ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____
On this _____ day of _____, in the year 20 _____, before me pe...
_____
to me known, who, being by me duly sworn, deposes and says that he resides in the City of _____
that he is the _____ of the _____
the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation, that the seal affixed to the said
instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by
like order.
Signed and sworn before me this _____ day
of _____, 20 _____.

_____ (Seal)
(Notary Public)
My commission expires: _____