LAW OFFICES
**MAFFEI, INC.**
A PROFESSIONAL CORPORATION

ALBERT MAFFEI
TELEPHONE (907) 277-2503
FAX (907) 277-1239

4141 B STREET, SUITE 206
ANCHORAGE, ALASKA 99503

P.O. BOX 100674
ANCHORAGE, ALASKA 99510-0674

December 29, 2002

**RECEIVED**
DEC 30 2002

George E. Goerig, Esquire
Goerig and Associates
1007 W. 3rd Avenue, Suite 301
Anchorage, AK 99501

RE: Remtech v. Lumbermen's Mutual, v. Maffei et al
(Indemnity Agreement by Maffei)

Dear George:

I am handing you summary judgment motion documents which were delivered to me on Thursday the 26th of December, 2002.

The service page shows that the documents were hand delivered to attorney Paul Stockler, personally, on December 26, 2002. The time for response expires on January 10, 2003.

I would ask that you review the documents and then give me a telephone call to discuss this matter further.

Thanking you for your attention to this matter, I remain,

Very Truly Yours,

*[signature]*

Albert Maffei

AM/bfm

Exhibit 9
Page 1 of 46
Case No. 3:03-cv-00262-JWS

GG0016

PAUL STOCKLER
DEC 27 2002

Frank A. Pfiffner
ABA No. 7505032
HUGHES THORSNESS POWELL
HUDDLESTON & BAUMAN LLC
550 West Seventh Avenue, Suite 1100
Anchorage, Alaska 99501-3563
Telephone: (907) 274-7522

Attorneys for Defendant
Lumbermens Mutual Casualty Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES for the Use and Benefit of REMTECH, INC., a Washington corporation,<br><br>                Plaintiff,<br>vs.<br><br>LUMBERMEN'S MUTUAL CASUALTY CO., a foreign corporation, LUCIANO ENTERPRISES, INC. dba LG GENERAL CONTRACTORS and/or LUCIANO GENERAL; EDWIN NEGRON LUCIANO,<br><br>                Defendants. | Case No. A01-309 CIV (JWS)<br><br>**MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF COLLATERAL SECURITY** |
| LUMBERMENS MUTUAL CASUALTY COMPANY,<br><br>                Third Party Plaintiff,<br>vs.<br><br>GINA B. LUCIANO and ALBERT MAFFEI,<br><br>                Third-Party Defendants. | |

HUGHES THORSNESS POWELL
DDLESTON & BAUMAN LLC
ATTORNEYS AT LAW
50 WEST SEVENTH AVENUE
SUITE 1100
NCHORAGE, ALASKA 99501
(907) 274-7522
(907) 263-8320 FAX

Exhibit 9
Page 2 of 46
Case No. 3:03-cv-00262-JWS

*MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF COLLATERAL SECURITY*
*Remtech, Inc. v. Lumbermens Mutual Casualty Company, et al.*
*Case No. A 01 309 CIV (JWS)*
*(8172-1/180345)*            Page 1 of 18

GG0017

# MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF COLLATERAL SECURITY

## I. INTRODUCTION

Luciano Enterprises, L.L.C., Edward Luciano, Gina Luciano, and Albert Maffei (collectively "Indemnitors") entered into a general indemnity agreement ("GIA") with First Indemnity of America Insurance Company ("FIA") wherein Indemnitors agreed to exonerate and indemnity FIA for all losses including costs and attorney's fees that may be sustained by FIA as a result of any claims under the payment or performance bonds issued for the Remedial Action Project at the former Cold Bay While Alice Communication System Site at Cold Bay, Alaska (the "project"). (Aff. of Bruce Dickstein at ¶ 3 and Ex. A attached thereto.) The GIA inures to the benefit of Lumbermen's Mutual Casualty Company ("Lumbermens") by virtue of language contained therein. (Aff. of Bruce Dickstein at ¶ 4 and Ex. A attached thereto.)

Lumbermens has set a claims reserve at $609,000 in this case. (Aff. of Bruce Dickstein at ¶6.) However, claims have now been made against Lumbermens on the payment bond for the project in an amount in excess of one million dollars. In the deposition of Keith Carpenter, President of Remtech, Inc, taken in Spokane, Washington, on December 9 and 10, 2002, Remtech provided the parties with a revised principal contract claim of $1,328,258.88. (Aff. of Frank A. Pfiffner and Ex. A attached thereto.) Prior to the most recent updated claim, Lumbermens has made repeated requests to

HUGHES THORSNESS POWELL
DOLESTON & BAUMAN LLC
ATTORNEYS AT LAW
50 WEST SEVENTH AVENUE
SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 274-7522
(907) 263-8320 FAX

*MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF COLLATERAL SECURITY*
*Remtech, Inc. v. Lumbermens Mutual Casualty Company, et al.*
*Case No. A 01 309 CIV (JWS)*
*(8172-1/180345)*    Page 2 of 18

Exhibit 9
Page 3 of 46
Case No. 3:03-cv-00262-JWS
GG0018

Indemnitors demanding that they post collateral to cover the claimed amounts. (Aff. of Bruce Dickstein at ¶7 and Exs. C and D attached thereto.) Indemnitors have failed to provide any collateral as required under the GIA. (Affidavit of Bruce Dickstein at ¶ 9). Therefore, Lumbermens moves this court for summary judgment on the issue of the collateral security due Lumbermens and an order requiring Indemnitors to post the required collateral.

## II. FACTS

The GIA signed by Indemnitors states in pertinent part:

SECOND: The contractor and indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this agreement or (3) In enforcing any of the covenants and conditions of this Agreement. **Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the surety shall have made any payment therefor.** Such payment shall be equal to the amount of the reserve set by the Surety, unless otherwise agreed. In the event of any payment by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and the Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the

JGHES THORSNESS POWELL
)DLESTON & BAUMAN LLC
ATTORNEYS AT LAW
0 WEST SEVENTH AVENUE
SUITE 1100
ICHORAGE, ALASKA 99501
(907) 274-7522
(907) 263-8320 FAX

*MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF COLLATERAL SECURITY*
*Remtech, Inc. v. Lumbermens Mutual Casualty Company, et al.*
Case No. A 01 309 CIV (JWS)
(8172-1/180345)                               Page 3 of 18

Exhibit 9
Page 4 of 46
Case No. 3:03-cv-00262-JWS

GG0019

> matters herein contemplated by the Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that is was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

(Aff. of Bruce Dickstein, Ex. A.) In the present litigation Remtech seeks to recover in excess of one million dollars plus interest and attorney's fees under the payment bond issued by Lumbermens. Accordingly, Lumbermens has made two demands to Indemnitors for collateral pursuant to the indemnity clause of the GIA. (Aff. of Bruce Dickstein, Exs. C and D - letter from Darren W. Thomas to Edwin Luciano dated October 10, and letter from Darren W. Thomas to Edwin Luciano, Gina Luciano, and Albert Maffei, dated November 12, 2001). To date Indemnitors have failed to provide any collateral to Lumbermens. (Aff. of Bruce Dickstein at ¶ 9).

After Remtech brought the present action, Mr. Maffei fraudulently transferred some of his property in an attempt to move it beyond the reach of his creditors. On March 28, 2002, Mr. Maffei transferred Unit 125 of Lahaina Shores from himself to the Maffei Family Ltd. Partnership. (Ex. A.) Counsel for Lumbermens wrote counsel for Mr. Maffei to inform him of the Alaska fraudulent transfer statute and to request that the transfer immediately be undone. (Ex. B - letter dated November 5, 2002, from Frank Pfiffner to Paul Stockler). Any further delay in procuring appropriate

JGHES THORSNESS POWELL
DDLESTON & BAUMAN LLC
ATTORNEYS AT LAW
iO WEST SEVENTH AVENUE
SUITE 1100
ICHORAGE, ALASKA 99501
(907) 274-7522
(907) 263-8320 FAX

*MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF COLLATERAL SECURITY*
*Remtech, Inc. v. Lumbermens Mutual Casualty Company, et al.*
*Case No. A 01 309 CIV (JWS)*
*(8172-1/180345)*                Page 4 of 18                GG0020
Exhibit 9
Page 5 of 46
Case No. 3:03-cv-00262-JWS

collateral security from Indemnitors (including Mr. Maffei) puts Lumbermens at risk that the potential collateral security will be transferred beyond its reach.

### III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that:

> ... [J]udgment sought shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.

See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). Pursuant to Fed. R. Civ. P. 56(c), summary judgment is proper if no genuine issue of material fact exists or if the movant is clearly entitled to prevail as a matter of law when viewing the evidence, together with the inferences which may be drawn from it, in the light most favorable to the adverse party. Radobenko v. Automated Equip. Corp., 520 F.2d 540, 543 (9th Cir. 1975). On a motion for summary judgment, where the factual context makes a non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987). Further, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to

HUGHES THORSNESS POWELL
HOLLESTON & BAUMAN LLC
ATTORNEYS AT LAW
50 WEST SEVENTH AVENUE
SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 274-7522
(907) 263-8320 FAX

*MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF COLLATERAL SECURITY*
*Remtech, Inc. v. Lumbermens Mutual Casualty Company, et al.*
*Case No. A 01 309 CIV (JWS)*
*(8172-1/180345)*                    Page 5 of 18

Exhibit 9
Page 6 of 46
Case No. 3:03-cv-00262-JWS
GG0021

that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

"Interpretation of a contract is a matter of law, including whether the contract is ambiguous" United States v. King Features Entertainment Inc., 843 F.2d 394, 398 (9th Cir. 1988). "Summary judgment is appropriate when the contract terms are clear and unambiguous, even if the parties disagree as to their meaning." Id.; see also Kassbaum v. Steppenwolf Prods., Inc., 236 F.3d 487, 491 (9th Cir. 2000). On motions for summary judgment, courts must give effect to the objective intent of the parties as indicated by the unambiguous terms of their written agreements. In re Gas Reclamation, Inc. Sec. Litigation, 741 F. Supp. 1094, 1097 (S.D.N.Y. 1990).

### IV. INDEMNITORS ARE CONTRACTUALLY OBLIGATED TO DEPOSIT COLLATERAL SECURITY WITH LUMBERMENS IN THE AMOUNT OF RESERVE SET BY LUMBERMENS OR ALTERNATIVELY THE AMOUNT OF THE CLAIM

There is substantial case law finding indemnity clauses similar or identical to that in the GIA valid and enforceable. Further the case law stands solidly for the following contention:

> Not only does a bill quia timet lie to compel the principal to pay the debt after it has become due, but its use has also been extended to compel the principal to furnish the surety indemnity against possible loss where the surety has reasonable grounds for anticipating that his rights are being jeopardized and that he will incur a liability by threatened conduct of the principal. **Applying similar principles, the courts have sustained a right on the part of the surety to**

IGHES THORSNESS POWELL
IDLESTON & BAUMAN LLC
ATTORNEYS AT LAW
0 WEST SEVENTH AVENUE
SUITE 1100
CHORAGE, ALASKA 99501
(907) 274-7522
(907) 263-8320 FAX

*MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF COLLATERAL SECURITY*
*Remtech, Inc. v. Lumbermens Mutual Casualty Company, et al.*
Case No. A 01 309 CIV (JWS)
(8172-1/180345)                                   Page 6 of 18

Exhibit 9
Page 7 of 46
Case No. 3:03-cv-00262-JWS    GG0022

> sue for specific performance of an agreement to furnish him indemnity. Thus, where the principal agreed that he would turn over choses in action to indemnify his surety in consideration of the suretyship, it was held that a court of equity would decree specific performance where the principal was in falling circumstances.

50 Am.Jur., Suretyship §225 (1944) (emphasis added) (as quoted and relied on in Milwaukee Constr. Co. v. Glens Falls Ins. Co., 367 F.2d 964 (9th Cir. 1966)). "The relief granted, when exoneration or *quia timet* rights are asserted, depends on the facts of the particular case." Restatement (Third) of Suretyship and Guarantee §21, cmt. K (1996). As set forth in the Restatement, the rule of law is as follows:

> Among the courses open to a court are to direct performance by the principal obligor, to require that a sum due the obligee by the principal obligor be paid into the court for the obligee, or to require that the principal obligor give the secondary obligor adequate security for its ultimate reimbursement.

Id. The court in Borey v. Nat'l Union Fire Ins. Co., 934 F.2d 30, 32 (2nd Cir. 1991) explained:

> 'Quia timet' is the right of a surety to demand that the principal place the surety 'in funds' when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor.

Id.

The indemnity language in the GIA is merely a contractual embodiment of the common law *quia timet* principal. The idea is that the indemnitor is "bound not

HUGHES THORSNESS POWELL
DDLESTON & BAUMAN LLC
ATTORNEYS AT LAW
30 WEST SEVENTH AVENUE
SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 274-7522
(907) 263-8320 FAX

*MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF COLLATERAL SECURITY*
*Remtech, Inc. v. Lumbermens Mutual Casualty Company, et al.*
*Case No. A 01 309 CIV (JWS)*
*(8172-1/180345)*               Page 7 of 18
Exhibit 9
Page 8 of 46
Case No. 3:03-cv-00262-JWS
GG0023

simply to indemnify the surety but to keep it unmolested, and this before the surety has paid the principal's debt." Fidelity & Deposit Co. v. Bristol Steel & Iron Works, Inc., 722 F.2d 1160, 1165 (4th Cir. 1983). A surety "is not obliged to make inroads into his own resources when the loss must in the end fall upon the principal." Admiral Oriental Line v. United States, 86 F.2d 201, 204 (2nd Cir. 1936).

The Ninth Circuit has addresses indemnity agreements similar to that contained in the GIA. In Safeco Ins Co. v. Schwab, 739 F.2d 431 (9th Cir. 1984), Safeco brought an action against the defendant requesting specific performance of a collateral security clause in an indemnity contract. Id. at 432. The indemnity contract included a provision which provided that "an amount sufficient to discharge any claim made against Surety [Safeco] on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against any loss on any Bond." Id. The Ninth Circuit explained that "once a surety such as Safeco receives a demand on its bond, the indemnitor must provide the surety with funds which the surety is to hold in reserve." Id. at 433. The court then stated that, "sureties are ordinarily entitled specific performance of collateral security clauses." Id. "If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced." Id. (quoting Marine Midland Trust Co. v. Alleghany Corp., 28 F.Supp. 680, 683-84 (S.D.N.Y. 1939). The Ninth Circuit concluded that "[p]aragraph 2 of the indemnity contract should be read as providing for collateral security after a demand is made against

Hughes Thorsness Powell
Huleston & Bauman LLC
Attorneys At Law
50 West Seventh Avenue
Suite 1100
Anchorage, Alaska 99501
(907) 274-7522
(907) 263-8320 Fax

MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF COLLATERAL SECURITY
Remtech, Inc. v. Lumbermens Mutual Casualty Company, et al.
Case No. A 01 309 CIV (JWS)
(8172-1/180345)                        Page 8 of 18        Exhibit 9
                                                            Page 9 of 46            GG0024
                                              Case No. 3:03-cv-00262-JWS

the bond. Therefore, Safeco's request for specific performance stated a claim upon which relief could be granted." Id. at 434.

Similarly, the Ninth Circuit, in Milwaukee Constr. Co. v. Glens Falls Ins. Co., 367 F.2d 964 (9th Cir. 1966), addressed an indemnity agreement which involved the following language:

> * * * that if the surety shall set up a reserve to cover any claim, suit or judgment under any such bonds, the indemnitors will, immediately upon demand, deposit with the surety a sum of money or acceptable security equal to such reserve, such sum to be held by the surety as collateral security on said bonds; * * * and if the surety shall bring suit to enforce any obligation of the indemnitors under this instrument, the indemnitors shall be liable for the costs and expenses, including fees of attorneys, incurred in prosecuting such suit, and such costs and expenses shall be included in any judgment that may be rendered against the indemnitors.

Id. at 965. The Glens Falls Insurance Company (the surety) estimated that it would be obligated to pay approximately $83,000 to the beneficiaries of the bonds. Id. The insurance company made demands under the indemnity agreement, but the construction company had not complied with the demand. Id. The district court granted specific performance of the indemnity clause and required the construction company to deposit $83,000 with the insurance company. Id. In affirming the grant of specific performance by the lower court, the Ninth Circuit explained that, "[b]efore paying the debt a surety may call upon the principal to exonerate him by discharging it; he is not obliged to make

HUGHES THORSNESS POWELL
HUDDLESTON & BAUMAN LLC
ATTORNEYS AT LAW
50 WEST SEVENTH AVENUE
SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 274-7522
(907) 263-8320 FAX

*MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF COLLATERAL SECURITY*
*Remtech, Inc. v. Lumbermens Mutual Casualty Company, et al.*
*Case No. A 01 309 CIV (JWS)*
*(8172-1/180345)*                Page 9 of 18

Exhibit 9
Page 10 of 46
Case No. 3:03-cv-00262-JWS

GG0025

inroads into his own resources when the loss must in the end fall upon the principal." Id. at 967 (quoting Admiral Oriental Line v. United States, 86 F.2d 201, 204 (2nd Cir. 1936).

The Ninth Circuit is not the only circuit to address indemnity provisions such as the one in the GIA at hand. In American Motorists Insurance Co. v. United Furnace Co., Inc., 876 F.2d 293 (2nd Cir. 1989) the Second Circuit addressed a collateral security clause which provided that "[a]ny demand upon [AIMCO] by the [United States] shall be sufficient to conclude that a liability exists and [United] shall then place [AIMCO] with sufficient funds as collateral security to cover the liability." Id. at 295. The lower court held that since there was an absence of actual payment by AIMCO, its ultimate liability on the bond was too speculative and therefore not ripe for adjudication. Id. at 299. The Second Circuit reversed holding that "the district court failed to give effect to the intentions of the parties as manifested in the indemnification agreement viewed in its entirety." Id. The court noted that the contract language contained in the indemnification agreement stated that any demand upon the surety would be sufficient to conclude that liability exists such that collateral security shall be warranted. Id. The court then stated:

> This unambiguous sentence gives AIMCO a cause of action for collateral security that is ripe for review. By means of this provision, the parties agreed that in the event the United States were to make a "demand" against AIMCO, United would be obligated to provide AIMCO with collateral security to protect AIMCO against the liability threatened by

MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF COLLATERAL SECURITY
Remtech, Inc. v. Lumbermens Mutual Casualty Company, et al.
Case No. A 01 309 CIV (JWS)
(8172-1/180345)    Page 10 of 18    Exhibit 9
Page 11 of 46    GG0026
Case No. 3:03-cv-00262-JWS

the demand. In this action, AIMCO seeks specific performance of this provision of the indemnity agreement.

Id. The court focused on the actual language of the indemnity clause and explained that the district court "fail[ed] to appreciate the significance and the scope of the protection AMICO bargained for in the indemnity agreement." Id. at 301. The court went on to state that, "[h]aving bargained for collateral security and having failed to receive it, AMICO's injury is real and immediate." Id. at 302. The Second Circuit concluded that "[t]he district court erroneously dismissed AMICO's complaint as not yet ripe.... Moreover, with respect to its claim for collateral security, **AMICO is entitled to summery judgment on the issue of liability.**" Id. at 303 (emphasis added).

In <u>Morley Construction Co. v. Maryland Casualty Co.</u>, 90 F.2d 976 (8th Cir. 1937), the Eighth Circuit held that the plaintiff could maintain a suit in equity compelling exoneration of the surety by the construction company. Id. The surety company complained as follows:

> Plaintiff has good reason to believe and does believe that defendant Morely Construction Company, unless restrained, will so convert or conceal such funds, and that unless the said funds are so impressed with a trust or lien, and unless the defendant Morley Construction Company and its officers, servants and agents are restrained and enjoined from withdrawing or disbursing said money or any part thereof for any purpose other than that covered by said supplemental agreement, and unless said defendant Merchants Bank of Kansas City, Missouri, is restrained from permitting the withdrawal of said funds or any part thereof for any purpose other than that set out in said supplementary agreement, this

UGHES THORSNESS POWELL
DOLESTON & BAUMAN LLC
ATTORNEYS AT LAW
50 WEST SEVENTH AVENUE
SUITE 1100
NCHORAGE, ALASKA 99501
(907) 274-7522
(907) 263-8320 FAX

MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF COLLATERAL SECURITY
Remtech, Inc. v. Lumbermens Mutual Casualty Company, et al.
Case No. A 01 309 CIV (JWS)
(8172-1/180345)                Page 11 of 18        Exhibit 9
                                                    Page 12 of 46        GG0027
                                          Case No. 3:03-cv-00262-JWS

> plaintiff will suffer an irreparable loss, and states that the plaintiff has no adequate remedy at law for any relief in the premises.

Id. In holding that the plaintiff was entitled to the remedy of exoneration (a remedy similar to *quia timet*)[1] the court quoted favorably from New Orleans v. Gaines' Adm'r, 131 U.S. 191, 212, 9 S.Ct. 745 (1889), wherein the Supreme Court of the United States quoted approvingly from Lord Redesdale's Treatise (4th Ed., p. 148) as follows:

> A court of equity will also prevent injury in some cases by interposing before any actual injury has been suffered, by a bill which has been sometimes called a bill quia timet, in analogy to proceedings at the common law, where in some cases a writ may be maintained before any molestation, distress or impleading. Thus a surety may file a bill to compel the debtor on a bond in which he has joined to pay the debt when due, whether the surety has been actually sued for it or not.

Id. at 977. The Eighth Circuit concluded its analysis by quoting the statement in Admiral Oriental Line v. United States, 86 F.2d 201, 204 (2nd Cir. 1936), that "before paying the debt a surety may call upon the principal to exonerate him by discharging it; he is not obliged to make inroads into his own resources when the loss must in the end fall upon the principal." 90 F.2d at 977.

---

[1] "Exoneration, though closely related [to *quia timet*], is distinct. It is the surety's right, after the debt has matured, to compel the principal to honor its obligation to the debtor." Borey v. Nat'l Union Fire Ins. Co., 934 F.2d 30, 32 (2nd Cir. 1991).

HUGHES THORSNESS POWELL HUGLESTON & BAUMAN LLC
ATTORNEYS AT LAW
10 WEST SEVENTH AVENUE
SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 274-7522
(907) 263-8320 FAX

MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF COLLATERAL SECURITY
Remtech, Inc. v. Lumbermens Mutual Casualty Company, et al.
Case No. A 01 309 CIV (JWS)
(8172-1/180345)    Page 12 of 18    Exhibit 9
Page 13 of 46    GG0028
Case No. 3:03-cv-00262-JWS

In <u>Fidelity & Deposit Co. v. Bristol Steel & Iron Works, Inc.</u>, 722 F.2d 1160 (4th Cir. 1983), the Fourth Circuit addressed an indemnity contract with provisions for collateral security identical to the GIA at hand. The court was concerned with the similar but unrelated portion of the indemnity contract which provided that payments made by the surety in good faith are chargeable to the indemnitors. The Fourth Circuit, however first discussed indemnity contracts in general and stated that,

> 'Resort to implied indemnity principles is improper when an express indemnification contract exists;' when there is such an express contract, **'a surety is entitled to stand upon the letter of his contract.'** There is in this case an "express indemnification contract." Accordingly, the rights of the Sureties are not to be determined by general "indemnity principles," as relied on by the Contractor, but by the "letter of [the Contractor's] contract" of indemnification.

<u>Id.</u> at 1163 (emphasis added). The court also at one point quoted portions of the indemnity agreement containing the language (identical to the language in the GIA) stating that "[p]ayment . . . shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or, is asserted against the Surety, whether or not the Surety shall have made any payment therefor." <u>Id.</u> The Fourth Circuit then stated that,

> Provisions such as those just cited, while strict, are common in contracts of indemnification executed by contractors and others to induce the execution of performance bonds by compensated sureties, and they have been uniformly sustained and upheld, subject to a single exception to be noted.

GHES THORSNESS POWELL
OLESTON & BAUMAN LLC
ATTORNEYS AT LAW
) WEST SEVENTH AVENUE
SUITE 1100
CHORAGE, ALASKA 99501
(907) 274-7522
(907) 263-8320 FAX

*MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF COLLATERAL SECURITY*
*Remtech, Inc. v. Lumbermens Mutual Casualty Company, et al.*
Case No. A 01 309 CIV (JWS)
(8172-1/180345)                    Page 13 of 18            Exhibit 9           GG0029
                                                            Page 14 of 46
                                                            Case No. 3:03-cv-00262-JWS

Id. at 1163-64; see also American Motorists Insurance Co. v. United Furnace Co., Inc., 876 F.2d 293 (2nd Cir. 1989) (surety is entitled to summary judgment on the issue of liability with respect to the collateral security clause in the indemnification agreement); Fidelity & Deposit Co. of Maryland v. Refine Construction Co., 1984 U.S. Dist. LEXIS 15491 (S.D.N.Y. June 27, 1984) (court upheld grant of summary judgment as to liability in favor of the surety).

In the GIA, Indemnitors agreed that, in consideration for the issuance of payment and performance bonds, Indemnitors would exonerate and indemnity Lumbermens for all losses sustained as a result of any claims under the payment or performance bonds. (Aff. of Bruce Dickstein, Ex. A.) The indemnity clause contained in the GIA further provides that payment shall be made to the surety as soon as liability exists or is asserted against the surety, whether or not the surety has made any payment therefore. (Id.) The language of the indemnity agreement is clear and unambiguous and is supported by appropriate consideration (Lumbermens issued the requested bonds).

Liability has now been asserted against the Lumbermens payment bond in the principal amount of $1,328,258.88 by Remtech Inc. (Aff. of Frank A. Pfiffner, Ex. A.) This demand is clearly the type of liability contemplated by the indemnity language in the GIA. Lumbermens previously requested that Indemnitors comply with the provisions of the GIA and post collateral security in the amount of $1,100,000.00 to cover the claimed amount in this lawsuit plus interest and attorneys fees. (Aff. of Bruce

IGHES THORSNESS POWELL
JOLESTON & BAUMAN LLC
ATTORNEYS AT LAW
0 WEST SEVENTH AVENUE
SUITE 1100
ICHORAGE, ALASKA 99501
(907) 274-7522
(907) 263-8320 FAX

*MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF COLLATERAL SECURITY
Remtech, Inc. v. Lumbermens Mutual Casualty Company, et al.
Case No. A 01 309 CIV (JWS)
(8172-1/180345)*    Page 14 of 18

Exhibit 9
Page 15 of 46    GG0030
Case No. 3:03-cv-00262-JWS

Dickstein, Exs. C and D - letter from Darren W. Thomas to Edwin Luciano, Gina Luciano, and Albert Maffei, dated November 12, 2001.) Indemnitors failed to comply with this request. There can be no dispute as to the meaning of the terms of the GIA. Nor can there be any dispute that the claim by Remtech on the Lumbermens bond entitles Lumbermens to collateral security pursuant to the indemnity agreement language in the GIA. Therefore no genuine issue of material fact exists to preclude a grant of summary judgment.

Contracts with language similar, if not identical, to the language contained in the GIA in this case have been upheld as valid and enforceable. See Milwaukee Constr. Co. v. Glens Falls Ins. Co., 367 F.2d 964 (9th Cir. 1966); Safeco Ins Co. v. Schwab, 739 F.2d 431 (9th Cir. 1984); Fidelity & Deposit Co. of Maryland v. Refine Construction Co., 1984 U.S. Dist. LEXIS 15491 (S.D.N.Y. June 27, 1984); American Motorists Insurance Co. v. United Furnace Co., Inc., 876 F.2d 293 (2nd Cir. 1989); Fidelity & Deposit Co. v. Bristol Steel & Iron Works, Inc., 722 F.2d 1160 (4th Cir. 1983). Further the equitable principal of *quia timet* embodied in the indemnity provision of the GIA is well settled and enforceable at common law. New Orleans v. Gaines' Adm'r, 131 U.S. 191, 212 (1889) (as quoted in Morley Construction Co. v. Maryland Casualty Co., 90 F.2d 976 (8th Cir. 1937)).

Summary judgment has been granted in situations analogous with the one in this case. American Motorists, 876 F.2d at 303; Refine Construction, 1984 U.S. Dist.

GHES THORSNESS POWELL
DLESTON & BAUMAN LLC
ATTORNEYS AT LAW
) WEST SEVENTH AVENUE
SUITE 1100
:HORAGE, ALASKA 99501
(907) 274-7522
(907) 263-8320 FAX

*MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF COLLATERAL SECURITY*
*Remtech, Inc. v. Lumbermens Mutual Casualty Company, et al.*
Case No. A 01 309 CIV (JWS)
(8172-1/180345)    Page 15 of 18    Exhibit 9    GG0031
Page 16 of 46
Case No. 3:03-cv-00262-JWS

LEXIS at *11. Furthermore, the Ninth Circuit has found that specific performance of such agreements is proper. Milwaukee Constr. Co, 367 F.2d at 967; see also Safeco, 739 F.2d at 433 ("sureties are ordinarily entitled specific performance of collateral security clauses"). The court is obligated to "give effect to the intentions of the parties as manifested in the indemnification agreement viewed in its entirety." American Motorists, 876 F.2d at 299. The Ninth Circuit reasoned that, "[i]f a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced." Id. Accord Fidelity & Deposit Co., 722 at 1163 ("a surety is entitled to stand upon the letter of his contract.").

The contract language in the GIA in question states unequivocally that "[p]ayment . . . shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the surety shall have made any payment therefor." (Aff. of Bruce Dickstein, Ex. A.) Liability has been asserted against Lumbermens in the principal amount of $1,328,258.88. (Aff. of Frank A. Pfiffner, Ex. A.) Therefore Lumbermens is entitled to collateral security from Indemnitors in the amount of $1,328,258.88. Alternatively, Lumbermens is entitled to collateral security in the amount of $1,100,000 previously demanded from the indemnitors (Aff. of Bruce Dickstein, Ex. D.) or in the amount of $609,000 that has been reserved for the payment bond claim on the Cold Bay Project. (Aff. of Bruce Dickstein at ¶ 6.)

HES THORSNESS POWELL
OLESTON & BAUMAN LLC
ATTORNEYS AT LAW
1 WEST SEVENTH AVENUE
SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 274-7522
(907) 263-8320 FAX

*MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF COLLATERAL SECURITY*
*Remtech, Inc. v. Lumbermens Mutual Casualty Company, et al.*
Case No. A 01 309 CIV (JWS)
(8172-1/180345)      Page 16 of 18

Exhibit 9
Page 17 of 46      GG0032
Case No. 3:03-cv-00262-JWS

## V. CONCLUSION

On motions for summary judgment, courts must give effect to the objective intent of the parties as indicated by the unambiguous terms of their written agreements. In this case the contract provision is unambiguous and there exists no genuine issue of material fact which would preclude summary judgment. Therefore, Lumbermens requests that this court grant its motion for partial summary judgment. Indemnitors are obligated to provide Lumbermens with collateral security to protect Lumbermens against the liability threatened by this action. Lumbermens requests that the court compel specific performance of the indemnity clause and order Indemnitors to provide $1,328,258.88 in collateral security to Lumbermens.

DATED at Anchorage, Alaska, this 26th day of December, 2002.

HUGHES THORSNESS POWELL
HUDDLESTON & BAUMAN LLC
Attorneys for Defendant Lumbermens
Mutual Casualty Company

By: *Frank A. Pfiffner*
Frank A. Pfiffner
ABA No. 7505032

HES THORSNESS POWELL
LESTON & BAUMAN LLC
ATTORNEYS AT LAW
WEST SEVENTH AVENUE
SUITE 1100
HORAGE, ALASKA 99501
(907) 274-7522
(907) 263-8320 FAX

MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF COLLATERAL SECURITY
Remtech, Inc. v. Lumbermens Mutual Casualty Company, et al.
Case No. A 01 309 CIV (JWS)
(8172-1/180345)                        Page 17 of 18         Exhibit 9         GG0033
                                                            Page 18 of 46
                                                        Case No. 3:03-cv-00262-JWS

<u>Certificate of Service</u>

On the 20th day of December, 2002, a true and correct copy of the foregoing was ☒ mailed ☐ hand-delivered ☐ faxed to:

John C. Black
Michael S. Bissell
McCormick, Dunn & Black, P.S.
Fernwell Building, Suite 200
W. 505 Riverside Avenue
Spokane, Washington 99201

☒ mailed ☐ hand-delivered ☐ faxed to

Raymond H. Royce
Law offices of Royce & Brain
1407 W. 31st Avenue, 7th Floor
Anchorage, Alaska 99503-3678

☐ mailed ☒ hand-delivered ☐ faxed to

Paul D. Stockler
705 Christensen Drive
Anchorage, AK 99501

*Pattie Hopp* (signature)
PATTIE HOPP

HUGHES THORSNESS POWELL
HUDDLESTON & BAUMAN LLC
ATTORNEYS AT LAW
10 WEST SEVENTH AVENUE
SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 274-7522
(907) 263-8320 FAX

MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF COLLATERAL SECURITY
Remtech, Inc. v. Lumbermens Mutual Casualty Company, et al.
Case No. A 01 309 CIV (JWS)
(8172-1/180345)                    Page 18 of 18

Exhibit 9
Page 19 of 46
Case No. 3:03-cv-00262-JWS

GG0034