☐ HD   OTHER _____
RECEIVED

AUG 0 1 2003

HUGHES THORSNESS POWELL
HUDDLESTON & BAUMAN LLC

FILED

JUL 3 1 2003

,ED STATES DISTRICT COURT
DISTRICT OF ALASKA

By _____

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES for the Use and Benefit of REMTECH, INC., a Washington corporation,<br><br>      Plaintiff,<br>vs.<br><br>LUMBERMENS MUTUAL CASUALTY CO., a foreign corporation, LUCIANO ENTERPRISES, INC., d/b/a LG GENERAL CONTRACTORS and/or LUCIANO GENERAL; EDWIN NEGRON LUCIANO,<br><br>      Defendants.<br><br>LUMBERMENS MUTUAL CASUALTY CO.,<br><br>      Third-Party Plaintiff,<br>vs.<br><br>GINA B. LUCIANO and ALBERT MAFFEI,<br><br>      Third-Party Defendants. | CASE NO. A01- 309 CIV (JWS)<br><br>**ORDER FROM CHAMBERS**<br><br>[Re:  Motions at docket 82, 83, 98, and 105] |

Exhibit 13
Page 1 of 14
Case No. 3:03-cv-00262-JWS

126

| | |
|---|---|
| EDWIN NEGRON LUCIANO and | ) |
| LUCIANO ENTERPRISES, INC., d/b/a | ) |
| LG GENERAL CONTRACTORS and/or | ) |
| LUCIANO GENERAL | ) |
| | ) |
|        Counterclaimant, | ) |
| | ) |
| vs. | ) |
| | ) |
| REMTECH, INC., a Washington | ) |
| corporation, | ) |
| | ) |
|        Counterclaim-Defendant. | ) |

## I. MATTERS PRESENTED

At docket 82, plaintiff Remtech, Inc. moves for an order dismissing the counterclaim asserted by defendants Edwin N. Luciano and Luciano Enterprises, Inc.[1] (collectively "LG defendants"). At docket 88, LG defendants oppose the motion. At docket 83, Remtech moves the court to grant its motions *in limine*. At docket 90, LG defendants oppose the motions. At docket 98, third-party defendants Gina B. Luciano and Albert Maffei (collectively "third-party defendants") move for leave to amend their third-party answer by adding a counterclaim. At docket 104, third-party plaintiff Lumbermens Mutual Casualty Co. opposes the motion. At docket 105, counterclaimants LG defendants move for leave to amend their answer, affirmative defenses, and counterclaim. At docket 108, counterclaim-defendant, Remtech, opposes the motion. At docket 109, defendant and third-party plaintiff, Lumbermens filed a joinder in Remtech's opposition to LG defendants' motion. Oral argument has not been requested on any of the above motions, and it would not assist the court.

---

[1] It appears that the correct identification of the company is Luciano Enterprises, L.L.C. See Doc. 11 at 1.

-2-

Exhibit 13
Page 2 of 14
Case No. 3:03-cv-00262-JWS

## II. BACKGROUND

This action was filed on October 18, 2001 pursuant to the Miller Act[2] and involves a dispute concerning a construction project in Cold Bay, Alaska.[3] The United States awarded a construction contract to Luciano Enterprises for the Cold Bay, Alaska, White Alice Radar Restoration Project (the "Project").[4] Remtech and Luciano Enterprises entered into agreements whereby Remtech agreed to provide equipment and services for the Project.[5] Allegedly, Luciano Enterprises defaulted on the agreements, which prompted the instant action.[6]

Luciano Enterprises, Inc., Edwin Negron Luciano, Gina Luciano, and Albert Maffei (collectively "Indemnitors") and First Indemnity of America ("FIA") entered into a general indemnity agreement (the "Agreement").[7] FIA secured the Project's payment and performance bonds through Universal Bonding Insurance Company ("UBIC"), a business unit of Kemper Insurance Company.[8] UBIC procured the issuance of the bond from Lumbermens—the "surety arm" of Kemper Insurance.[9]

Lumbermens brought a third-party claim against third-party defendants alleging they breached the Agreement by failing to exonerate and indemnify Lumbermens from

---

[2] 40 U.S.C. § 3131 *et seq.*, formerly cited as 40 U.S.C. § 270a-e.

[3] Docket 9 at 2-3; doc. 11 at 2-3.

[4] *Id.* at 3; *id.* at 3.

[5] *Id.* at 4; *id.* at 4.

[6] *Id.* at 3-4; *id.* at 3.

[7] Doc. 77 at 2; doc. 85 at 7.

[8] Doc. 77, affidavit of Bruce Dickstein at 2.

[9] *Id.*

Remtech's claim.[10] LG defendants filed a counterclaim against Remtech alleging, *inter alia*, breach of contract.[11]

Jurisdiction exists pursuant to the Miller Act[12] and this court's supplemental jurisdiction.[13] Other facts and the court's analysis are discussed below.

### III. DISCUSSION

**1. LG Defendants' Motion for Leave to Amend Complaint, Affirmative Defenses, and Counterclaim**

Before addressing Remtech's motion to dismiss, it is appropriate to consider LG defendants motion to amend their complaint, affirmative defenses, and counterclaim. The LG defendants filed a counterclaim[14] and an answer to Remtech's amended complaint on January 2, 2002.[15] Remtech answered LG defendants' counterclaim and requested that the court strike it because Edwin Luciano, acting *pro se*, improperly filed the counterclaim on behalf of Luciano Enterprises, L.L.C.[16] On February 8, 2002, LG defendants' attorney entered an appearance and filed an answer to Remtech's amended complaint as well as a counterclaim.[17] On March 21, 2002, Remtech

---

[10]Doc. 11 at 15.

[11]Doc. 16.

[12]40 U.S.C. § 3133(b)(3)(B).

[13]28 U.S.C. § 1367.

[14]The counterclaim's second paragraph stated: "Defendants relying on the agreements and statements made by plaintiffs (sic) representatives provided the following: a) Labor, travel and room and board $46,914.76 b) Materials and Equipment $68,555.00 c) Transportation $87,870.49."

[15]Doc. 16.

[16]Doc. 26 at 2 ("corporation, partnership, or association may appear in federal court only through licensed counsel").

[17]Doc. 30.

answered LG defendants' counterclaim noting that paragraph 2 was incomplete.[18] On June 6, 2002, LG defendants answered Remtech's second amended complaint and asserted its previous counterclaim.[19] Again, Remtech answered LG defendants' counterclaim, however, it did not reiterate that paragraph two was incomplete, rather it denied the paragraph's allegations.[20] The scheduling order imposed an April 12, 2002 deadline to file amended pleading motions.[21] On May 8, 2003, LG defendants filed the motion at issue.

Prior to passage of the deadline imposed by the scheduling order, amendment of the complaint and counterclaim would have been governed by Rule 15(a) of the Federal Rules of Civil Procedure. However, it is ordinarily unnecessary to reach Rule 15 considerations where a request to amend a complaint is made after the deadline established in a scheduling order has run, unless the movant first shows good cause for failing to seek amendment before the deadline passed.[22] This approach is consonant with the command in Rule 1 directing the court to construe and administer the rules "to secure the just, speedy, and inexpensive determination of every action"[23] and a constituent in a trial court's power to control its own docket. Speaking more

---

[18]Doc. 36 at 2. The counterclaim's second paragraph stated: "Defendants, relying on the agreements and statements made by Remtech's representatives, provided the following labor and materials to transport and set up the equipment to burn soil in Cold Bay, Alaska." The referenced labor and materials were not included.

[19]Doc. 51.

[20]Doc. 52.

[21]Doc. 32. The discovery cut-off date was February 6, 2003.

[22]Once a scheduling order is filed pursuant to Rule 16, that rule's standards control. LG defendants' motion to amend was filed after the scheduling order cut-off date; therefore, their motion is governed by Rule 16(b), not Rule 15(a). Rule 16(b) states, in relevant part, that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge . . . ." If good cause is shown then an analysis of Rule 15's policy is appropriate. See, e.g., Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992).

[23]FED. R. CIV. P. 1.

broadly, modern notions of case management, which federal trial courts are encouraged to apply, require the parties' adherence to reasonable schedules.

Here, LG defendants do not present evidence that good cause exists, rather they primarily argue that the liberal amendment policy of Rule 15(a) should govern the court's analysis. They further assert Remtech knew the facts pertinent to its motion earlier in the discovery process and deliberately waited until the dispositive motion cut-off date was near before filing its motion. LG defendants' arguments are unpersuasive. First, LG defendants' Rule 15(a) assertions ignore the preliminary good cause requirement. Second, Remtech's dispositive motion was filed within the deadlines imposed by the scheduling and planning order and the chosen procedures are allowable under the federal rules.[24]

The standard for good cause "primarily considers the diligence of the party seeking the amendment."[25] In *Johnson*, the Ninth Circuit stated that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."[26] Here, the LG defendants waited until almost thirteen months after the scheduling and planning order's cut-off date to file their amendment motion. Furthermore, Remtech's answer on March 21, 2002, alerted counsel to one of the asserted defects. Each party has an obligation to adhere to procedural rules. LG defendants' attempt to shift their responsibility to Remtech is improper. Under similar circumstances, the *Johnson* court explained that the plaintiff has the burden to properly prosecute its case and that the plaintiff may not blame the defendant "for his failure to do so."[27] LG defendants failure to show the requisite good cause standard defeats their motion.

---

[24] *See* Part III(2) *infra*.

[25] *Johnson*, 975 F.2d at 609. *See also* FED. R. CIV. P. 16 advisory committee's notes (1983 amendment).

[26] *Id.* at 609.

[27] 975 F.2d at 610.

2. **Remtech's Motion to Dismiss Counterclaim**

Remtech's briefing includes matters outside the pleadings. Remtech also states its' motion is pursuant to Rule 56(b) and/or Rule 12(b)(6) and (7). LG defendants address the summary judgment standard of "dispute as to material facts" in the various arguments included in their opposition. This court accepts the materials presented, and it is apparent that LG defendants were sufficiently notified; therefore, pursuant to Rule 12(b)(6), the defendant's motion "shall be treated as one for summary judgment." Furthermore, "technically [ ] a post-answer Rule 12(b)(6) motion is untimely and some other vehicle, such as a motion for judgment on the pleadings or for summary judgment, must be used to challenge the failure to state a claim for relief."[28] In its' motion, Remtech also references Rule 12(b)(7), which is a defense for "failure to join a party under Rule 19." Remtech does not address the substance of Rule 12(b)(7); therefore, the court is unable to consider this assertion.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to material fact.[29] The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[30] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[31] All evidence presented by the non-movant must be believed for purposes of summary

---

[28] WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE 2D CIVIL § 1357 at 300-01 ("WRIGHT"); see also Aetna Life Ins. Co. v. Alla Med. Servs. Inc., 855 F.2d 1470, 1474 (9th Cir. 1988) ("[t]his circuit allows a motion under Rule 12(b) any time *before* the responsive pleading is filed") (emphasis added).

[29] Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[30] Id. at 323-25.

[31] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

judgment, and all justifiable inferences must be drawn in favor of the non-movant.[32] However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[33]

### A. Breach of Contract Claim

Counterclaimants LG defendants assert a breach of contract claim on the Rental Agreement executed between Remtech and LG defendants.[34] Remtech seeks to dismiss this claim because it states LG defendants failed to allege specific damages. The counterclaim prays for judgment, *inter alia*, "against Remtech for an amount in excess of $1 million for breach of contract . . . ."[35] Case law does not support Remtech's assertion that a failure to comply with Rule 26 mandatory disclosures or an incorrect or incomplete recitation of damages in a party's initial disclosures leads to a waiver or modification of that party's claim. Rather, Rule 37 provides the proper procedure for sanctioning a party's failure to conform with Rule 26. LG defendants demand for relief is sufficient to comply with the pertinent requirement of Rule 8(a).[36]

Remtech also contends that LG defendants have failed to allege facts necessary to establish the element of a breach of contract claim. LG defendants assert Remtech "breached its written and oral agreements by furnishing equipment that was unworkable and not suited for the purpose of the project . . . ."[37] Remtech argues a breach did not occur because the contract explicitly provides that LG defendants accept the

---

[32] *Id.* at 255.

[33] *Id.* at 248-49.

[34] *See* Doc. 30 at 8 ("Remtech breached its written and oral agreements by furnishing equipment that was unworkable and not suited for the purposes of the project . . . .").

[35] *Id.*

[36] "A pleading . . . shall contain . . . (3) a demand for judgment for relief the pleader seeks."

[37] Doc. 30 at 8.

equipment "as-is where-is"[38] and that LG understood the meaning of this phrase.[39] The "as-is where-is" phrase is located in Exhibit A to the Rental Agreement. In the main body of the Agreement, the following language appears:

> Renter hereby acknowledges that he has inspected the equipment described in Exhibit A and that it is in *good working condition and in proper state of repair; that it is in all respects satisfactory, and free from any and all defects* . . . . Renter also hereby acknowledges that he will perform a final inspection of the equipment immediately prior to taking possession, and *will not take possession of said equipment if it is not in good working condition and satisfactory in every way.* Renter hereby acknowledges that his taking possession of equipment constitutes his agreement that all obligations - expressed or implied - of Remtech under this agreement have been met to Renter's satisfaction[40] (emphasis added).

Remtech's argument seems to assert that the working condition of the equipment is immaterial because of the "as-is" language in Exhibit A. The "as-is" language, however, contradicts the terms in article 6 of the main agreement, which contemplates that the renter will have had the opportunity to inspect the equipment to be sure it is in good and satisfactory working condition.

A further disagreement exists regarding whether LG took possession of the equipment. Remtech asserts that, pursuant to article 9 of the Rental Agreement,[41] LG took delivery in Sumner, Washington. LG defendants maintain LG never took possession of the equipment, rather LG simply paid the expenses to deliver it to the project site, and, furthermore, LG did not conduct a final inspection. They also argue that Remtech's performance of the Ahtna contract adjacent to the project site, from January 31, 2002 to February 16, 2002, in which Remtech utilized the equipment at

---

[38] Doc. 82, ex. 1 at 4.

[39] Doc. 82, ex. 6, p. 70, ll. 2-12. ("It means you get it as it is.")

[40] Doc. 82, ex. 1 at 1.

[41] Doc. 82, ex. 1 at 2.

issue, supports their contention that Remtech retained possession of the soil burning equipment.

The parties' arguments about whether LG accepted possession of the equipment and whether LG agreed the equipment was in "good working condition" may be pertinent to LG defendants' affirmative defenses, however, they are tangential to LG's sole description of its' breach of contract claim.[42] LG claims Remtech's equipment was "unworkable and not suited for the purpose of the project." Remtech asserts that the successful completion of the Athna project proves the equipment was in working condition and suitable for soil burning. Remtech supports its assertions with deposition and affidavit testimony.[43] LG defendants do not offer any contradicting evidence that the equipment was in an unworkable and unsuitable condition, rather their statements are merely conclusory. Furthermore, at the time Remtech worked on the Ahtna project, LG had not received government approval to commence contract performance; thus, any purported equipment malfunction was irrelevant. Because the undisputed facts are sufficient to establish that Remtech did not breach the Rental Agreement, it is unnecessary to discuss other proffered arguments.

### B. Fraud and Misrepresentation Claim

Remtech alleges LG defendants failed to comply with the special pleading requirements articulated in Rule 9(b) and that LG defendants' prayer for damages, which is for attorney's fees and costs inclusive of pre and post-judgment interest, is without legal basis. LG defendants respond that Remtech failed to follow Rule 12 procedures after it received the counterclaim and identified the claims' defects. LG defendants specifically state Remtech should have presented its failure to state a claim defense in its responsive pleading and/or moved for a more definite statement before

---

[42]The court notes that LG defendants' proposed amended counterclaim reiterates the same breach of contract allegations. The additional breach of contract claim in the amended counterclaim is subsumed within the claim for tortious interference with contract.

[43]See Doc. 82, affidavit of Keith Carpenter at 5; doc. 82, ex. 8, pp. 26-27.

entering a responsive pleading.[44] While LG defendants correctly recite Remtech's options, Rule 12 also allows a defendant to assert the defense of failure to state a claim by a motion on the pleadings, i.e. after a responsive pleading is entered, or at the trial on the merits.[45]

Rule 9(b) requires that averments of fraud be accompanied by a description of specific circumstances—"the who, what, when, where, and how"—of the alleged misconduct.[46] LG defendants simply state that Remtech's conduct of "furnishing equipment that was unworkable and not suited for the purpose of the project" constitutes, *inter alia*, fraud and misrepresentation.[47] The allegation is unsupported by details, such as, who made the determination that the equipment was unworkable and unsuitable, when and where that conclusion was made, and how it was unsuitable for the project. LG defendants have failed to plead the fraud claim with the specificity required under Rule 9(b).

LG defendants further contend that a motion to dismiss is an improper mechanism for the failure to satisfy Rule 9(b)'s heightened pleading requirements; however, the Ninth Circuit, as well as other circuits, have concluded otherwise.[48] Ordinarily, leave to amend is granted if it appears that the party can cure the defect.[49]

---

[44] *See* FED. R. CIV. P. 12(b) and (e).

[45] FED. R. CIV. P. 12(h)(2).

[46] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted); *Bosse v. Crowell Collier & Macmillan*, 565 F.2d 602, 611 (9th Cir. 1977). *See also* WRIGHT § 1297 at 590.

[47] Doc. 30 at 8.

[48] *Vess*, 317 F.3d at 1107 ("[w]hen an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy . . . Rule 9(b), a district court may dismiss the complaint or claim"); *Bly-Magee v. Calif.*, 236 F.3d 1014, 1019 (9th Cir. 2001) (affirming the district court's dismissal when the plaintiff's first amended complaint failed to satisfy Rule 9(b)). *See also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424 (3d Cir. 1997) (dismissal on Rule 9(b) grounds was proper); *accord Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1021 (5th Cir. 1996).

[49] *Vess*, 317 F.3d at 1107-08.

The court has discussed its reasons for denying LG defendants' motion to amend[50] and further notes that LG defendants proposed amended counterclaim fails to correct the defect.[51]

### 3. Remtech's motions *in limine*

Pursuant to the court's decision to grant Remtech's motion to dismiss, as discussed above, the motions *in limine* are moot.

### 4. Third-Party Defendants Motion to Amend Third-Party Answer by Adding a Counterclaim

Lumbermens filed a third-party complaint against Gina B. Luciano and Albert Maffei on December 20, 2001.[52] The parties conducted discovery from September 2002 until January 12, 2003.[53] Discovery closed on February 6, 2003.[54] The scheduling and planning order identified April 12, 2002 as the cut-off date for motions to amend pleadings.[55] Third-party defendants filed the instant motion on April 10, 2003 followed by an updated supplement on April 24, 2003.[56]

As discussed more fully above,[57] a motion to amend pleadings, which is filed beyond the scheduling and planning order deadline, must meet Rule 16's good cause standards. Third-party defendants aver good cause exists because depositions of

---

[50] *See* Part III (1) *supra*.

[51] While LG defendants' proposed amended affirmative defenses include more detail regarding alleged fraudulent conduct, the proposed amended counterclaim lacks specificity similar to the original counterclaim.

[52] Doc. 11.

[53] Doc. 98 at 4.

[54] Doc. 76.

[55] Doc. 32.

[56] Doc. 100.

[57] *See* Part III(1) *supra*.

Keith Carpenter and Linda Fellows conducted on December 10, 2002 and January 9, 2003, respectively, contained previously unknown and unanticipated facts giving rise to their proposed counterclaim. Lumbermens disagrees and alleges third-party defendants were aware or should have been aware of the facts underlying their counterclaim at a much earlier date. The pivotal question is whether diligence by the third-party defendants would have disclosed the alleged facts sooner.

The proposed counterclaim asserts, *inter alia*, claims of tortious interference with contract and breach of the covenant of good faith and fair dealing. Third-party defendants did not file the instant motion until April 10, 2003—three months after the Fellows deposition. Lumbermens claims third-party defendants did not propound any discovery requests to Lumbermens and did not depose or subpoena either FIA or Insurance and Bonds to obtain an original copy of the GIA or to uncover facts potentially relevant to their case. Third-party defendants do not dispute Lumbermens assertions, rather they place the onus on Lumbermens. They argue that because Lumbermens eventually produced an original copy of the GIA, it had the ability to provide it to third-party defendants earlier. While Lumbermens inaccurate distribution of the GIA was careless, third-party defendants have a responsibility to diligently pursue their case and to reasonably comply with court ordered deadlines.

Third-party defendants' support for its proposed new counterclaim is inadequate. Its' motion is devoid of supporting deposition testimony or documentary evidence. In its' reply, however, third-party defendants attach documentation which consists of numerous letters prepared by Lumbermens and Albert Maffei's affidavit. The correspondence is dated from August 28, 2001[58] to March 25, 2002.[59] Third-party defendants reference some of these letters as support for their proposed counterclaim of tortious interference with contract. Obviously third-party defendants were aware of facts pertinent to this counterclaim in 2001 and 2002. Notably, third-party defendants

---

[58]Doc. 107, Ex. F.

[59]Id, Ex. G at 9-10.

do not attach the relevant deposition testimony of either Carpenter or Fellows to support their conclusory allegations and their characterization of deponents' statements. The requisite showing of diligence supporting a finding of good cause is lacking; therefore, an analysis of Rule 15(a) factors is unnecessary.

### IV. CONCLUSION

For the above reasons, plaintiff's motion at docket 82 is **GRANTED**, plaintiff's motion at docket 83 is **DENIED** as moot, third-party defendants' motion at docket 98 is **DENIED**, and counterclaimant defendants motion at docket 105 is **DENIED**.

Pursuant to plaintiff's condition of relief granted at docket 82, plaintiff's claims against defendants' Luciano Enterprises, Inc. d/b/a LG General Contractors and/or Luciano General and Edwin Negron Luciano are **DISMISSED**.

The suit between third-party plaintiff Lumbermens and third-party defendants Gina B. Luciano and Albert Maffei remains on this court's calendar.

Dated at Anchorage, Alaska this 31st day of July, 2003.

MAILED ON 7-31-03

BY _____

JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

A01-0309--CV (JWS)
--------------------------------
P. PFIFFNER (HUGHES)
R. ROYCE III (ROYCE)
P. STOCKLER