*PRODUCTION No. 1*

# MAFFEI FAMILY
# LIMITED PARTNERSHIP AGREEMENT

This Limited Partnership Agreement is entered into as of the 21st day of November, 2001, by and between BONITA F. MAFFEI and ALBERT MAFFEI, hereinafter referred to as the "General Partners", and BONITA F. MAFFEI and ALBERT MAFFEI, hereinafter referred to as the "Limited Partners."

The General and Limited Partners agree as follows:

## ARTICLE ONE
## CREATION OF PARTNERSHIP

**1.1    Purpose of Partnership.** The Partners hereby form the Partnership as a Limited Partnership pursuant to the provisions of Alaska Statutes 32.11, of Alaska's Uniform Limited Partnership Act.

1.1.1   The purpose of the Partnership is to make a Profit, increase wealth, and provide a means for the family to become knowledgeable of, manage, and preserve Family Assets. The Partnership will accomplish the following:

1.1.1.1   provide resolution of any disputes which may arise among the family in order to preserve family harmony and avoid the expense and problems of litigation;

1.1.1.2   maintain control of Family Assets;

1.1.1.3   consolidate fractional interests in Family Assets;

1.1.1.4   increase family wealth;

1.1.1.5   establish a method by which annual gifts can be made without fractionalizing Family Assets;

1.1.1.6   continue the ownership of Family Assets and restrict the right of non-family to acquire interests in Family Assets;

1.1.1.7   prevent the transfer of a family member's interest in the Partnership as a result of a failed marriage;

1.1.1.8   provide flexibility in business planning not available through trusts, corporations, or other business entities;

1.1.1.9   facilitate the administration and reduce the cost associated with the disability or probate of the estate of family members; and

GG0328

Exhibit 3        Page 1
Page 1 of 48
Case No. 3:03-cv-00262-JWS

1.1.1.10 promote the family's knowledge of and communication about Family Assets.

1.1.2 The Partnership is authorized to engage in all business permitted by the Act. If the Partnership qualifies to do business in a foreign jurisdiction, then it may transact all business permitted in that jurisdiction. There is no jurisdictional restriction upon Property or activity of the Partnership.

1.1.3 To accomplish the Partnership Purposes, the Partnership has, but is not limited to, the following authority:

1.1.3.1 to engage in the real estate business; acquire, own, hold, develop, and operate real estate properties, either as operator, managing agent, principal, agent, partner, stockholder, syndicate member, associate, joint venturer, participant, or otherwise; invest in and raise funds for real estate development and operation; purchase, construct, acquire, own, develop, operate, lease, mortgage, pledge, sell or otherwise dispose of buildings, fixtures, and improvements; and do anything necessary or incident to the real estate business;

1.1.3.2 to purchase, sell, invest and deal in the following: stocks, bonds, notes, evidences of indebtedness of any Person, domestic or foreign, bonds and any other obligations of any governmental entity, domestic or foreign, bills of exchange and commercial paper, and any other securities; and gold, silver, grain, cotton, and other commodities and provisions usually dealt on exchanges or over-the-counter markets;

1.1.3.3 to invest Partnership Property or carry on of trade or business, form all types of business entities or trusts; or acquire general or limited partnership interests in a partnership, membership interests in a limited liability company or a joint venture, shares in a corporation, or interests in any syndication;

1.1.3.4 to buy, sell, lease, and deal in services, personal property, and real property; and engage in any other trade, business, or investment activity;

1.1.3.5 to buy, sell, trade, exchange, acquire, transfer, assign, lease, develop, manage, and operate oil, gas and other mineral interests, either alone or together with others;

1.1.3.6 to operate any lawful business enterprise which accomplishes other Partnership Purposes;

1.1.3.7 to guarantee the financial transactions of others, with or without charging a fee;

1.1.3.8 to borrow and lend money; and, unless prohibited, allow a Partner to lend money to and transact other business with the Partnership or Partners;

Maffei Family Limited Partnership Agreement

GG0329
Exhibit 3
Page 2 of 48
Case No. 3:03-cv-00262-JWS

Page 2

1.1.3.9 to invest and reinvest any of the Property or income of the Partnership, whether or not the original purpose for the investment has been accomplished, and it being the understood that, until the end of the term of the Partnership, the investment objectives of this Partnership are to continue until the Partnership is dissolved and its affairs wound up;

1.1.3.10 to purchase, lease, acquire, sell or dispose of machinery, equipment, buildings and other depreciable property;

1.1.3.11 to purchase, lease, acquire, hold, operate, sell, lease or dispose of full or fractional interests in improved or unimproved real and personal property;

1.1.3.12 to borrow or raise money by the issuance, acceptance, endorsement or execution of notes, drafts, bills of exchange, warrants, bonds, debentures, instruments or evidences of indebtedness, securing the indebtedness by mortgage, pledge, transfer or assignment in-trust of all or any part of the Property; and by selling, pledging or disposing of obligations of the Partnership;

1.1.3.13 to operate one or more offices, lease or acquire office space, engage personnel and do all things necessary to operate the office;

1.1.3.14 to carry insurance as the General Partners may deem necessary and appropriate, such insurance shall be listed on Schedule C attached hereto; and

1.1.3.15 to make, enter into, deliver and perform all contracts, agreements or undertakings, pay all costs and expenses and perform all acts deemed appropriate by the General Partner to carry out the Partnership Purposes.

1.1.4 The General Partner may take any action permitted by this Agreement and the Act to accomplish the Partnership Purposes. This shall include any act customary or reasonably related to the acquisition, ownership, management, sale, investment, reinvestment, or financing of the Partnership Property. These customary activities shall include, but not be limited to, buying and selling options, short sales, hedging, and purchases on margin.

1.2    **Name of Partnership.** The name of this Partnership shall be the MAFFEI FAMILY LIMITED PARTNERSHIP."

1.3    **Location of Business.** The principal office of the Partnership shall be located at 731 N Street, Anchorage, Alaska, or such other place as may be designated from time to time by the General Partners.

1.4    **Term of the Limited Partnership.** The Partnership shall not be a term-of-years partnership. Pursuant to the Act the Partnership will begin upon the Effective Date of

GG0330

November 21, 2001 and will be perpetual. The Partnership may be terminated and wound up at any time by Unanimous Consent unless sooner terminated and wound up in accordance with the Act or this Agreement.

**1.5    Certificate of Limited Partnership and Other Filings.** The General Partners shall cause a certificate of limited partnership to be filed with the Department of Commerce and Economic Development, Division of Banking, Corporations & Securities. The General Partners shall also cause to be recorded, filed and/or published, in each jurisdiction where the Partnership maintains its principal place of business and/or does business, a copy of the certificate of limited partnership, a registration of a business name with the Alaskan Commission of Commerce and Economic Development and/or such other recording or filing as may be required under any applicable law to preserve the Partnership's limited partnership status and right to the use of its name. The General Partners shall also cause the certificate of limited partnership and each other filing to be amended whenever there is any addition to or change in the Partners, or change of the Partnership's name or principal place of business, or other change requiring such an amendment under applicable law.

The General Partners may apply to the Alaska Division of Corporations and Banking and the Securities and Exchange Commission for acknowledgment that the limited partnership interests are either registered securities or exempted from securities registration under state and federal law or request that the Division and the Commission issue no-action letters with respect to the limited partnership interests.

**1.6    Agent for Service of Process.** The agent for service of process on the Partnership and address is Bonita F. Maffei, 731 N Street, Anchorage, Alaska 99501; provided, however, that the General Partners may from time to time, in her sole discretion, elect to change the agent for service of process on the Partnership.

## ARTICLE TWO
## DEFINITIONS

The use of any of the following defined terms in their uncapitalized form shall indicate that the words have their normal meaning.

**2.1    "Act"** means the Alaska Uniform Limited Partnership Act, as amended and any successor statute.

**2.2    "Additional Proceedings"** is defined in Article Eleven, Paragraph 11.11, of this Agreement.

**2.3    "Adjusted Asset Value"** shall mean, with respect to any asset, the asset's adjusted basis for federal income tax purposes, except as follows:

GG0331

**2.3.1** The initial Adjusted Asset Value of any asset contributed by a Partner to the Partnership shall be the gross fair market value of such asset, as determined by the contributing Partner and the Partnership;

**2.3.2** The Adjusted Asset Values of all Partnership assets shall be adjusted to equal their respective gross fair market values, as determined by the General Partners as of the following times:

**2.3.2.1** the acquisition of an additional interest in the Partnership by any new or existing Partner in exchange for more than a de minimis capital contribution;

**2.3.2.2** the distribution by the Partnership to a Partner of more than a de minimis amount of Partnership money or property as consideration for an interest in the Partnership; and

**2.3.2.3** the liquidation of the Partnership within the meaning of Reg. 1.704-1(b)(2)(ii)(g);

**2.3.3** The Adjusted Asset Value of any Partnership asset distributed to any Partner (including any asset deemed distributed in a constructive liquidation of the Partnership pursuant Section 708(b)(1)(B)) of the Code shall be (immediately prior to said Distribution) the gross fair market value of such asset on the date of distribution; and

**2.3.4** The Adjusted Asset Values of Partnership assets shall be increased (or decreased) to reflect any adjustments to the adjusted basis of such assets pursuant to Section 734(b) or Section 743(b) of the Code, but only to the extent that such adjustments are taken into account in determining Capital Accounts pursuant to Regulations Section 1.704-1(b)(2)(iv)(m); provided, however, that Adjusted Asset Values shall not be adjusted pursuant to this Paragraph 2.3.4 to the extent the General Partners determines that an adjustment pursuant to Paragraph 2.3.2 is necessary or appropriate in connection with a transaction that would otherwise result in an adjustment pursuant to this Paragraph 2.3.4.

**2.3.5** If the Adjusted Asset Value of an asset has been determined or adjusted pursuant to Paragraph 2.3.1, 2.3.2 or 2.3.4 hereof, such Adjusted Asset Value shall thereafter be adjusted by the Depreciation taken into account with respect to such asset for purposes of computing Profits and Losses.

**2.4** **"Adjusted Capital Account"** means, with respect to a Partner, that Partner's Capital Account after (i) crediting to his or her Capital Account any amount which the Partner is deemed to be obligated to restore pursuant to the penultimate sentence of Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5); (ii) crediting to his or her Capital Account any amount that Partner is unconditionally obligated to contribute to the Partnership under applicable law; and (iii) debiting to the Capital Amount the items described in Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5), and (6). This definition of Adjusted Capital Account is intended to comply

GG0332

Exhibit 3
Page 5 of 48
Case No. 3:03-cv-00262-JWS

with the provisions of Regulations Section 1.704-1(b)(2)(ii)(d) and 1.704-2, and will be interpreted consistently with those provisions.

    **2.5**    **"Adjusted Capital Account Deficit"** means, with respect to a Partner, the deficit balance, if any, in that Partner's Adjusted Capital Account.

    **2.6**    **"Affiliate"** means, with respect to any Person, any other Person controlling, controlled by, or under common control with that first Person, or, with regard to a Person who is an individual, a member of such Persons family, whether by blood or marriage. As used in this definition, the term "*control*" means (a) with respect to any corporation or other entity having voting shares or the equivalent and elected directors, managers, or Persons performing similar functions, the ownership or power to vote more than fifty percent (50%) of shares or the equivalent having the power to vote in the election of directors, managers, or Persons performing similar functions, and (b) with respect to any other entity, the ability to direct its business and affairs.

    **2.7**    **"Agreed Value"** means the Gross Asset Value of any Contributed Property or distributed property net of any liability assumed or taken subject to by the Partnership or the distributee, as the case may be.

    **2.8**    **"Agreement"** means this Agreement of Limited Partnership as amended.

    **2.9**    **"Allocation Regulations"** means Treasury Regulations promulgated under Sections 704(b) and 704(e) of the Code.

    **2.10**    **"Assignee"** means a person who has acquired all or a portion of an interest in a Partnership Interest by assignment as of the date the assignment of the Partnership Interest has become "effective." As used in this Agreement, the assignment of a Partnership Interest becomes "effective" as of the date on which all of the requirements of an assignment expressed in this Agreement, particularly Article Seven, shall have been met. An Assignee has only the rights granted under Section 32.11.330 of the Act. An Assignee does not have the right to become a partner except as provided in this Agreement or in Section 32.11.350 of the Act.

    **2.11**    **"Appraisal"** means, unless the context indicates otherwise, a written valuation report by an Appraiser that describes and values the fair market value of an ownership interest in the Partnership.

    **2.12**    **"Appraiser"** means a person or firm qualified to perform business Appraisals of partnerships and ownership interests in the partnerships.

    **2.13**    **"Built-In Gain"** with respect to any Partnership property means (1) as of the time of contribution, the excess of the Gross Asset Value of any Contributed Property over its adjusted basis for federal income tax purposes and (2) in the case of any adjustment to the Carrying Value of any Partnership property pursuant to Article Four, Paragraph 4.2, of this Agreement, the Unrealized Gain.

GG0333

Maffei Family Limited Partnership Agreement

Exhibit 3
Page 6 of 48
Case No. 3:03-cv-00262-JWS

Page 6

2.14    **"Built-In Loss"** with respect to any Partnership property means (1) as of the time of contribution, the excess of the adjusted basis for federal income tax purposes of any Contributed Property over its Gross Asset Value and (2) in the case of any adjustment to the Carrying Value of any Partnership property pursuant to Article Four, Paragraph 4.2, of this Agreement, the Unrealized Loss.

2.15    **"Capital Account"** shall have the meaning ascribed to it in Article Four of this Agreement.

2.16    **"Capital Contribution"** means with respect to any Partner, the Agreed Value of any property and the amount of cash contributed to the Partnership.  Any reference in this Agreement to the Capital Contribution of a Partner will include a Capital Contribution made by any prior Partner with respect to the Partnership interest of the Partner.

2.17    **"Carrying Value"** means (1) with respect to any Contributed Property, the Gross Asset Value of the property reduced as of the time of determination by all Depreciation and an appropriate amount to reflect any sales, retirements, or other dispositions of assets included in the property and, (2) with regard to other Property, the adjusted basis of the property for federal income tax purposes as of the time of determination; provided, however, that the Carrying Values shall be further adjusted as provided in Article Four of this Agreement and, at the time of adjustment, the property shall thereafter be deemed to be a Contributed Property contributed as of the date of adjustment.

2.18    **"Code"** means the Internal Revenue Code of 1986, as amended.

2.19    **"Contributed Property"** means any property other than cash contributed to the Partnership.

2.20    **"Default Interest Rate"** means the rate per annum equal to the lesser of (1) the **Wall Street Journal** prime rate as quoted in the money rates section of the **Wall Street Journal** which is also the base rate on corporate loans at large United States money center commercial banks** as its prime commercial or similar reference interest rate, with adjustments to be made on the same date as any change in the rate, and (2) the maximum rate permitted by applicable law.

2.21    **"Depreciation"** means, for each taxable year or other period, an amount equal to the depreciation, amortization or other cost recovery deduction allowable with respect to an asset for the year or other period, except that if the Gross Asset Value of an asset differs from its adjusted basis for federal income tax purposes at the beginning of the year or other period, Depreciation will be an amount which bears the same ratio to the beginning Gross Asset Value as the federal income tax depreciation, amortization or other cost recovery deduction of the year

GG0334

or other period bears to the beginning adjusted tax basis, provided that if the federal income tax depreciation, amortization, or other cost recovery deduction for the year or other period is zero, Depreciation will be determined with reference to the beginning Gross Asset Value using any reasonable method selected by the General Partner.

2.22    **"Distributable Cash"** means, at the time of determination for any period (on the cash receipts and disbursements method of accounting), all Partnership cash derived from the conduct of the Partnership's business, including distributions from entities owned by the Partnership, cash from operations or investments, and cash from the sale or other disposition of Partnership property, other than (1) Capital Contributions with interest earned pending its utilization, (2) financing or other loan proceeds, (3) reserves for working capital, and (4) other amounts that the General Partners reasonably determines should be retained by the Partnership in accordance with the General Partner's discretion under Article Six.

2.23    **"Effective Date"** means the date when this Partnership becomes effective as defined in Article One of this Agreement.

2.24    **"Family Assets"** means all Property owned by the family, individually or in combination with others, which has been contributed to or acquired by the Partnership.

2.25    **"General Partner"** or **"General Partners"** means the Person(s) designated as General Partner(s) on Schedule A and any successor General Partner(s) pursuant to the terms of this Agreement, but does not include any person who has ceased to be a General Partners in the Partnership.

2.26    **"General Partnership Interest"** means the Partnership Interest owned by a General Partner.

2.27    **"Gross Asset Value"** means, (i) with regard to property contributed to the Partnership, the fair market value of the property as of the date of the contribution and (ii) as to any property the Carrying Value of which is adjusted pursuant to Article Four, the fair market value of the property as of the date of the adjustment, as the fair market value is determined by the General Partners using any reasonable method.

2.28    **"Limited Partner"** or **"Limited Partners"** means the Person(s) admitted to the Partnership as original, additional or substituted Limited Partners as reflected on Schedule A as amended.

2.29    **"Limited Partnership Interest"** means the Partnership Interest owned by a Limited Partner.

2.30    **"Liquidator"** means the General Partners or, if there are no remaining General Partners, a person or committee selected by a Majority in Interest of Limited Partners who will

GG0335

Maffei Family Limited Partnership Agreement

Exhibit 3
Page 8 of 48
Case No. 3:03-cv-00262-JWS

Page 8

commence to wind up the affairs of the Partnership and to liquidate and sell its properties when there has been a dissolution or termination without reconstitution of the Partnership. "Liquidator" shall also refer to any successor or substitute Liquidator.

**2.31** **"Majority in Interest"** means those Partners whose Sharing Ratios aggregate more than fifty percent (50%) of the Sharing Ratios of all Partners.

**2.32** **"Majority in Interest of Limited Partners"** means those Limited Partners whose Sharing Ratios aggregate more than fifty percent (50%) of the Sharing Ratios of all Limited Partners.

**2.33** **"Partner"** shall mean a partner (whether limited or general) of the Partnership and "Partners" shall mean all the General and Limited Partners of the Partnership.

**2.34** **"Partnership"** shall mean the limited partnership formed under this Agreement, as constituted or amended.

**2.35** **"Partnership Interest"** means the ownership interest and rights of a Partner in the Partnership, including, without limitation, his or her right to a distributive share of the Profits and Losses, distributions, and the Property of the Partnership and the right to consent or approve.

**2.36** **"Partnership Purposes"** shall be those purposes set out in Article One of this Agreement.

**2.37** **"Partnership Unit"** means a Partnership Interest in this Partnership equal to One Hundred dollars ($100) of value in the Partner's Capital Account.

**2.38** **"Permitted Transferee"** means (1) a spouse of a Partner other than a spouse who is legally separated under a decree of separate maintenance or a spouse who is a party to a pending divorce proceeding; (2) a descendant of a Partner, including descendants by adoption if the adoption was a court adoption of a minor under five (5) years of age; (3) any parent or sibling of a Partner; (4) a descendant of a sibling of a Partner including those by adoption as defined in (2) above; (5) a trust created for the benefit of anyone in (1) through (4) above; (6) any organization described in each of the following sections of the Code: Section 170(b)(1)(A), Section 170(c), Section 2055(a) and Section 2522(a); and (7) a charitable remainder trust created under Section 664 of the Code. A Permitted Transferee, upon receiving a transfer of a Limited Partnership Interest, shall be an Assignee. A Permitted Transferee who has become an Assignee shall have the right to become a substitute Limited Partner by Required Consent.

**2.39** **"Person"** means any individual, estate, partnership, corporation, trust, unincorporated association, limited liability company, joint venture or any other entity.

**2.40** **"Profits"** and **"Losses"** means for each fiscal year or other period, an amount equal to the Partnership's taxable income or loss for such year or period, determined in accordance with Code Section 703(a) (for this purpose all items of income, gain, loss or

GG0336

deduction required to be stated separately pursuant to Code Section 703(a)(1), and any guaranteed payments paid to the General Partner, shall be included in taxable income or loss), with the following adjustments:

      2.40.1 any income of the Partnership that is exempt from federal income tax and not otherwise taken into account in computing Profits or Losses pursuant to this definition shall be added to such taxable income or loss;

      2.40.2 any expenditures of the Partnership described in Code Section 705(a)(2)(B) or treated as Code Section 705(a)(2)(B) expenditures pursuant to Regulations Section 1.704-1(b)(2)(iv)(i) and not otherwise taken into account in computing Profits or Losses pursuant to this definition shall be subtracted from such taxable income or loss;

      2.40.3 gain or loss resulting from any disposition of Property with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Carrying Value or Section 704(e) Carrying Value of the property disposed of, as the case may be, notwithstanding that the adjusted tax basis of such property differs from its Carrying Value or Section 704(e) Carrying Value;

      2.40.4 in lieu of depreciation, amortization and other cost recovery deductions taken into account in computing taxable income or loss, there will be taken into account Depreciation for the taxable year or other period;

      2.40.5 if the Carrying Value or Section 704(e) Carrying Value, as the case may be, of any Partnership property is adjusted under Article Four, the adjustment will be taken into account as gain or loss from disposition of the asset for purposes of computing Profits or Losses; and

      2.40.6 notwithstanding any other provision of this definition, any items which are specially allocated pursuant to Article Five, Paragraph 5.2.5, of this Agreement shall not be taken into account in computing Profits or Losses.

    2.41 **"Property"** means all real and personal property which has been contributed to or acquired by the Partnership and all increases and decreases applicable to the Property.

    2.42 **"Required Consent"** means that percentage of Partnership Interest required to admit a new or substitute Limited Partner as defined in Article Seven, Paragraph 7.1., of this Agreement.

    2.43 **"Regulations"** means Treasury Regulations promulgated under the Code as amended.

    2.44 **"Sixty percent (60%) in Interest"** means those Partners whose aggregate Sharing Ratios equal sixty percent (60%) or more of the Sharing Ratios of all Partners.

Maffei Family Limited Partnership Agreement

GG0337
Exhibit 3
Page 10 of 48
Case No. 3:03-cv-00262-JWS

Page 10

2.45    **"Sixty percent (60%) in Interest of Limited Partners"** means those Limited Partners whose aggregate Sharing Ratios equal sixty percent (60%) or more of the Sharing Ratios of all Limited Partners.

2.46    **"Section 704(e) Capital Account"** shall have the meaning ascribed to it in Article Four of this Agreement.

2.47    **"Section 704(e) Carrying Value"** shall have the meaning ascribed to it in Article Four of this Agreement.

2.48    **"Sharing Ratio"** means the ratio of a Partner's Capital Account to the Capital Accounts of all Partners, or, if applicable, the ratio of a Partner's Section 704(e) Capital Account to the Section 704(e) Capital Accounts of all Partners. The initial Sharing Ratios of the Partners as of the Effective Date are reflected in the initial Capital Accounts set forth on Schedule B. Each Partner's Sharing Ratio is subject to change over time as provided in this Agreement. Section 704(e) Capital Accounts and Section 704(e) Carrying Values are maintained in order to insure that allocations under Article Five are made in accordance with Section 704(e) of the Code. Section 704(e) Capital Accounts and Section 704(e) Carrying Values are applicable for determining Sharing Ratios for any period beginning immediately after an adjustment has been made under Article Four, Paragraph 4.3, and ending immediately before any next succeeding adjustment under Article Four, Paragraph 4.2.

2.49    **"Unanimous Consent"** means the consent of all Partners.

2.50    **"Unrealized Gain"** attributable to a Partnership property means the excess of the Gross Asset Value of the property over the Carrying Value or the Section 704(e) Carrying Value, as the case may be, of the property as of the date of determination.

2.51    **"Unrealized Loss"** attributable to a Partnership property means the excess of the Carrying Value or the Section 704(e) Carrying Value, as the case may be, of the property over its Gross Asset Value as of the date of determination.

## ARTICLE THREE
## CAPITAL CONTRIBUTIONS

3.1    **Initial Contributions.**    Each Partner shall contribute to the Partnership, as his or her initial Capital Contribution, cash or other property, the description and Gross Asset Value of which are set forth on Schedule A attached as part of this Agreement.

3.1.1    **Allocation of Partnership Interests.**    Each Partner shall receive one Partnership Unit for each One Hundred dollars ($100) in his or her Capital Account. Any amount less than one Unit shall constitute a fractional Unit. The Units of the Partnership initially shall be allocated according to Schedule B attached.

Maffei Family Limited Partnership Agreement

GG0338

Exhibit 3
Page 11 of 48
Case No. 3:03-cv-00262-JWS

Page 11

**3.1.2    Reallocation of Partnership Interests.**    The Adjusted Asset Value of the assets contributed by the Partners have been determined as provided in Paragraph 3.1.1. The Units of this Partnership have been allocated based upon such valuation and are deemed equal to the capital contributed. If a valuation different from that agreed is finally determined by the Internal Revenue Service, then the number of Partnership Units shall be increased or decreased, as may be appropriate, so that the gross fair market value of the Units allocated is equal to the gross fair market value of the Partner's contributed capital as of the date of contribution. If such reallocation of the Partnership Units requires a redetermination and reallocation of Profits, Losses and Distributions, then each Partner shall receive from or contribute back to the Partnership such reallocation or redistribution.

**3.2    Optional Contributions.**    The Partners shall be permitted to make additional Capital Contributions to the Partnership on a pro rata or non-pro rata basis. Optional Capital Contributions by a Limited Partner will be subject to the consent of the General Partner. Optional Capital Contributions by a General Partner will be subject to the consent of fifty-one Percent (51%) in Interest of Limited Partners. The required consent need not be in writing, and any optional Capital Contributions will be presumed to have been made with the required consent unless there is clear and convincing evidence to the contrary. A General Partner is required to maintain a General Partnership Interest of at least 1% at all times.

**3.3    Required Contributions - All Partners.**    If required in the discretion of the General Partner, the Partners will be required to make additional Capital Contributions to the Partnership to meet operating expenses of the Partnership within thirty (30) days from date of written notice by the General Partner. Any required Capital Contributions shall be made pro rata, in accordance with the Partners' Sharing Ratios unless otherwise agreed to by all Partners in writing.

**3.4    Required Contributions -- General Partners.**    The Sharing Ratio of each General Partner shall at all times equal or exceed one percent (1%). Accordingly, in addition to other available means by which the General Partners would each maintain a one percent (1%) Sharing Ratio, the General Partners agree to contribute capital, from time to time, in the form of cash or other property, so that they each maintain a Sharing Ratio of no less than one percent (1%).

**3.5    Gift.**    All or any part of one or more of the Capital Contributions of the Limited Partners may be made by one or more of the other Partners on behalf of such Limited Partner as a gift.

**3.6    Adjustments.**    To simplify the Partnership accounting, any adjustment to the Sharing Ratios of the Partners caused by required or optional Capital Contributions shall be made semi-annually on the June 30 or December 31 following the contribution.

Maffei Family Limited Partnership Agreement

GG0339
Exhibit 3
Page 12 of 48
Case No. 3:03-cv-00262-JWS

Page 12

**3.7    Failure to Contribute.**

3.7.1  If a Partner fails to make a required Capital Contribution, the Partnership may exercise, on notice to that Partner (the "Delinquent Partner"), one or more of the following remedies:

**3.7.1.1**  taking such action, at the cost and expense of the Delinquent Partner, to obtain payment by the Delinquent Partner of the portion of the Delinquent Partner's Capital Contribution that is in default, together with interest on that amount at the Default Interest Rate from the date that the Capital Contribution was due until the date that it is made;

**3.7.1.2**  permitting the Partners, in proportion to their Sharing Ratios or in such other percentages as they may agree (the "Lending Partner", whether one or more), to advance the portion of the Delinquent Partner's Capital Contribution that is in default, with the following results:

**3.7.1.2.1**  the sum advanced constitutes a loan from the Lending Partner to the Delinquent Partner and a Capital Contribution of that sum to the Partnership by the Delinquent Partner,

**3.7.1.2.2**  the principal balance of the loan and all accrued unpaid interest is due and payable on the tenth day after written demand by the Lending Partner to the Delinquent Partner,

**3.7.1.2.3**  the amount lent bears interest at the Default Interest Rate from the day that the advance is deemed made until the date that the loan, together with all interest accrued, is repaid to the Lending Partner,

**3.7.1.2.4**  all distributions from the Partnership that would be made to the Delinquent Partner shall be paid to the Lending Partner until the loan and all interest accrued have been paid in full,

**3.7.1.2.5**  the payment of the loan and interest accrued is secured by a security interest in the Delinquent Partner's Partnership Interest, and

**3.7.1.2.6**  the Lending Partner has the right, in addition to the other rights and remedies granted to it under this Agreement or at law or in equity, to take any action, at the cost and expense of the Delinquent Partner, that the Lending Partner may deem appropriate to obtain payment by the Delinquent Partner of the loan and all accrued and unpaid interest;

**3.7.1.3**  exercising the rights of a secured party under the Uniform Commercial Code of the State of Alaska; or

GG0340

**3.7.1.4** exercising any other rights and remedies available at law or in equity.

**3.7.2** Each Partner grants to the Partnership, and to the Lending Partner with respect to any loans made to that Partner, as security, equally and ratably for the payment of all Capital Contributions that Partner has agreed to make and the payment of all loans and interest accrued made by Lending Partners to that Partner, a security interest in its Partnership Interest under the Uniform Commercial Code of the State of Alaska. On any default in the payment of a required Capital Contribution or in the payment of a loan or interest accrued, the Partnership or the Lending Partner, as applicable, is entitled to all the rights and remedies of a secured party under the Uniform Commercial Code of the State of Alaska with respect to the security interest granted. Each Partner shall execute and deliver to the Partnership and the other Partners all financing statements and other instruments that the General Partners or the Lending Partner, as applicable, may request to effectuate and carry out the preceding provisions of this paragraph. At the option of the General Partners or a Lending Partner, this Agreement or a carbon, photographic, or other copy of this Agreement may serve as a financing statement.

**3.8    Right to Demand Return of Capital Contribution.** No Partner shall have the right to demand the return of all or any part of his or her Capital Contributions.

## ARTICLE FOUR
## CAPITAL ACCOUNTS

**4.1** A "Capital Account" shall be established for each Partner and shall be maintained at all times throughout the existence of the Partnership in a manner so as to correspond with the rules set forth in the Regulations under Code Section 704(b). A Partner's Capital Account shall be increased by (1) the amount of his or her Capital Contribution to the Partnership, and (2) allocations of income or gain to the Partner for partnership book purposes pursuant to Article Five, and shall be reduced by (1) the amount of money distributed to the Partner by the Partnership, (2) the Agreed Value of any property distributed to the Partner by the Partnership, and (3) allocations of deduction or loss to the Partner for partnership book purposes by the Partnership pursuant to Article Five. The Capital Accounts of the Partners shall not bear interest.

**4.2** If any additional Partnership Interests are to be issued in consideration for a contribution of Property or cash (other than a de minimis amount) or if any Property or cash (other than a de minimis amount) is to be distributed in liquidation of the Partnership or a Partnership Interest, the Capital Accounts of the Partners and the Carrying Value of all Property shall, immediately prior to such issuance or distribution, be adjusted (consistent with the provisions of Section 704(b) of the Code and the Regulations) upward or downward to reflect any Unrealized Gain or Unrealized Loss attributable to all Property (as if the Unrealized Gain or Unrealized Loss had been recognized upon actual sale of the Property upon a liquidation of the Partnership immediately prior to issuance).

**4.3** If all or any portion of a Partnership Interest is transferred to a Permitted Transferee as a gift or deemed gift, the Capital Accounts of the Partners and the Carrying Value

Maffei Family Limited Partnership Agreement

GG0341
Exhibit 3
Page 14 of 48
Case No. 3:03-cv-00262-JWS

Page 14

of all Property shall, immediately prior to such transfer, be adjusted upward or downward to reflect any Unrealized Gain or Unrealized Loss attributable to such Property in a manner similar to that set forth in Paragraph 4.2 of this Article. The Capital Accounts and Carrying Values so determined under this Paragraph 4.3 shall be referred to as the "Section 704(e) Capital Accounts" and "Section 704(e) Carrying Values," respectively. The Section 704(e) Capital Accounts and Section 704(e) Carrying Values shall thereafter be adjusted in the same manner as Capital Accounts and Carrying Values.

    4.4    Except as otherwise required by the Regulations under Code 704(b), in the event any interest in the Partnership is transferred in accordance with the terms of this Agreement, the transferee shall succeed to the Capital Account and the Section 704(e) Capital Account of the transferor to the extent it relates to the transferred interest.

    4.5    No Partner will be required to restore a deficit in his or her Capital Account upon liquidation of the Partnership or the Partner's Partnership Interest.

    4.6    The General Partner's General Partner Interest will be maintained separately from any Limited Partnership Interest which he may have.

## ARTICLE FIVE
## ALLOCATIONS

    **5.1**    **General.** Except as otherwise provided in this Article Five, for federal income tax purposes, each item of income, gain, loss and deduction will be allocated among the Partners in the same manner as its correlative item of "book" income, gain, loss or deduction is allocated pursuant to this Article Five.

    **5.2**    **Profits and Losses.** Profits and Losses shall be allocated as follows:

    5.2.1    First, Losses shall be allocated to the Partners in accordance with and in proportion to the Partners' Sharing Ratios but only to the extent of the Partners' Adjusted Capital Accounts.

    5.2.2    Second, to the extent the allocation of Losses to a Partner would create an Adjusted Capital Account Deficit for that Partner, such Losses shall be allocated to the General Partner.

    5.2.3    Third, Profits shall be allocated to the General Partners in a cumulative amount equal to the cumulative Losses allocated to the General Partners under Paragraph 5.2.2 of this Article.

    5.2.4    Fourth, Profits shall be allocated to Partners in accordance with such Partners' Sharing Ratios.

GG0342

**5.2.5** Notwithstanding the preceding allocations, and to the extent the General Partners deems it necessary to insure that the Agreement and the allocations thereunder meet the requirements of Section 704 of the Code and the Allocation Regulations, allocations of the following type and in the following priority will be made to the appropriate Partners in the necessary and required amounts as set forth in the Regulations under Code Section 704(b) before any other allocations under Paragraph 5.2 of this Article:

**5.2.5.1** Partner nonrecourse debt minimum gain chargeback under Regulations Section 1.704-2(i);

**5.2.5.2** Partnership minimum gain chargeback under Regulations Section 1.704-2(f) (provided that the General Partners may seek a waiver of such chargeback in appropriate circumstances under Regulations Section 1.704-2(f)(4) in its sole discretion);

**5.2.5.3** In the event any Partners unexpectedly receive any adjustments, allocations, or distributions described in Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5), or (6), items of Partnership income and gain to such Partners in an amount and manner sufficient to eliminate the deficit balances in their Capital Accounts (excluding from such deficit balance amounts Partners are obligated to restore under this Agreement or are treated as obligated to restore pursuant to Regulations Sections 1.704-1(b)(2)(ii)(c), 1.704-1(b)(2)(ii)(h), 1.704-2(g), or 1.704-2(i)(5)) created by such adjustments, allocations, or distributions as quickly as possible and in a manner which complies with Regulations Section 1.704-1(b)(2)(ii)(d);

**5.2.5.4** Partner nonrecourse deductions under Regulations Section 1.704-2(i) which will in all cases be allocated to the Partner which bears economic risk of loss for the indebtedness to which such deductions are attributable; and,

**5.2.5.5** To the extent an adjustment to the adjusted tax basis of any Property under Code Sections 734(b) or 743(b) is required to be taken into account in determining Capital Accounts under Regulations Section 1.704-1(b)(2)(iv)(m), the amount of the adjustment to the Capital Accounts will be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases the basis), and the gain or loss will be specially allocated to the Partners in a manner consistent with the manner in which their Capital Accounts are required to be adjusted under Regulations Section 1.704-1(b)(2)(iv)(m).

The allocations set forth in Paragraph 5.2.5 of this Article (the "Regulatory Allocations") are intended to comply with certain requirements of Regulations Sections 1.704-1(b) and 1.704-2. The Regulatory Allocations may effect results which would not be consistent with the manner in which the Partners intend to divide Partnership distributions. Accordingly, the General Partners are authorized to divide other allocations of Profits, Losses, and other items among the Partners so as to prevent the Regulatory Allocations from distorting the manner in which distributions would be divided among the Partners under Article Six if such distributions were made in accordance with the Sharing Rations of the Partners but for application of the Regulatory Allocations. In general, the reallocation will be accomplished by specially allocating

Maffei Family Limited Partnership Agreement

GG0343
Exhibit 3
Page 16 of 48
Case No. 3:03-cv-00262-JWS

Page 16

other Profits, Losses and items of income, gain, loss and deductions, to the extent they exist, among the Partners so that the net amount of the Regulatory Allocations and the special allocations to each Partner is zero. The General Partners will have discretion to accomplish this result in any reasonable manner that is consistent with Code Section 704 and the related Regulations. Pursuant to Regulations Section 1.752-3(a)(3), solely for purposes of determining each Partner's proportionate share of the "excess nonrecourse liabilities" of the Partnership (as defined in Regulations Section 1.752-3(a)(3)), the Partners' respective interests in Profits will be equal to their Sharing Ratio.

5.3    **Transferor-Transferee Allocations; Section 754 Election.** Income, gain, loss, deduction or credit attributable to any interest in the Partnership which has been transferred shall be allocated between the transferor and the transferee under any method allowed under Section 706 of the Code as agreed by the transferor and the transferee. The General Partner, at his discretion, may make the election provided under Section 754 of the Code and any corresponding provision of applicable state law.

5.4    **Reliance on Advice of Accountants and Attorneys.** The General Partners shall have no liability to the Limited Partners or the Partnership if they rely upon the written opinion of tax counsel or accountants retained by the Partnership with respect to all matters (including disputes) relating to computations and determinations required to be made under this Article or other provisions of this Agreement. After all allocations under this Article have been made, the General Partner, in his discretion, shall reallocate income among the Partners to the least extent necessary to insure that the provisions of Section 704(e) and the Regulations have been fulfilled, especially Regulations Section 1.704-1(e)(3). To the extent that any Partner was allocated income which the Internal Revenue Service finally determines should have allocated to any other Partner under the principles of Section 704(e), whether by way of a guaranteed payment or otherwise, the second Partner intends and does designate the income as a gift to the first Partner.

5.5    **Tax Allocations; Code Section 704(c).** With regard to income, gain, loss, depreciation, depletion and cost recovery deductions for federal income tax purposes: In the case of a Contributed Property, such items will be allocated among the Partners in the manner provided in Section 704(c) of the Code and its Regulations to take account of the Built-in Gain and Built-in Loss at the time of contribution and, in the case of any Property the Carrying Value of which has been adjusted pursuant to Article Four, such items will be allocated among the Partners in a manner consistent with the principles of Section 704(c) of the Code and its Regulations to take into account differences between the Gross Asset Value and the adjusted tax basis of such property at the time of such adjustment. Allocations under this Paragraph 5.5 are solely for purposes of federal, state and local taxes and will not affect, or in any way be taken into account in computing, any Partner's Capital Account or share of Profits, Losses or other items or distributions under any provision of this Agreement.

5.6    **Partner Acknowledgment.** The Partners agree to be bound by the provisions of this Article Five in reporting their shares of Partnership income and loss for income tax purposes.

GG0344

## ARTICLE SIX
## DISTRIBUTIONS

**6.1    General.** Subject to Article Six and other provisions of this Agreement, Distributable Cash may be distributed at the sole discretion of the General Partners among the Partners pro rata in accordance with their Sharing Ratios.

**6.2    No Interest.** If any Partner does not withdraw the whole or part of his or her share of any cash distribution made pursuant to Article Six, Paragraph 6.1, the Partner shall not be entitled to receive any interest without Unanimous Consent. Further, such non-withdrawn amount shall become an optional Capital Contribution under Article Three, Paragraph 3.2, if otherwise permitted at that time.

**6.3    Transferor - Transferee Shares.** Unless agreed in writing by a transferor and transferee, Distributable Cash allocable to the transferred Partnership Interest which may have been transferred during any year shall be distributed to the holder of such Partnership Interest who was recognized as the owner on the date of such distribution, without regard to the results of Partnership operations during the year.

**6.4    Partner Loans.** Notwithstanding the foregoing, if any Partner advances any funds or makes any other payment to or on behalf of the Partnership, not required in this Agreement, to cover operating or capital expenses of the Partnership which cannot be paid out of the Partnership's operating revenues, any advance or payment shall be deemed a loan to the Partnership by the Partner, bearing interest from the date the advance or payment was made until the loan is repaid at the Default Interest Rate. Notwithstanding Article Six, Paragraphs 6.1 and 6.2, all distributions of Distributable Cash shall first be distributed to the Partners making the loans until the loans have been repaid, together with interest. Thereafter, the balance of the distributions, if any, shall be made in accordance with the terms of Article Six, Paragraphs 6.1 and 6.2. If distributions are insufficient to repay all loans as provided above, the funds available shall first be applied to repay the oldest loan and, if any funds remain available, the funds shall be applied in a similar manner to remaining loans in accordance with the order of the dates on which they were made; however, as to loans made on the same date, each loan shall be repaid pro rata in the proportion that the loan bears to the total loans made on that date.

**6.5    Limitation on General Partner's Discretion to make Distributions** With regard to Distributable Cash and Property, the General Partners shall make a determination, in accordance with his duty of care and loyalty to the Partnership, as to the need for the Property in the operation of the Partnership business, considering both current needs for operating capital, prudent reserves for future operating capital, current investment opportunities, and prudent reserves for future investment opportunities, all in keeping with the Partnership Purposes. It is the duty of the General Partner, in determining the amount of Distributable Cash available for the payment of distributions, to take into account the needs of the Partnership in its business and sums necessary in the operation of its business until the income from further operations is available, the amounts of its debts, the necessity or advisability of paying its debts, or at least reducing them within the limits of the Partnership's credit, the preservation of its capital as

Maffei Family Limited Partnership Agreement

GG0345
Exhibit 3
Page 18 of 48
Case No. 3:03-cv-00262-JWS

Page 18

represented in the Property of the Partnership as a fund for the protection of its creditors, and the character of its surplus Property. Any contributed Property or borrowed funds by the Partnership shall be considered as needed for Partnership investment purposes, and any cash produced from the sale of Property contributed to the Partnership or from the sale of any Property purchased with borrowed funds, or any reinvestment of any of the Property, including the portion of the sale proceeds representing capital appreciation, shall be considered as needed reserves for Partnership investment purposes. Any Distributable Cash derived from income shall, to the extent deemed unnecessary for Partnership Purposes by the General Partners under the foregoing standard, be distributed in accordance with this Agreement.

### 6.6  Return of Distributions.

**6.6.1**  Any Distribution made to the Partners shall be deemed to comply with all applicable law, including without limitation Alaska Statutes 32.11, provided the Distribution is made from available Partnership assets.

**6.6.2**  To the extent that any court of competent jurisdiction finds that a Distribution was made in violation of Alaska Statutes 32.11, the Partners shall be required to return their respective share of the Distribution made in violation of Alaska Statutes 32.11.

**6.6.3**  Creditors of the Partnership shall be deemed to have notice of the provisions of this Paragraph 4.10 and the fact that the Partners may be required to return a Distribution.

**6.7  Conditions of Distributions.**  Except as otherwise provided, no Partner shall have the right to demand or receive property other than money as a Distribution, nor may any Partner be compelled to accept Distribution of any asset in kind from the Partnership.

**ARTICLE SEVEN**
**WITHDRAWAL, ASSIGNMENT OR TRANSFER**
**OF PARTNERSHIP INTEREST**

The ownership and transferability of interests in the Partnership are substantially restricted. Neither record title nor beneficial ownership of a Partnership Interest of any Partner may be transferred or encumbered except as otherwise set forth in this Agreement.

**7.1  Generally.**  This Partnership is formed by those who know and trust one another, who will have surrendered certain management rights (in exchange for limited liability in the case of a Limited Partner), or who will have assumed management responsibility and risk (in the case of a General Partner) based upon their relationship and trust. Capital is material to the business and investment objectives of the Partnership and its federal tax status. An unauthorized transfer of a Partner's interest could create a substantial hardship to the Partnership, jeopardize its capital base, and adversely affect its tax structure. These restrictions upon ownership and transfer are not intended as a penalty, but as a method to protect and preserve existing relationships based upon trust and the Partnership's capital and its financial ability to continue.

GG0346

Exhibit 3
Page 19 of 48
Case No. 3:03-cv-00262-JWS

Except as provided in Article Seven, Paragraph 7.2, neither record title nor beneficial ownership of a Partnership Interest may be transferred without the consent of all General Partners and a majority in interest of Limited Partners ("Required Consent"). In addition, no assignee of a Partnership Interest shall have the right to assign any transferred interest except as provided in Article Seven. To be a valid assignment, in addition to meeting the other requirements of Article Seven, the assignment must be in writing, the terms of which are not in contravention of any of the provisions of the Agreement, and the assignment must be received by the Partnership and recorded on the books of the Partnership. Until the effective date of an assignment of a transferred interest, both the Partnership and the Partners shall be entitled to treat the assignor of the transferred interest as the absolute owner thereof in all respects. Upon the effective date of an assignment of transferred interests, the Partnership will not be required to recognize the interest of any transferee who has purportedly obtained a purported transferred interest as the result of a transfer or assignment that is not authorized by this Agreement and the transfer and assignment shall be null and void for all purposes. If there is a doubt as to ownership of a Partnership Interest or who is entitled to Distributable Cash or liquidating proceeds or other Property, the General Partners may accumulate Distributable Cash or liquidation proceeds or other Property until the issue is resolved to the satisfaction of the General Partner.

**7.2    Disclosures, Limitations, and Exceptions.**    The ownership and transfer or assignment of a Partnership Interest is further subject to the following disclosures, limitations and exceptions:

**7.2.1    Federal Law Disclosure and Limitations.**    The Partnership Interests have not, nor will be, registered under federal or state securities laws. Partnership Interests may not be offered for sale, sold, pledged, or otherwise transferred unless so registered, or unless an exemption from registration exists. The availability of any exemption from registration must be established by an opinion of counsel, whose opinion must be satisfactory to the General Partner.

**7.2.2    Death or Incompetency of a Partner.**    The death of an individual General Partner will automatically convert his or her General Partnership Interest to a Limited Partnership Interest. A Limited Partner who is (1) an individual, (2) a trust with an individual beneficiary who has a limited or unlimited power of appointment at his or her death, or (3) a General Partner whose death converted his or her General Partnership Interest to a Limited Partnership Interest may transfer his or her Limited Partnership Interest to a Permitted Transferee without Required Consent.

The transfer may be accomplished: (1) pursuant to the properly probated last will of a Partner; (2) pursuant to the terms for a Permitted Transferee; (3) pursuant to the exercise of a limited or unlimited power of appointment or beneficiary designation of any trust; or (4) pursuant to a written and acknowledged assignment and designation of beneficiary delivered by the Partner to a General Partner prior to the death of the Partner, effective as of his or her death or the death of the beneficiary.

If there has been no pre-arranged transfer as provided above, the executor, administrator, guardian, conservator, or legal representative of a deceased or incompetent

Maffei Family Limited Partnership Agreement

GG0347

Exhibit 3
Page 20 of 48
Case No. 3:03-cv-00262-JWS

Page 20

Limited Partner shall have the status of an Assignee and, in accordance with Section 32.11.360 of the Act, may exercise all the deceased or incompetent Limited Partner's rights and powers to settle the Limited Partner's estate or administer the Limited Partner's property, including the right of an Assignee to become a Limited Partner by obtaining Required Consent. However, the estate of a deceased or incompetent Limited Partner shall not have the right to become a substitute Limited Partner except as may be provided in this Article.

     **7.2.3**  **Estate Planning Transfers.**  A Limited Partner who is an individual or a trust with an individual beneficiary with a limited or unlimited right to make a disposition of all or any part of his or her interest in the trust during his or her lifetime, will have the right to make transfers of his or her Limited Partnership Interest with or without consideration to a Permitted Transferee without Required Consent.

     **7.2.4**  **Nonrecognition of an Unauthorized Transfer.**  The Partnership will not be required to recognize the interest of any Assignee or transferee who has obtained a purported Partnership Interest as the result of a transfer or assignment which is not authorized by this Agreement. If there is a doubt as to ownership of a Partnership Interest or who is entitled to Distributable Cash or liquidating proceeds, the General Partners may accumulate Distributable Cash or liquidation proceeds until the issue is resolved to the satisfaction of the General Partner.

     **7.2.5**  **Acquisition of an Interest Conveyed to Another Without Authority.**  If any Person acquires the Partnership Interest, or becomes an Assignee, as the result of an order of a court which the Partnership is required by law to recognize, or if a Partner's interest in the Partnership is subjected to a lawful "charging order", or if a Partner makes an unauthorized transfer or assignment of a Partnership Interest, which the Partnership is required by law (and by order of a court) to recognize, the Partnership will have the unilateral option to acquire the interest of the transferee or Assignee, or any fraction or part thereof, upon the following terms and conditions:

     **7.2.5.1**  The Partnership will have the option to acquire the interest by giving written notice to the transferee or Assignee of its intent to purchase within ninety (90) days from the date it is finally determined that the Partnership is required to recognize the transfer or assignment.

     **7.2.5.2**  The valuation date for the determination of the purchase price of the interest will be the first day of the month following the month in which notice is delivered.

     **7.2.5.3**  Unless the Partnership and the transferee or Assignee agree otherwise, the purchase price for the interest, or any fraction to be acquired by the Partnership, shall be its fair market value as determined by an Appraisal.

     **7.2.5.4**  Closing of the sale will occur at the principal office of the Partnership at 10 o'clock a.m. on the first Tuesday of the month following the month in which the Appraisal is rendered.

GG0348

Maffei Family Limited Partnership Agreement

Exhibit 3
Page 21 of 48
Case No. 3:03-cv-00262-JWS

Page 21

7.2.5.5 In order to reduce the burden upon the resources of the Partnership, the Partnership will have the option, to be exercised in writing delivered at closing, to pay its purchase money obligation in fifteen (15) equal annual installments [or the remaining term of the Partnership if less than fifteen (15) years] with interest at the Default Interest Rate. The first installment of principal, with interest, will be due and payable on the first day of the calendar year following closing, and subsequent annual installments, with accrued interest, will be due and payable on the first day of each succeeding calendar year until the entire amount of the obligation is paid. The Partnership will have the right to prepay all or any part of the purchase money obligation at any time without penalty.

7.2.5.6 By Required Consent, other than the Partner whose interest is to be acquired, the General Partners may assign the Partnership's option to purchase to one or more of the remaining Partners and when done, any rights or obligations imposed upon the Partnership will instead become, by substitution, the rights and obligations of the Partners who are assignees.

7.2.5.7 Neither the transferee nor Assignee of an unauthorized transfer or assignment or the Partner causing the transfer or assignment will have the right to vote on Partnership matters during the prescribed option period or, if the option to purchase is timely exercised, until the sale is closed.

7.2.6 **Admission of Substitute Limited Partners.** Notwithstanding anything in this Article to the contrary, any successor to the Partnership Interest of a Limited Partner shall be admitted to the Partnership as a substitute Limited Partner only upon the (a) furnishing to the General Partners of a written acceptance in a form satisfactory to the General Partners of all of the terms and conditions of this Agreement and such other documents and instruments as may be required to effect the admission of the successor as a Limited Partner; and (b) obtaining the Required Consent. The consent may be withheld or granted in the sole discretion of those constituting the Required Consent. The transferee shall be admitted to the Partnership as a substitute Limited Partner as of the effective date of the transfer.

7.3 **Partnership Interest Pledge or Encumbrance.** No Partner may grant a security interest in or otherwise pledge, hypothecate or encumber his or her interest in this Partnership or such Partner's distributions without Required Consent. It is understood that the Partners are under no obligation to give consent nor are they subject to liability for withholding consent.

### ARTICLE EIGHT
### PARTNERS

8.1 **Admission of New Partners.** The initial Partners are those Partners who executed this Agreement as General and Limited Partners as of the Effective Date. After the Effective Date, no Person shall be admitted as a Partner except as provided in this Agreement and the Act. Once the Person has been admitted as a Partner, he shall have the rights and obligations of a Limited Partner or General Partner, as applicable. Any new Partner will be required to accept and assume the terms and conditions of this Agreement in writing.

GG0349

Maffei Family Limited Partnership Agreement

Exhibit 3
Page 22 of 48
Case No. 3:03-cv-00262-JWS

Page 22

## 8.2    Management by General Partner.

**8.2.1**    The General Partners shall be responsible for the exclusive management, operation and control of the business and affairs of the partnership. The General Partners shall act as a "manager" of the partnership. If there is more than one General Partner, all obligations of the General Partners under this Agreement shall be joint and several. Any actions taken by the General Partners shall be valid if approved by a majority of the General Partners.

**8.2.2**    The General Partners by unanimous consent of the General Partners may designate a managing partner ("Manager"). A designated Manager shall serve until the designation is revoked or the Manager ceases to serve for any other reason. If a Manager is designated, the Manager is authorized and directed to manage and control the assets and the business of the Partnership. The Manager may exercise all of the powers which could be exercised by majority consent of the General Partners. If a Manager is designated, any reference to "General Partner" in this Agreement shall also include "Manager" if applicable.

**8.2.3**    The General Partners may hire employees of the Partnership, appoint any individual as an officer of the Partnership, and delegate to the officer or employee any power or duty a General Partner may have. The fact that a Partner is directly or indirectly an Affiliate of any person shall not prohibit that person from being employed or dealing with the Partnership. Any employment or dealing shall be done at reasonable rates for similar services, supplies, or materials.

**8.2.4**    A General Partner will have the authority to employ, select, remove, and change the authority and responsibility of any consultants or professionals as the General Partners considers necessary to assist in the prudent management of the Partnership and its Property. The fact that a Partner is directly or indirectly an Affiliate of any Person shall not prohibit that Person from being employed or dealing with the Partnership as a consultant or professional.

**8.2.5**    The General Partners shall remain responsible to the Partnership for the acts or omissions of the Manager, agent, or employee and for performance of his General Partner duties provided for in this Agreement or the Act.

**8.3    Admission of Additional General Partner.**    Additional General Partners may be admitted as provided in Article Nine, Paragraph 9.3.4.

**8.4    Removal of a General Partner.** Notwithstanding anything herein to the contrary, a General Partner may not be removed unless there is at least one remaining General Partner Except as otherwise provided in this Agreement, a majority in interest of Limited Partners will have the right to remove an existing General Partner. In the event that a General Partner is removed for any reason, then the removed General Partner shall automatically become a Limited Partner and his or her Partnership Interest converted to a Limited Partnership Interest. Notwithstanding the foregoing, if a General Partner is in material breach of his or her obligations and does not cure, or commence and diligently prosecute the curing of, such breach within 90

GG0350

Maffei Family Limited Partnership Agreement

Exhibit 3
Page 23 of 48
Case No. 3:03-cv-00262-JWS

Page 23

days after notice thereof by any of the Limited Partners, or if he has committed any act or omission of fraud or malfeasance to the injury of the Partnership, then said General Partner shall be removed upon agreement of at least a majority in interest of Limited Partners.

8.5    **Authority of the General Partner.** The General Partners shall have full power to do all things appropriate in carrying out the Partnership Purposes, including authority to:

8.5.1   sell, exchange, assign, convey, lease and/or transfer legal and equitable title to the Partnership Property on terms and conditions deemed reasonable by the General Partner.

8.5.2   acquire, utilize for Partnership Purposes, and operate, improve, and develop any Partnership Property

8.5.3   retain, without liability, any property in the form in which it is received without regard to its productivity or the proportion that any one asset or class of assets may bear to the whole.

8.5.4   register or take title to Partnership assets in the name of the Partnership or as Trustee, with or without disclosing the identity of his principal, or to permit the registration of securities in "street name" under a custodial arrangement with an established securities brokerage firm, trust department, or other custodian.

8.5.5   borrow money, finance, refinance or otherwise incur obligations for the account of the Partnership and pledge, mortgage, and grant a security interest in the Property;

8.5.6   carry out the Partnership Purposes through corporations, limited liability companies, other partnerships, or other entities;

8.5.7   compromise claims against the Partnership;

8.5.8   make any election under any tax law in the manner the General Partners deems advisable, the election or failure to elect of which shall not result in any cause of action against the General Partner.

8.5.9   execute and/or accept any instrument, conveyance, or agreement incident to the partnership's business or property without the joinder, ratification, or consent of the Partners.

8.5.10  pay all Partnership debts, obligations, and expenses;

8.5.11  perform the Partnership's obligations, and exercise all of the Partnership's rights, under any agreement to which the Partnership or any nominee of the Partnership is a party;