8.5.12  loan funds to any Partner on terms and conditions deemed reasonable by the General Partner;

8.5.13  advance any moneys to the Partnership required for the business of the Partnership, but with no obligation to do so.

8.5.14  to acquire and determine the amounts of insurance coverage required by the Partnership Purposes, Property, and/or business.

8.5.15  enter into contracts and business undertakings to further the Partnership Purposes;

8.5.16  open and maintain bank and investment accounts and arrangements, drawing checks and other orders for the payment of money, and designating individuals with authority to sign or give instructions with respect to those accounts and arrangements;

8.5.17  maintain the Partnership Property in good order;

8.5.18  collect sums due the Partnership;

8.5.19  invest and reinvest Property to accomplish Partnership Purposes, including but not limited to investing the Property in accordance with modern portfolio theory;

8.5.20  make distributions of Distributable Cash subject to other provisions of this Agreement;

8.5.21  execute and file certificates or instruments as required or permitted by the Act and any other laws of the State of Alaska or any other jurisdiction where the Partnership does business;

8.6    **Restrictions on the General Partner.** The General Partners will <u>not</u> have the authority to enter into any of the following transactions without the consent of sixty percent (60%) in interest of all Partners:

8.6.1  incur Partnership indebtedness in excess of a loan to value ratio of fifty percent (50%) (cumulative of all Partnership liabilities and the cumulative value of the Property measured at book value);

8.6.2  prior to the actual termination of the Partnership, sell substantially all of the Property in liquidation or cessation of business;

8.6.3  compromise any claim or dispute having an amount or value in issue in excess of fifty percent (50%) of the total value of the Property;

8.6.4  confess a judgment against the Partnership;

GG0352

**8.6.5**   do any act in violation of this Agreement;

**8.6.6**   possess Property or assign the right of the Partnership or its Partners in specific Property for other than a Partnership Purpose;

**8.6.7**   make, execute, or deliver any assignments for the benefit of creditors, or on the Assignee's promise to pay the debts of the Partnership;

**8.6.8**   do any act for which the consent of the Limited Partners is required by the Act;

**8.7**   **Requirement of Unanimous Consent.** The General Partners will <u>not</u> have the authority to enter into any of the following transactions without Unanimous Consent:

**8.7.1**   terminate, liquidate and wind up the Partnership, except as otherwise provided in Article Nine, Paragraph 9.1.2 of this Agreement;

**8.7.2**   admit additional or substitute partners except as otherwise provided in Article Seven of this Agreement;

**8.7.3**   do any act that would make it impossible to carry on the Partnership Purposes and business of the Partnership (provided, however, that the sale or other disposition of all or any Property shall not be deemed to be an act making it impossible for the Partnership to carry on its business);

**8.7.4**   engage in any business activity other than that which is consistent with the Partnership Purposes; or

**8.7.5**   amend this Agreement except as provided for elsewhere in this Agreement.

**8.8**   **Compensation and Reimbursement of the General Partner.** The General Partners shall diligently and faithfully devote the time to the management of the Partnership necessary to serve the Partnership Purposes and shall perform all of the duties of a General Partner which are provided for in this Agreement and the Act. A General Partner will be entitled to a reasonable annual compensation for services rendered to the Partnership, reasonable compensation to be measured by the time required in the administration of the Partnership, the value of property under the General Partner's administration, and the responsibilities assumed in the discharge of the duties of office and shall comply with Section 704(e) of the Code, if applicable. This compensation shall be a guaranteed payment. The General Partners will be entitled to reimbursement of all reasonable and necessary business expenses incurred in the administration of the Partnership. A majority in interest of Limited Partners may adjust a General Partner's compensation based upon the General Partner's performance and dedication of time to the business of the Partnership. If the cash flow of the Partnership is insufficient to pay

Maffei Family Limited Partnership Agreement

GG0353

Exhibit 3
Page 26 of 48
Case No. 3:03-cv-00262-JWS
Page 26

the compensation, the unpaid portion of the compensation may be deferred and bear interest at the Default Interest Rate. Payments to the General Partners for services rendered to the Partnership will not be a return on invested capital, but will be paid as compensation for services rendered.

### 8.9    Indemnification and Limitations on General Partner's Liability.

8.9.1    To the extent Alaska law will permit, a General Partner who succeeds another will be responsible only for the property and records delivered by or otherwise acquired from the preceding General Partner, and may accept as correct the records of the preceding General Partner without duty to audit the records or to inquire further into the administration of the predecessor and without liability for a predecessor's errors and omissions.

8.9.2    No General Partner shall be liable for any act or omission except those resulting from gross negligence, fraud, bad faith, or misconduct.

8.9.3    A General Partner will not have liability for loss of income from or depreciation in the value of the property which was retained in the form which the General Partner received it.

8.9.4    The General Partner shall be entitled to all indemnification authorized in the Act.

8.9.5    The General Partners will not owe a fiduciary duty to the Partnership or to any Partner. The General Partners will owe a duty of loyalty and a duty of care to the Partnership.

8.9.6    Each General Partner shall indemnify, save and hold harmless the Partnership and each of the Limited Partners from any loss, damage, claim or liability incurred by them, including but not limited to reasonable attorneys' fees and expenses, due to or arising out of the General Partner's gross negligence, fraud, bad faith, or misconduct.

8.9.7    Pursuant to the Act, the Partnership shall indemnify, save and hold harmless the General Partner, his affiliates, officers, directors, partners, employees, and agents from any loss, damage, claim or liability, including but not limited to direct and indirect costs and reasonable attorneys' fees and expenses, incurred by him by reason of any act performed by the General Partners on behalf of the Partnership or in furtherance of the Partnership Purposes other than an act of gross negligence, fraud, misconduct, or bad faith; provided, however, that this indemnity from the Partnership shall be satisfied out of Partnership assets only.

8.9.8    The Partnership may purchase insurance to minimize all or part of any indemnification risk.

8.9.9    For purposes of this paragraph the term "General Partner" shall also refer to the General Partner's heirs, administrators, executors, successors and assigns.

8.9.10 The Partners authorize any General Partner to organize the Partnership as a limited partnership under Section 32.11.010 of the Alaska Uniform Limited Partnership Act, and further authorize such General Partner to take or cause the Partnership to take all actions, at the expense of the Partnership, as necessary or appropriate to effect and maintain such organization.

### 8.10    Waiver of Self-Dealing.

8.10.1 The General Partners shall have the authority to enter into any transaction on behalf of the Partnership despite the fact that another party to the transaction may be: (1) a trust of which a Partner is a trustee or beneficiary; (2) an estate of which a Partner is a personal representative or beneficiary; (3) a business controlled by one or more Partners or a business of which any Partner is also a director, officer or employee; (4) any affiliate, employee, stockholder, associate, manager, partner, or business associate; (5) any Partner, acting individually; or (6) any relative of a Partner; provided the terms of the transaction are no less favorable than those the Partnership could obtain from unrelated third parties.

8.10.2 It is expressly understood that each Partner is entitled to invest his or her personal assets for his or her own account and is entitled to conduct his or her personal affairs and investments without regard to whether they constitute a Partnership "opportunity."

8.10.3 A Partner may engage in or possess an interest in any other business or venture of any nature and description, independently or with others, including ones in competition with the Partnership, with no obligation to offer to the Partnership or any other Partner the right to participate. Neither the Partnership nor its Partners shall have by virtue of this Agreement any right in any independent venture or its income or Profits.

8.11    **Amendment to Certificate of Limited Partnership.** If a General Partner is unwilling or unable to sign a required amendment to the Certificate of Limited Partnership, the amended certificate may be signed by any remaining or successor General Partner(s). Each General Partner appoints his or her successor and any remaining General Partner(s), if any, as his or her attorney in fact to sign the amended certificate.

### 8.12    Reliance by Third Parties.

8.12.1 Any Person dealing with the Partnership, other than a Partner, may rely on the authority of the General Partners in taking any action in the name of the Partnership without inquiry into the provisions of this Agreement. Any document executed by the General Partners shall be deemed to be the action of the Partnership as to any third parties. No purchaser, tenant, transferee or obligor will have any obligation to see to the application of payments made to the General Partner.

8.12.2 Any Person dealing with the Partnership or the General Partners may rely upon a certificate signed by the General Partners as to:

Maffei Family Limited Partnership Agreement

Exhibit 3
Page 28 of 48
Case No. 3:03-cv-00262-JWS

GG0355

Page 28

**8.12.2.1**  The identity of the Partners;

**8.12.2.2**  Any conditions precedent to acts by the Partnership;

**8.12.2.3**  The Persons who are authorized to execute any documents and bind the Partnership; and

**8.12.2.4**  Any other matter involving the Partnership or any Partner.

**8.13    Limited Partners' Liability and Authority to Act.**  No Limited Partner shall be personally liable for all or any part of the debts or other obligations of the Partnership.  The Limited Partners shall not take part in the management or control of the business, or transact any business of the Partnership or have power to sign for or to bind the Partnership.  However, this provision shall not prevent a Limited Partner from acting in a capacity or exercising a power enumerated in Section 32.11.120 of the Act.

**8.14    Voting of Limited Partners.**

**8.14.1**  Limited Partners shall have the right to vote upon the matters listed below:

**8.14.1.1**  Removal of the General Partner;

**8.14.1.2**  Election of a successor General Partner;

**8.14.1.3**  Termination and dissolution of the Partnership;

**8.14.1.4**  Amendment of this Agreement;

**8.14.1.5**  The extension of the term of the Partnership; and

**8.14.1.6**  Any matter requiring the vote of the Limited Partners as set out elsewhere in this Agreement or in the Act.

**8.14.2**  Those matters to be voted on by the Limited Partners can be done by written consent.  Such a written consent may be utilized at any meeting of the Partners, or it may be utilized in obtaining approval by the Partners without a meeting.

**8.15    Restrictions of Limited Partners.**

**8.15.1**  No Limited Partner shall have the right to withdraw from the Partnership or to receive a return of any of its contributions to the Partnership until the Partnership is terminated and its affairs wound up in accordance with Section 32.11.400 of the Act and this Agreement.  A Limited Partner will breach this Agreement if he:  (1) attempts to withdraw from the Partnership, (2) interferes in the management of the Partnership affairs, (3) engages in

conduct which could result in the Partnership losing its tax status as a partnership, (4) engages in conduct that tends to bring the Partnership into disrepute, (5) owns a Partnership Interest that becomes subject to a charging order, attachment, garnishment, or similar legal proceedings, (6) breaches any confidentiality provisions of this Agreement, or (7) fails to meet any commitment to the Partnership. A Limited Partner who is in breach of this Agreement shall be liable to the Partnership for damages caused by the breach. The Partnership may offset for the damages against any distributions or return of capital to the Limited Partner who has breached this Agreement.

8.15.2 No Limited Partner shall have the right or power to cause the dissolution and winding up of the Partnership by court decree or otherwise.

### 8.16    Partnership Communication.

8.16.1 At least once a year, and as soon as possible after the financial statements are completed, a meeting shall be held for all Partners. The General Partners shall review and discuss the financial statements at the meeting and report to the Limited Partners the financial condition of the partnership. The annual meeting shall be held at a place designated by the General Partners on or before the third Tuesday in April of each year. All partners shall receive prior notice of dates, time, and place of the meeting.

8.16.2 The General Partners or a majority in interest of Limited Partners may establish an Advisory Committee of the Partnership consisting of three or more Limited Partners (the "Advisory Committee"). If the Advisory Committee is established, at least once each calendar year, the General Partner, on notice to each member on or before the tenth day prior to the meeting, shall call a meeting of the Advisory Committee, at which the General Partners apprises it generally of the business and affairs of the Partnership since the latest meeting of the Advisory Committee. The Advisory Committee may make recommendations to or otherwise advise and consult with the General Partners regarding the business and affairs of the Partnership; however, the Advisory Committee is not authorized to take any action on behalf of the Partnership or to compel any Partner to take any action. The Advisory Committee may make a report of the meeting to the remaining Limited Partners. A Limited Partner or representative is entitled to payment from the Partnership for its expenses regarding attendance at meetings of the Advisory Committee.

8.17    **Ownership of Partnership Property.** All Property shall be owned by and in the name of the Partnership. Each Partner expressly waives the right to require partition of any Property. The Partners shall execute any documents that may be necessary to reflect the Partnership's ownership of its Property and shall record the documents in the public offices that may be necessary or desirable in the discretion of the Partners. No Partner shall have the right or power to demand or receive Property other than cash in return for his or her contribution.

**8.18    Confidentiality of Information.**

8.18.1 Each Partner is entitled to all information under the circumstances and subject to the conditions stated in this Agreement and the Act. The Partners agree, however, that the General Partners or fifty-one percent (51%) in Interest of Limited Partners may determine, due to contractual obligations, business concerns, or other considerations, that certain information regarding the business, affairs, Property, and financial condition of the Partnership shall be kept confidential and not provided to some or all other Limited Partners, and that it is not just or reasonable for those Partners or Assignees or representatives to examine or copy that information.

8.18.2 The Partners acknowledge that they may receive information regarding the Partnership in the nature of trade secrets or that otherwise is confidential, the release of which may be damaging to the Partnership or Persons with which it does business. Each Partner shall hold in strict confidence any information it receives regarding the Partnership that is identified as being confidential (and if that information is provided in writing, that is so marked) and may not disclose it to any Person other than another Partner, except for disclosures: (1) compelled by law (but the Partner must notify the General Partners or fifty-one (51%) percent in Interest of Limited Partners, as appropriate, promptly of any request for that information, before disclosing it, if practicable), (2) to advisers or representatives of the Partner or Assignees of the Partner, but only if they have agreed to be bound by the provisions of this paragraph, or (3) of information that Partner also has received from a source independent of the Partnership that the Partner reasonably believes obtained that information without breach of any obligation of confidentiality. The Partners acknowledge that breach of the provisions of this paragraph may cause irreparable injury to the Partnership for which monetary damages are inadequate, difficult to compute, or both. Accordingly, the Partners agree that the provisions of this paragraph may be enforced by specific performance.

**8.19    Classes.** This Partnership shall have only one class of partnership interest.

## ARTICLE NINE
## DISSOLUTION

**9.1    Events of Dissolution.** The happening of any one of the following events shall work an immediate dissolution of the Partnership:

9.1.1 an event of withdrawal of a General Partner described in Section 32.11.160 of the Act, except that any event described in Subsection (4), (5), (7), (8) and (9) of Section 32.11.160 of the Act shall not be an event of withdrawal;

9.1.2 by Unanimous Consent;

9.1.3 the entry of a decree of judicial dissolution under Section 32.11.380 of the Act;

**9.1.4**   the expiration of the term of the Partnership as stated in Article One; or

**9.1.5**   any other event causing dissolution under the Act.

**9.2     Dissolution or Bankruptcy of a Partner.**  On the dissolution or bankruptcy of a Partner, such Partner and his or her successors shall thereafter have the status of an Assignee and shall receive distributions to which he is entitled.   For purposes of this Agreement, the "bankruptcy" of a Partner shall be deemed to have occurred upon the happening of any event described in Subsections (4) and (5) of Section 32.11.160 of the Act.

**9.3     Withdrawals; Reconstitution.**  Technical dissolutions may occur pursuant to Article Nine, Paragraphs 9.1.1 and 9.1.5., of this Agreement, but if there is a remaining General Partner, the Partnership will be reconstituted and continued.

**9.3.1**   A General Partner may have the power but not the right to withdraw at any time from the Partnership and cease to be a General Partner under the provisions of Section 32.11.250 of the Act by giving written notice to the other Partners.  Any General Partner who withdraws or ceases to be a General Partner pursuant to Section 32.11.250 of the Act, before the expiration of the stated term of this Partnership violates this Agreement, and the Partnership may recover damages from the withdrawing General Partner, including the reasonable cost of obtaining replacement of the services the withdrawn Partner was obligated to perform, for breach of this Agreement.  The Partnership may, in addition to pursuing any remedies otherwise available under applicable law, effect that recovery by offsetting those damages against the amount otherwise distributable to the withdrawing General Partner, reducing the Limited Partner's interest into which the withdrawing General Partner's interest may be converted under Section 32.11.250 of the Act.

**9.3.2**   Subject to the liability created under Section 32.11.250 of the Act, a General Partner who ceases to be a General Partner under Section 32.11.160, Subsections (1), (2), (3), (6) and (10) of the Act shall, at the option of the remaining General Partners or, if there are no remaining General Partners, at the option of a Majority in Interest of Limited Partners in a vote that excludes any Limited Partnership Interest held by the withdrawing General Partner:

**9.3.2.1**   convert the interest in that General Partner's Capital Account, Profits, Losses, and distributions to that of a Limited Partner; or

**9.3.2.2**   pay to the withdrawn General Partner in cash, other property of the Partnership of equivalent value, or secure by bond approved by a court of competent jurisdiction, the fair market value of that Partner's Partnership Interest less the damages caused by the withdrawn General Partner's breach of this Agreement.

GG0359

9.3.3   The Partnership shall have the unilateral option to acquire the entire interest of the withdrawn General Partner under the same terms and conditions specified in Article Seven, Paragraph 7.2.5, as if the withdrawn General Partner were a transferee of an interest conveyed without authority.

9.3.4   **Successor General Partner.** If there are multiple General Partners and one or more General Partners withdraws or ceases to serve for any reason and there is at least one remaining General Partner, the business of the Partnership is permitted to continue by the remaining General Partners without amendment to this Agreement. Prior to the withdrawal of all multiple General Partners or the withdrawal of a sole General Partner serving without a Designated Successor General Partner, additional General Partners or Designated Successor General Partners may be appointed by Majority In Interest of all General Partners. If a General Partner, serving alone, withdraws or ceases to serve for any reason and there are no Designated Successor General Partners remaining, then without amendment to this Agreement, all the remaining Partners may continue the business of the Partnership and appoint one or more new General Partners effective as of the date of withdrawal of the withdrawing General Partner. Any Designated Successor General Partner will not have the duties nor the liability of a General Partner until such time as the successor actually assumes the position of a General Partner. A General Partner who ceases to be a General Partner will not be personally liable for the debts and obligations of the Partnership incurred following the termination of his or her service as a General Partner.

## ARTICLE TEN
## LIQUIDATION AND TERMINATION

**10.1    Liquidator.**

10.1.1 If the Partnership is dissolved under Article Nine, Paragraphs 9.1.2 or 9.1.3, or if the General Partners have withdrawn and no successors have been chosen pursuant to Article Nine, Paragraph 9.3.4, a Liquidator will be appointed to commence to wind up the affairs of the Partnership and to liquidate and sell its properties. The Partners shall continue to share operating Profits and Losses and other items of income, gain, loss, and deduction during the period of liquidation. The Liquidator will proceed, as promptly as practicable without undue sacrifice, to liquidate and sell all remaining properties of the Partnership for the best price obtainable in the judgment of the Liquidator or appropriate to distribute the Property to the creditors or Partners in kind in accordance with their Sharing Ratios. The Liquidator may be required by the Partners (at the expense of the Partnership) to give a bond to assure faithful performance of his or her duties. The Liquidator shall be entitled to receive compensation for his or her services as shall be agreed upon, payable out of the assets of the Partnership. The Liquidator may resign at any time by giving thirty (30) days' written notice to the Partners. The Liquidator may be removed at any time by written notice of removal by Unanimous Consent. Upon the death, dissolution, removal or resignation of the Liquidator, a successor Liquidator (who shall have and succeed to all of the rights, powers, and duties of the original Liquidator) will, within thirty (30) days, be appointed in the same manner as the appointment of the original

Liquidator. The right to appoint a successor Liquidator shall be recurring and continuing for so long as the functions and services of the Liquidator are authorized to continue.

10.1.2 If, within thirty (30) days following the dissolution of the Partnership, no person has agreed to serve as the Liquidator or if, within thirty (30) days after the need for a successor Liquidator arises, such successor shall not have been appointed and accepted such appointment, any interested Partner shall have the right to make application to a State or Federal District Judge (or if any State or Federal District Judge is unwilling, then the Presiding Judge for the Judicial District in which the principal office of the Partnership is located) (the "Judge") for appointment of the Liquidator. The Judge, acting as an individual and not in his or her judicial capacity, shall be fully authorized to appoint the Liquidator.

10.2    **Powers of the Liquidator.** Subject to Article Ten, Paragraph 10.1, the Liquidator shall have the powers of the General Partners to the extent necessary to carry out the duties and functions of the Liquidator, including but not limited to the following powers:

10.2.1 The power to continue to manage any business of the Partnership during the liquidation, including the power to enter into contracts which may extend beyond the liquidation;

10.2.2 The power to execute deeds, bills of sale, assignments, and transfers to convey Property of the Partnership; provided, that the Liquidator may not impose personal liability upon any of the Partners or their legal representatives or successors in interest under any warranty of title contained in any instrument;

10.2.3 The power to borrow funds, in the Liquidator's best judgment, reasonably required to pay any obligations of the Partnership, and to execute security documents encumbering Property as security for the indebtedness of the Partnership; provided that the Liquidator shall not have the power to create any personal obligation of any of the Partners or their successors in interest to repay indebtedness other than out of available proceeds of foreclosure or sales of the Property as to which a lien is granted;

10.2.4 The power to settle, compromise, or adjust any claim asserted to be owing by or to the Partnership, and the right to file, prosecute, or defend lawsuits and legal proceedings in connection with any matters; and

10.2.5 The power to make deeds, bills of sale, assignments and transfers to the respective Partners incident to final distribution of the remaining Property (if any); provided, that the Liquidator may not impose personal liability upon any of the Partners or their legal representatives or successors in interest under any warranty of title contained in any instrument.

10.3    **Liquidating Distributions.** The net liquidation sales proceeds, unliquidated Property, and all other funds of the Partnership shall be distributed in the following order: (1) to the payment of all the Partnership's liabilities, other than those to any of the Partners, including expenses of liquidation; (2) to the setting up of any reserves which the Liquidator may deem

reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership; (3) to the payment and discharge of any liabilities of the Partnership to any of the Partners; and (4) after all allocations of income, gains, losses and deductions pursuant to Article Five, to the Partners in payment of the positive balances in their Capital Accounts. If the Partnership makes distributions in kind of Property which secures indebtedness, each of the Partners receiving the distribution of Property subject to the indebtedness will be severally liable (as among each other, but not for the benefit of others) for a share of the indebtedness proportionate to the share of such Property distributed to each Partner, provided that no Partner will be deemed to have assumed any liability on any indebtedness secured by Property distributed to any Partner for which the Partner is not liable under the terms of the instrument creating the indebtedness, and provided that the liability of each Partner to other Partners for indebtedness secured by Property distributed to him will be limited to the value of his or her interest in the Property. Notwithstanding anything to the contrary in the preceding portions of this Article Ten, indebtedness secured by Property distributed to Partners in kind need not be discharged out of the proceeds of liquidation of the Partnership.

**10.4    Compliance With Timing Requirements of Treasury Regulation.** If the Partnership is "liquidated" within the meaning of Regulations Section 1.704-1(b)(2)(ii)(g), distributions will be made under this Article Ten to the Partners as provided in Article Ten, Paragraph 10.3 in compliance with Regulations Section 1.704-1(b)(2)(ii)(b)(2).

**10.5    Final Accounting.** Within a reasonable time following the completion of the liquidation of the Partnership, the Liquidator shall supply to each Partner a statement prepared by the Partnership's accountant which shall set forth the assets and liabilities of the Partnership as of the date of liquidation, each Partner's portion of distributions pursuant to liquidation and the amount, if any, retained as reserves pursuant to Article Ten, Paragraph 10.3.

**10.6    Termination of Partnership.** Upon the completion of the liquidation of the Partnership and the distribution of all Partnership Property, the Partnership shall terminate and the Liquidator shall have the authority to execute and record all documents required to effectuate the dissolution and termination of the Partnership.

**10.7    Rights of Lender.** The rights and powers granted to the Partners and the Liquidator are subject to the rights and powers of the holder of first mortgage liens (if any) against all or any part of the Property owned by the Partnership.

**ARTICLE ELEVEN**
**ALTERNATIVE DISPUTE RESOLUTION**
**("ADR"); BINDING ARBITRATION**

**11.1    Agreement to Use Procedure.** The Partners have entered into this Agreement in good faith and in the belief that it is mutually advantageous to them. It is with that same spirit of cooperation that they pledge to attempt to resolve any dispute amicably without the necessity of

GG0362

Exhibit 3
Page 35 of 48
Case No. 3:03-cv-00262-JWS

Page 35

Maffei Family Limited Partnership Agreement

litigation. Accordingly, they agree if any dispute arises between them relating to this Agreement (the "Dispute"), they will first utilize the procedures specified in this Article (the "Procedure") prior to any Additional Proceedings.

**11.2    Initiation of Procedure.** The Partner seeking to initiate the Procedure (the "Initiating Partner") shall give written notice to the other Partners, describing in general terms the nature of the Dispute, the Initiating Partner's claim for relief and identifying one or more individuals with authority to settle the Dispute on such Partner's behalf. The Partner(s) receiving such notice (the "Responding Partner", whether one or more) shall have five (5) business days within which to designate by written notice to the Initiating Partner, one or more individuals with authority to settle the Dispute on such Partner's behalf. The individuals so designated shall be known as the "Authorized Individuals". The Initiating Partner and the Responding Partner shall collectively be referred as the "Disputing Partners" or individually "Disputing Partner".

**11.3    Direct Negotiations.** The Authorized Individuals shall be entitled to make such investigation of the Dispute as they deem appropriate, but agree to promptly, and in no event later than thirty (30) days from the date of the Initiating Partner's written notice, meet to discuss resolution of the Dispute. The Authorized Individuals shall meet at such times and places and with such frequency as they may agree. If the Dispute has not been resolved within thirty (30) days from the date of their initial meeting, the Disputing Partners shall cease direct negotiations and shall submit the Dispute to mediation in accordance with the following procedure.

**11.4    Selection of Mediator.** The Authorized Individuals shall have five (5) business days from the date they cease direct negotiations to submit to each other a written list of acceptable qualified attorney-mediators not affiliated with any of the Partners. Within five (5) days from the date of receipt of such list, the Authorized Individuals shall rank the mediators in numerical order of preference and exchange such rankings. If one or more names are on both lists, the highest ranking person shall be designated as the mediator. If no mediator has been selected under this procedure, the Disputing Partners agree jointly to request a State or Federal District Judge of their choosing (or if they cannot agree, the Presiding Judge for the Judicial District in which the principal office of the Partnership is located) to supply within ten (10) business days a list of potential qualified attorney-mediators. Within five (5) business days of receipt of the list, the Authorized Individuals shall again rank the proposed mediators in numerical order of preference and shall simultaneously exchange such list and shall select as the mediator the individual receiving the highest combined ranking. If such mediator is not available to serve, they shall proceed to contact the mediator who was next highest in ranking until they are able to select a mediator.

**11.5    Time and Place of Mediation.** In consultation with the mediator selected, the Authorized Individuals shall promptly designate a mutually convenient time and place for the mediation, and unless circumstances require otherwise, such time to be not later than forty-five (45) days after selection of the mediator.

**11.6    Exchange of Information.** In the event any Disputing Partner to this Agreement has substantial need for information in the possession of another Disputing Partner to this

Agreement in order to prepare for the mediation, all Disputing Partners shall attempt in good faith to agree to procedures for the expeditious exchange of such information, with the help of the mediator if required.

**11.7    Summary of Views.** At least seven (7) days prior to the first scheduled session of the mediation, each Disputing Partner shall deliver to the mediator and to the other Disputing Partners a concise written summary of its views on the matter in Dispute, and such other matters required by the mediator. The mediator may also request that a confidential issue paper be submitted by each Disputing Partner to him.

**11.8    Parties to be Represented.** In the mediation, each Disputing Partner shall be represented by an Authorized Individual and may be represented by counsel. In addition, each Disputing Partner may, with permission of the mediator, bring such additional Persons as needed to respond to questions, contribute information, and participate in the negotiations.

**11.9    Conduct of Mediation.** The mediator shall determine the format for the meetings, designed to assure that both the mediator and the Authorized Individuals have an opportunity to hear an oral presentation of each Disputing Partner's views on the matter in dispute, and that the authorized parties attempt to negotiate a resolution of the matter in dispute, with or without the assistance of counsel or others, but with the assistance of the mediator. To this end, the mediator is authorized to conduct both joint meetings and separate private caucuses with the Disputing Partners. The mediation session shall be private. The mediator will keep confidential all information learned in private caucus with any Disputing Partner unless specifically authorized by such Disputing Partner to make disclosure of the information to the other Disputing Partner. The Disputing Partners commit to participate in the proceedings in good faith with the intention of resolving the Dispute if at all possible.

**11.10    Termination of Procedure.** The Disputing Partners agree to participate in the mediation procedure to its conclusion. The mediation shall be terminated: (1) by the execution of a settlement agreement by the Disputing Partners, (2) by a declaration of the mediator that the mediation is terminated, or (3) by a written declaration of a Disputing Partner to the effect that the mediation process is terminated at the conclusion of one full day's mediation session. Even if the mediation is terminated without a resolution of the Dispute, the Disputing Partners agree not to terminate negotiations and not to commence any Additional Proceedings prior to the expiration of five (5) days following the mediation. Notwithstanding the foregoing, any Disputing Partner may commence Additional Proceedings within such five (5) day period if the Dispute could be barred by an applicable statute of limitations.

**11.11    Arbitration.** The parties agree to participate in good faith in the ADR to its conclusion. If the Disputing Partners are not successful in resolving the dispute through the ADR, then the Disputing Partners agree that the dispute shall be settled by arbitration in accordance with the provisions of the Alaska Uniform Arbitration Act, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction ("Additional Proceedings").

**11.12  Fees of Mediation; Disqualification.** The fees and expenses of the mediator shall be shared equally by the Disputing Partners. The mediator shall be disqualified as a witness, consultant, expert or counsel for any Disputing Partner with respect to the Dispute and any related matters.

**11.13  Confidentiality.** Mediation is a compromise negotiation for purposes of Federal and State Rules of Evidence and constitutes privileged communication under Alaska law. The entire mediation process is confidential, and no stenographic, visual or audio record shall be made. All conduct, statements, promises, offers, views and opinions, whether oral or written, made in the course of the mediation by any Disputing Partner, their agents, employees, representatives or other invitee and by the mediator are confidential and shall, in addition and where appropriate, be deemed privileged. Such conduct, statements, promises, offers, views and opinions shall not be discoverable or admissible for any purpose, including impeachment, in any litigation or other proceeding involving the parties, and shall not be disclosed to anyone not an agent, employee, expert, witness, or representative of any of the Partners; provided, however, that evidence otherwise discoverable or admissible is not excluded from discovery or admission as a result of its use in the mediation.

**ARTICLE TWELVE**
**TAXES, ACCOUNTING, BOOKS**
**AND RECORDS**

**12.1  Partner Records.** At all times during the term of the Partnership, and beyond that term if the General Partners deem it necessary, the General Partners shall cause to be kept, at the Partnership's principal place of business, books of account in which each Partnership transaction shall be entered fully and accurately, and which shall reflect the assets, liabilities, costs, expenditures, Profits, Losses and Capital Accounts of the Partners.

**12.2  Records.** The General Partners shall keep at the Partnership's principal place of business in Alaska the following Partnership documents:

**12.2.1** A current list of the full name and last known business or residence address of each Partner, together with the contribution and share in allocations and Distributions of each Partner.

**12.2.2** A copy of the certificate of limited partnership and all certificates of amendment, and executed copies of any powers of attorney pursuant to which any certificate has been executed.

**12.2.3** Copies of the Partnership's federal, state, and local income tax or information returns and reports, if any, for the six most recent tax years.

**12.2.4** Copies of the Agreement and all amendments to the Agreement.

**12.2.5** Financial statements of the Partnership for the six most recent tax years.

12.2.6 The Partnership's books and records for the current and past three tax years.

### 12.3    Delivery of Records to Limited Partner and Inspection.

12.3.1 On the request of a Limited Partner, the General Partners shall promptly deliver to the requesting Limited Partner, at the expense of the Partnership, a copy of the information required to be maintained by this agreement.

12.3.2 Each Limited Partner has the right, on reasonable request, to:

12.3.2.1 Inspect and copy during normal business hours any of the Partnership records required to be maintained by this agreement;

12.3.2.2 Obtain from the General Partner, promptly after they are available, a copy of the Partnership's federal, state, and local income tax or information returns for each year.

### 12.4    Reports.

12.4.1 The General Partners shall send to each Partner, within ninety (90) days after the end of each tax year, the information necessary for the Partner to complete its federal and state income tax or information returns.

12.4.2 The General Partners shall send to each Partner within ninety (90) days after the end of each tax year, a complete copy of the Partnership's federal, state, and local income tax or information returns for the year.

**12.5 Tax Returns.** The Partnership's accountant shall be instructed to prepare and file all required income tax returns for the Partnership. The General Partners shall make any tax election necessary for completion of the Partnership tax return, except as otherwise provided in this Agreement.

### 12.6    Tax Matters Partners.    shall be the tax matters partner for purposes of Sec. 6231(a)(7) of the Code, and shall have all the authority granted by the Code to the tax matters partner, including the authority, without the consent of any other Partner, to do all of the following:

12.6.1 Enter into a settlement agreement with the Internal Revenue Service which purports to bind Partners other than the General Partner.

12.6.2 File a petition as contemplated in Sec. 6226(a) or Sec. 6228 of the Code.

12.6.3 Intervene in any action as contemplated in Sec. 6226(b)(5) of the Code.

Maffei Family Limited Partnership Agreement

GG0366

Exhibit 3
Page 39 of 48
Case No. 3:03-cv-00262-JWS
Page 39

      12.6.4 File any request contemplated in Sec. 6227(b) of the Code.

      12.6.5 Enter into an agreement extending the period of limitations as contemplated in Sec. 6229(b)(1)(B) of the Code.

      12.6.7 To represent the Partnership and Partners before taxing authorities or courts of competent jurisdiction in tax matters affecting the Partnership or Partners in their capacity as Partners.

      12.6.8 To execute any agreements or other documents relating to affecting such tax matters, including agreements or other documents that bind the Partners with respect to such tax matters or otherwise affect the rights of the Partnership or the Partners.

      **12.7    Other Accounting Determinations.** Consistent with the other provisions of this Agreement, the Partnership shall utilize such accounting principles and income tax accounting methods and determinations as shall be determined by the General Partners in their sole discretion.

## ARTICLE THIRTEEN
## AMENDMENTS, COVENANTS AND
## POWERS OF ATTORNEY

      **13.1    Covenant to Sign Documents.** Each party covenants on behalf of himself or herself and his or her successors and assigns to execute, with acknowledgment or affidavit, if required, any and all documents and writings that may be necessary or expedient in the creation of this Partnership, the achievement of its purposes, or the consummation of any matter covered by this Agreement.

      **13.2    Power of Attorney.** Each of the Limited Partners hereby irrevocably makes, constitutes, and appoints the General Partner with full power of substitution, as his or her true and lawful attorney-in-fact, in his or her name, place and stead to make, execute, sign, acknowledge, record, file, and publish, on behalf of him, her and/or of the Partnership, the following:

      13.2.1 The certificate of limited partnership, registration of business name, and any and all other certificates or instruments which are required to be filed pursuant to Article One, Paragraph 1.5;

      13.2.2 Any amendment to this Agreement or to the certificate of limited partnership made pursuant to the provisions of this Agreement, including, without limitation, any required amendment to the certificate to admit to the Partnership Limited Partners who have been admitted to the Partnership pursuant to the provisions of this Agreement;

Exhibit 3
Page 40 of 48
Case No. 3:03-cv-00262-JWS

13.2.3 Upon the termination of the Partnership, a certificate of cancellation of the Partnership and such other instruments and documents required to effect such termination;

13.2.4 Any contract or agreement relating to the Partnership assets, and all amendments thereto;

13.2.5 Any document relating to the admission of a Substitute Limited Partner admitted to the Partnership pursuant to Article Seven, Paragraph 7.2.6; and

13.2.6 Any and all such other instruments as the General Partner may deem necessary or desirable to effect the purposes of this Agreement and carry out fully its provisions, in accordance with terms.

The power of attorney hereby granted is acknowledged to be coupled with the interest of the General Partner in the Partnership and its assets, and is, therefore, irrevocable and shall survive the death, insanity, legal incapacity, bankruptcy or dissolution of any Limited Partner granting the power, or the assignment by any such Limited Partner of all or any of his or her Partnership Interest. Such power of attorney may be exercised by listing the names of the Limited Partners executing any instrument by such power of attorney, subscribed with a single signature of a General Partner as attorney-in-fact for them, or by such other method as may be required or advisable in connection with the recording or filing of any instrument or other document so executed. Each instrument and other document executed under the power of attorney granted hereby shall be in such form as the executing attorney-in-fact and counsel for the Partnership deem appropriate. This Article does not supersede any other Article of this Agreement, nor is it to be used to deprive any Limited Partner of his or her rights under this Agreement, but it is intended only to provide a simplified system for execution of documents.

13.3   **Ratification of Action.** The Limited Partners, by their appointment of the General Partner as their attorney-in-fact, have ratified and confirmed all acts of said attorney and agree to be bound as if they had performed such acts.

13.4   **Amendment to Partnership.** This Partnership Agreement may be amended by vote or written consent by Partners holding fifty-one percent (51%) or more of the then existing General Partner Partnership Units, and by Partners holding fifty-one percent (51%) or more of the then existing Limited Partner Partnership Units.

## ARTICLE FOURTEEN
## GENERAL PROVISIONS

14.1   **Notices.** All notices under this Agreement shall be in writing and shall be given to the Partner entitled by personal service or by certified or registered mail, return receipt requested, except that the notice of any meeting or the furnishing of any financial statement to the Partners

Exhibit 3
Page 41 of 48
Case No. 3:03-cv-00262-JWS

Page 41

may be done by regular mail. Any notice shall be deemed received after twenty-four (24) hours from the date and time of postmark if it is deposited with the U.S. Mail pursuant to the above (if mailed) or when personally received if the mail service is not used.

**14.2   Construction.** Whenever the context so requires, the gender of all words used in this Agreement includes the masculine, feminine, and neuter, and the singular shall include the plural, and conversely. All references to articles, sections, subsections or subparagraphs are to provisions of this Agreement unless context dictates otherwise.

**14.3   Counterparts.** This Agreement may be executed in several counterparts, and all so executed shall constitute one Agreement binding on all parties, notwithstanding that all the parties are not signatory to the original or the same counterpart.

**14.4   Attorney Fees.** Subject to provisions of Article Eleven of this Agreement, in the event a dispute arises between any Partner(s) and the Partnership or between the Partners themselves, the prevailing party shall be entitled to recover reasonable attorney's fees and court costs incurred.

**14.5   Tax Audit.** In the event this Partnership is audited by the Internal Revenue Service, the costs and expenses incurred to defend and comply with the audit shall be an expense of the Partnership. Any audit of any individual Partner shall not be deemed to be an audit of this Partnership.

**14.6   Governing Law.** This Agreement shall be governed by the laws of the State of Alaska.

**14.7   Binding Nature.** The terms and provisions of this Agreement shall be binding upon and inure to the benefit of the successors and assigns of the respective Partner.

**14.8   Severance.** In the event any sentence or paragraph of this Agreement is declared by a court or by the Internal Revenue Service, for the purposes of Section 2704 of the Code, to be noneffective, that sentence or paragraph shall be deemed severed from the remainder of the Agreement, and the balance of the Agreement shall remain in effect. To the extent applicable, the default provisions of the Act shall govern in the place of the severed sentence or paragraph. This provision shall not prohibit the Partnership or any Partner from contesting a determination of non-effectiveness of any provision of this Agreement by the Internal Revenue Service.

**14.9   Applicable Law.** This Agreement and all rights and liabilities of the parties with reference to this Partnership shall be governed by the Act and all other applicable laws of the State of Alaska other than its conflicts of laws rules and principles.

**14.10 Foreign Qualification.** Prior to the qualification of the Partnership to conduct business in any jurisdiction other than Alaska, the General Partner shall cause the Partnership to comply, to the extent procedures are available and those matters are reasonably within the

control of the General Partner, with all requirements necessary to qualify the Partnership as a foreign limited partnership in that jurisdiction. At the request of the General Partner, each Partner shall execute, acknowledge, swear to, and deliver all certificates and other instruments conforming with the terms of this Agreement that are necessary or appropriate to qualify, continue, and terminate the Partnership as a foreign limited partnership in all jurisdictions in which the Partnership may conduct business.

**14.11 Headings.** The headings used in this Agreement are for convenience only and shall not be construed in interpreting this Agreement.

**14.12 Entire Agreement.** This Agreement contains the entire agreement among the Partners with respect to the matters of this Agreement and shall supersede and govern all prior agreements, written or oral.

**14.13 Further Action.** The parties hereto shall execute and deliver all documents, provide all information and take or refrain from taking action as may be necessary or appropriate to achieve the purposes of this Agreement.

**14.14 Creditors.** None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of the Partnership or other third parties.

**14.15 Waiver.** No failure by any Partner to insist upon the strict performance of any covenant, duty, agreement or condition of this Agreement or to exercise any right or remedy consequent upon a breach thereof shall constitute waiver of any breach or any other covenant, duty, agreement or condition.

**14.16 Offset.** Whenever the Partnership is to pay any sum to any Partner, any amounts that Partner owes the Partnership may be deducted from that sum before payment.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the _21st_ day of _November_ , 200_1_.

MAFFEI FAMILY LIMITED PARTNERSHIP
LIMITED PARTNERSHIP

_____
BONITA F. MAFFEI
GENERAL AND LIMITED PARTNER

_____
ALBERT MAFFEI
GENERAL AND LIMITED PARTNER

Maffei Family Limited Partnership Agreement

GG0370

Exhibit 3
Page 43 of 48
Case No. 3:03-cv-00262-JWS

Page 43

STATE OF ALASKA          )
                                 ) ss.

THIRD JUDICIAL DISTRICT    )

       The foregoing instrument was acknowledged before me this _21st_ day of _November_, 2001, by BONITA F. MAFFEI, General and Limited Partner of the MAFFEI FAMILY LIMITED PARTNERSHIP.

_Roni J. Agre_
NOTARY PUBLIC in and for Alaska
My Commission Expires: _7/25/05_

(SEAL) RONI J. AGRE NOTARY PUBLIC STATE OF ALASKA *

STATE OF ALASKA          )
                                 ) ss.

THIRD JUDICIAL DISTRICT    )

       The foregoing instrument was acknowledged before me this _21st_ day of _November_, 2001, by ALBERT MAFFEI, General and Limited Partner of the MAFFEI FAMILY LIMITED PARTNERSHIP.

_Roni J. Agre_
NOTARY PUBLIC in and for Alaska
My Commission Expires: _7/25/05_

(SEAL) RONI J. AGRE NOTARY PUBLIC STATE OF ALASKA *

GG0371

Exhibit 3
Page 44 of 48
Case No. 3:03-cv-00262-JWS

Page 44

Maffei Family Limited Partnership Agreement

## SCHEDULE A

The property contributed to the partnership by the partners is as follows:

|  |  | Net Market Value |
|---|---|---|
| General Partner: | Property | |
| BONITA F. MAFFEI | | |
| ALBERT MAFFEI | | |
| Limited Partners: | | |
| BONITA F. MAFFEI | | |
| ALBERT MAFFEI | | |

Maffei Family Limited Partnership Agreement

GG0372

Exhibit 3
Page 45 of 48
Case No. 3:03-cv-00262-JWS
Page 45

## SCHEDULE B

General Partner:                Capital        Units

BONITA F. MAFFEI

ALBERT MAFFEI

Limited Partners:               Capital        Units

BONITA F. MAFFEI

ALBERT MAFFEI

GG0373

Exhibit 3
Page 46 of 48
Case No. 3:03-cv-00262-JWS

Page 46

## SCHEDULE C

### INSURANCE SCHEDULE

| INSURED | FACE VALUE | UNDERWRITER AND POLICY NUMBER |
|---------|------------|-------------------------------|
|         |            |                               |

GG0374

Exhibit 3
Page 47 of 48
Case No. 3:03-cv-00262-JWS

Page 47

2/24/2004                        GOERIG & ASSOCIATES, L.L.C.                    Page    1
2:05 PM                                Slip Listing

#1
157-0lp
FLP

Selection Criteria

| Slip.Date | Earliest - 2/11/2004 |
|---|---|
| Slip.Classification | Open |
| Client (hand select) | Include: Maffei, A&B |

Rate Info - identifies rate source and level

| Slip ID<br>Dates and Time<br>Posting Status<br>Description | Atty/Paralegal<br>Activity<br>Client<br>Reference | Units<br>DNB Time<br>Est. Time<br>Variance | Rate<br>Rate Info<br>Bill Status | Slip Value |
|---|---|---|---|---|
| 46086     TIME<br>11/21/2001    1:08 PM<br>Billed     G:18086    1/8/2002<br>Drafting Certificate of Family limited partnership for Albert Maffei; instructions to Adrianna regarding SS-4; telephone call to State of Alaska regarding name availability; preparing general assignment agreement; meeting with clients to execute family limited partnership documents; preparing letter to State of Alaska; preparing cost check to accompany filing; sending letter, certificate, and check to State of Alaska to file family limited partnership | Roni<br>Legal Service<br>Maffei, A&B | 2.70<br>0.00<br>0.00<br>0.00 | 120.00<br>T@1 | 324.00 |
| 46406     EXP<br>11/21/2001<br>Billed     G:18086    1/8/2002<br>Filing fee for FLP | Sara<br>Client Cost<br>Maffei, A&B | 1 | 150.00 | 150.00 |
| 46320     TIME<br>12/4/2001<br>Billed     G:18086    1/8/2002<br>Conference with Albert and Bonnie | George<br>Legal Service<br>Maffei, A&B | 0.70<br>0.00<br>0.00<br>0.00 | 250.00<br>T@1 | 175.00 |
| 46352     TIME<br>12/5/2001<br>Billed     G:18086    1/8/2002<br>Telephone conversation with Bonita regarding EIN and deeds for Family limited partnership. Further discussed client data sheet for estate planning meeting; facsimile transmission of data sheet to Bonita; telephone call to IRS regarding EIN - left message | Roni<br>Legal Service<br>Maffei, A&B | 0.20<br>0.00<br>0.00<br>0.00 | 120.00<br>T@1 | 24.00 |
| 46353     TIME<br>12/5/2001<br>Billed     G:18086    1/8/2002<br>Fax Form SS-4 and Form 8821 to IRS | Adrianna<br>Legal Service<br>Maffei, A&B | 0.10<br>0.00<br>0.00<br>0.00 | 60.00<br>T@1 | 6.00 |

Exhibit 3
Page 48 of 48
Case No. 3:03-cv-00262-JWS

GG0425